**Nos. 25-10816 / 25-10829**

————————

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

————————

A.G.,

*Appellant,*

v.

NORTHBROOK INDUSTRIES, INC.,

*Appellee.*

————————

G.W.,

*Appellant,*

v.

NORTHBROOK INDUSTRIES, INC.,

*Appellee.*

————————

**On Appeal from the United States District Court,**
**J.P. Boulee, United States District Judge,**
**Case Nos. 1:20-cv-05231-JPB, 1:20-cv-05232-JPB**

————————

**CONSOLIDATED OPENING BRIEF**
**FOR APPELLANTS A.G. & G.W.**

————————

David H. Bouchard
Oto U. Ekpo
FINCH MCCRANIE LLP
229 Peachtree St. NE, Suite 2500
Atlanta, GA 30303, (404) 658-9070
david@finchmccranie.com
oto@finchmccranie.com
*Counsel for Appellants A.G. & G.W.*

*A.G. v. Northbrook, Industries, Inc. (No. 25-10816)*
*G.W. v. Northbrook Industries, Inc. (No. 25-10829)*

## CERTIFICATE OF INTERESTED PARTIES
## AND CORPORATE DISCLOSURE STATEMENT (CIP)

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 and 26.1-2, Appellants A.G. & G.W. provide the following Certificate of Interested Persons and Corporate Disclosure Statement:

1. A.G. – Appellant

2. Andersen, Tate & Carr, P.C. – Law firm representing Appellants

3. Bouchard, David – Attorney for Appellants

4. Boulee, J.P. – United States District Court Judge

5. Ekpo, Oto - Attorney for Appellants

6. Finch McCranie, LLP – Law firm representing Appellants

7. Fireman's Fund – Insurer for Appellee

8. G.W. - Appellant

9. Galloway, Sara – Attorney for Appellee

10. Knisely, Gabriel - Attorney for Appellants

11. Lewis Brisbois Bisgaard Smith, LLP – Law firm representing Appellee

12. McDonough, Pat – Attorney for Appellants

13. Mobley, Cameron – Attorney for Appellee

14. Northbrook Industries, Inc. – Appellee

15. Tonge, Jon - Attorney for Appellants

*A.G. v. Northbrook, Industries, Inc. (No. 25-10816)*
*G.W. v. Northbrook Industries, Inc. (No. 25-10829)*

16. Ward, Alice – Attorney for Appellee

17. Weeks, Rory - Attorney for Appellants

No other associations of persons, and no other firms, partnerships, or corporations have an interest in the outcome of these cases or appeals.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiffs A.G. and G.W. sued Defendant Northbrook Industries, Inc. d/b/a United Inn & Suites, a hotel, for damages arising from being sex trafficked as children at the hotel. A.G. and G.W. asserted claims against United Inn under the civil-liability provision of the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595(a), and Georgia negligence law. Doc. 1 (Compl. ¶¶ 1-2). A.G. and G.W. request oral argument for three reasons.

*First*, the district court rightly noted that "[t]he elements of a [18 U.S.C.] § 1595(a) beneficiary claim have been the source of much debate among the courts." Doc. 151 at 6 (AG), Doc. 148 at 7 (GW). At least three other TVPRA civil-beneficiary cases are currently before the Court: *C.B. v. Naseeb Investments*, No. 24-13294 (11th Cir.); *Jane Doe v. G6 Hospitality, LLC,* No. 25-11345 (11th Cir.); *Hare Krishna Savannah Hotel, LLC v. Jane Doe*, No. 25-90009 (11th Cir.). Many TVPRA civil-beneficiary cases have been filed in this circuit in recent years, including, for example: *J.G. v. Northbrook Indus.*, No. 1:20-cv-5233, 2022 WL 4482735 (N.D. Ga. Aug. 2, 2022); *I.R. v. I Shri Khodiyar, LLC*, 723 F.Supp.3d 1327 (N.D. Ga. 2024); *Doe (K.B.) v. G6 Hosp.*, LLC, No. 1:23-cv-2597, 2023 WL 8650785 (N.D. Ga. Dec. 14, 2023); *Does 1-4 v. Red Roof Inns, Inc.*, 688 F.Supp.3d 1247 (N.D. Ga. 2023); W.*K. v. Red Roof Inns, Inc.*, 692 F.Supp.3d 1366 (N.D. Ga. 2023). That is not the full list of such actions.

*Second*, this appeal presents a question of first impression about the second element of a civil-beneficiary claim ("participation in a venture") in a case against a hotel operator. The Court did say in *Doe #1 v. Red Roof Inns, Inc.* that "renting a room to the abuser" is one of the "kinds of allegations [that] would establish a hotel operator's participation in a venture with a sex trafficker." 21 F.4th 714, 726 (11th Cir. 2021); *see also id.* at 729 (Jordan, J., concurring). But that statement was *dictum*, because in *Red Roof*, this Court dealt with only the plaintiffs' claims against the hotel franchisors—not against hotel operators.

This Court also decided a case involving a civil-beneficiary claim against a hotel operator in *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024). But as "an unpublished, unargued Eleventh Circuit opinion," *Riti* also is not binding precedent. *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, No. 5:23-CV-235, 2024 WL 4204906, at *4 (E.D.N.C. Sept. 16, 2024) (rejecting *Riti* as "atextual" and against "the greater weight of authority"); *see also McNamara v. Gov't Emps. Ins.*, 30 F.4th 1055, 1060–61 (11th Cir. 2022) ("[A] district court shouldn't simply cite to one of our unpublished opinions as the basis for its decision without separately determining that it is persuasive.").

Given that this appeal presents questions of first impression about a statute that has "been the source of much debate among the courts," the Court should hear oral argument to ensure that it fully understands the parties' arguments and can issue

binding precedent that gives clear and accurate guidance in the numerous cases pending on appeal and in the trial courts.

*Third*, if affirmed, the district court's ruling on the meaning of the second statutory element ("participation in a venture") would create a direct split with the Seventh Circuit. The district court held that to meet the "participation in a venture" element, "Plaintiff must demonstrate that United acted pursuant to the common goal of the trafficking venture." Doc.151 at 13 (AG), Doc. 148 at 14 (GW).

In stark contrast, the Seventh Circuit has held that "the relevant 'venture' under Section 1595 need not be 'specifically a sex trafficking venture.' Rather, as the Eleventh Circuit has acknowledged, the alleged venture can be a '*commercial* venture[ ]' like running or expanding a business." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023) (internal citations omitted).

Because of the potential to create a circuit split, this Court should hear oral argument to ensure that this important issue receives a full vetting. *See Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F.Supp.3d 464, 469 (E.D.N.C. 2024) (recognizing potential "circuit split").

For these reasons, A.G. and G.W. request oral argument.

# TABLE OF CONTENTS

**Page**

**CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT** .................................................................C-1

**STATEMENT REGARDING ORAL ARGUMENT** ........................................... i

**TABLE OF CONTENTS** ..................................................................... iv

**TABLE OF CITATIONS** ................................................................... vii

**STATEMENT OF JURISDICTION** ....................................................1

**STATEMENT OF THE ISSUES** ..........................................................2

**STATEMENT OF THE CASE** ..............................................................3

    **I.**    **Statement of Prior Proceedings.** ..............................................3

    **II.**    **Statement of Facts.** ....................................................................6

        **a.**  **United Inn's Management, Staffing, and Operations.** ................. 6

        **b.**  **United Inn's Frequent Crime, and "Problem" with Commercial Sex Crimes.** ............................................................ 7

        **c.**  **DeKalb County Police Department's Recommendation that United Inn Get More Security, and United Inn's Choice Not to Do So.** ...................................................................................9

        **d.**  **The Trafficking of AG and GW at United Inn.** .............................10

        **i. AG and GW were repeatedly assaulted and sexually exploited at United Inn.** ..............................................................11

      **ii.** **AG's and GW's Traffickers Visited United Inn Repeatedly and Appeared Friendly with Staff.**..................................................13

      **iii.** **A.G. and G.W. Repeatedly went to the Lobby to Buy Goods.** ..............................................................................................15

  **III.** **A.G. and G.W.'s Motions for Sanctions Based on Defendant's Discovery Abuse.**..........................................................................15

  **IV.** **The District Court's Order Granting Defendant's Motion for Summary Judgment and Dismissing A.G.'s and G.W.'s Lawsuits.** ........................................................................................16

  **V.** **The District Court's Order Denying A.G.'s and G.W.'s Motions for Reconsideration and Imposing Partial Sanctions.** ...................19

**STANDARD OF REVIEW** .......................................................................20

**SUMMARY OF ARGUMENT** .................................................................21

**ARGUMENT** ............................................................................................23

  **I.** **The District Court Erred by Finding that A.G. and G.W. Did Not Satisfy the "Participation in a Venture" Element of 18 U.S.C. § 1595(a).**........................................................................................23

    **a.** **Binding Eleventh Circuit Precedent Holds that 18 U.S.C. § 1595(a) Means What it Says: Negligent Beneficiaries of Trafficking May be Liable.** .......................................................24

    **b.** **A.G. and G.W. Satisfied the Second Element—Participation in a Venture—Under 1595(a) and *Red Roof*.** .........................29

    **c.** **The District Court's "Common Goal" Standard Eviscerates the Text of Section 1595(a) and *Red Roof*.**................................30

v

    d.  Even if the District Court's "Common Goal" Standard is Correct, A.G. and G.W. Met it Anyway. ...........................................35

       i.The District Court Improperly Disregarded Reasonable Inferences and Circumstantial Evidence.........................................36

       ii.The District Court Improperly Rejected the Inference arising from United Inn's Failure to Identify its Staff. ...........................40

II.   The District Court Erred by Finding as a Matter of Law that A.G. and G.W. were Licensees at United Inn. ...........................................42

    a.  There is a jury question as to whether A.G. and G.W. were invitees at United Inn because United Inn invited them to stay at the hotel. ...........................................................................43

    b.  There is a jury question as to whether A.G. and G.W. were invitees at United Inn because they were repeat hotel customers...................................................................................45

    c.  The district court's ruling conflicts with Georgia premises liability law. ................................................................................46

    d.  Even if A.G. and G.W. were licensees, United Inn still owed them a duty of ordinary care. ...................................................51

CONCLUSION................................................................................................52

CERTIFICATE OF COMPLIANCE ...............................................................53

CERTIFICATE OF SERVICE .........................................................................54

## <u>TABLE OF CITATIONS</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986) .......................................................................... 36, 39, 40, 41

*Bethany Grp., LLC v. Grobman*, 727 S.E.2d 147, 149 (Ga. Ct. App. 2012)...........51

*Bostock v. Clayton County*, 590 U.S. 644, 674, 140 S. Ct. 1731, 1749 (2020).......26

*Brookhaven Landscape & Grading Co., Inc. v. J. F. Barton Contracting Co.*, 676 F.2d 516, 523 (11th Cir. 1982) ..............................................................33

*C.B. v. Naseeb Investments*, No. 24-13294 (11th Cir.)............................................. i

*Card v. Dublin Constr. Co., Inc.*, 337 Ga. App. 804, 809, 788 S.E.2d 845, 851 (2016).................................................................................................47

*Cham v. ECI Mgmt. Corp.*, 856 S.E.2d 267, 276 n.13 (Ga. 2021) .........................45

*Clark Atlanta Univ., Inc. v. Williams*, 654 S.E.2d 402 (Ga. Ct. App. 2007)...........48

*Doe (K.B.) v. G6 Hosp.*, LLC, No. 1:23-cv-2597, 2023 WL 8650785 (N.D. Ga. Dec. 14, 2023)........................................................................................ i

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F.Supp.3d 464, 469 (E.D.N.C. 2024) .. iii

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*, No. 5:23-CV-235, 2024 WL 4204906, at *4 (E.D.N.C. Sept. 16, 2024)...................................................................... ii

*Doe 1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021)........................... passim

*Doe 1 v. Red Roof Inns, Inc.*, Nos. 20-11764, 20-11769, 20-11770, 20-11771 (11th Cir. June 24, 2020)...................................................................................3

*Does 1-4 v. Red Roof Inns, Inc.*, 688 F.Supp.3d 1247 (N.D. Ga. 2023).......... i, ii, 41

*G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023) ..................... passim

*Georgia CVS Pharmacy, LLC v. Carmichael*, 316 Ga. 718, 890 S.E.2d 209 (2023) .................................................................................................... 49, 50

*Georgia Dep't of Corr. v. Couch*, 312 Ga. App. 544, 546, 718 S.E.2d 875, 880 (2011) .................................................................................................48

*Hare Krishna Savannah Hotel, LLC v. Jane Doe*, No. 25-90009 (11th Cir.) ........... i

*Hopkins v. Hudgins & Co.*, 462 S.E.2d 393, 395 (Ga. Ct. App. 1995) ..................45

*Howard v. Gram Corp.*, 602 S.E.2d 241, 244 (Ga. Ct. App. 2004) ................. 45, 48

*Howell v. Three Rivers Sec., Inc.*, 456 S.E.2d 278, 280 (Ga. Ct. App. 1995) .........45

*I.R. v. I Shri Khodiyar, LLC*, 723 F.Supp.3d 1327 (N.D. Ga. 2024) ....................... i

*J.G. v. Northbrook Indus.*, No. 1:20-cv-5233, 2022 WL 4482735 (N.D. Ga. Aug. 2, 2022) ....................................................................................................... i

*Jane Doe v. G6 Hospitality, LLC,* No. 25-11345 (11th Cir.) ................................... i

*K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024).... ii, 18, 24, 35

*Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) ....................................26

*Lenny's No. Two, Inc. v. Echols*, 192 Ga. App. 371, 373, 384 S.E.2d 898, 900 (1989) ................................................................................................. 45, 47

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 971 (S.D. Ohio 2019) .................................................................................................35

*Matt v. Days Inns of Am., Inc.*, 443 S.E.2d 290 (Ga. Ct. App. 1994).....................49

*McGarity v. Hart Elec. Membership Corp.*, 307 Ga. App. 739, 744, 706 S.E.2d 676, 680–81 (2011) .............................................................................48

*McNamara v. Gov't Emps. Ins.,* 30 F.4th 1055, 1060–61 (11th Cir. 2022) ............. ii

*Munford, Inc. v. Lay*, 216 S.E.2d 123, 126 (Ga. Ct. App. 1975) *rev'd on other grounds*, 219 S.E.2d 416 (Ga.) ...........................................................45

*Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017)............................................. 34, 39

*Robinson v. Kroger Co.*, 268 Ga. 735, 748, 493 S.E.2d 403, 414 (1997) ........ 42, 46

*Robles v. QuikTrip Corp.*, No. 1:16-CV-2050-WSD, 2017 WL 6497673, at *6 (N.D. Ga. Dec. 19, 2017) ......................................................................47

*S.A. Lynch Corp. v. Greene*, 109 S.E.2d 615, 617 (Ga. Ct. App. 1959).................45

*S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020)...............35

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) .................................41

*Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012)................20

*United States v. Anderson*, Case No. 1:18-cr-424 (N.D.Ga., April 1, 2021)...........11

*United States v. Obie*, Case No. 1:18-cr-424 (N.D.Ga., Nov. 6, 2020)...................11

*Util. Air Regulatory Grp. v. E.P.A.*, 573 U.S. 302, 320, 134 S. Ct. 2427, 2441 (2014)..................................................................................................27

W.*K. v. Red Roof Inns, Inc.*, 692 F.Supp.3d 1366 (N.D. Ga. 2023)......................... i

*Walker v. Aderhold Props., Inc.*, 694 S.E.2d 119, 124 (Ga. Ct. App. 2010)...........49

*Wiltse v. Wal-Mart Stores E., LP*, 720 F. Supp. 3d 1313, 1319 (N.D. Ga. 2024).......
………………………………………………………………………….. 46, 47

**Statutes**

18 U.S.C. § 1591 ................................................................ 11, 28

18 U.S.C. § 1591(e)(4) .........................................................4, 31

18 U.S.C. § 1595 ....................................................................23

18 U.S.C. § 1595(a) ........................................................ passim

28 U.S.C. § 1291 ......................................................................1

28 U.S.C. § 1331 ......................................................................1

O.C.G.A. § 51-3-1 .......................................................... passim

O.C.G.A. § 51-3-2 ..................................................................48

**Rules**

Fed. R. Civ. P. 8(d)(2), (d)(3), (e) ........................................33

Fed. R. Civ. P. 26(a), 26(e), 26(g), and 37 ..........................20

Rule 26(g)......................................................................... 5, 20, 41

Rule 37(c)(1) ...................................................................... 5, 20, 41

Rule 56(f)(2) .................................................................... 18, 19

**Other Authorities**

Trafficking Victims Protection Reauthorization Act........................................ passim

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008,
    Pub. L. No. 110-457, 122 Stat. 5044, 5067 (2008) ...............................................24

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331. On June 14, 2024, the district court entered an order granting summary judgment and entered its final judgment. A.G. and G.W. timely moved for reconsideration, and on February 13, 2025, the district court denied reconsideration. On March 7, 2025, A.G. and G.W. timely appealed. Thus, the Court has appellate jurisdiction under the final-judgment doctrine. *See* 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

**I.**     Whether A.G. and G.W. satisfied the second element of 18 U.S.C. §1595(a) (participation in a venture) where the evidence shows that United Inn, a hotel, took part in a common undertaking involving risk and potential profit by renting hotel rooms to A.G.'s and G.W.'s traffickers for profit.

**II.**     Whether the district court properly concluded that A.G. and G.W. were licensees at United Inn because they were "outside the bounds of invitee status" as child sex trafficking victims, where there is record evidence that A.G. and G.W. frequented United Inn's store to purchase goods, lived at United Inn, and were invited into a United Inn hotel room by hotel staff.

## STATEMENT OF THE CASE

Plaintiffs A.G. and G.W. sued Defendant Northbrook Industries, Inc. d/b/a United Inn & Suites, a hotel, for damages arising from being sex trafficked as children at the hotel. A.G. and G.W. asserted claims against United Inn under the civil-liability provision of the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595(a), and Georgia negligence law.  Doc. 1 (Compl. ¶¶ 1-2).

## I.    Statement of Prior Proceedings.

In December 2020, A.G. and G.W. filed substantially similar lawsuits against United Inn. Doc. 1 (AG)(GW).[1]

In February 2021, United Inn moved to dismiss for failure to state a claim. Doc. 13 (AG), Doc. 16 (GW).[2] The district court deferred decision until the Eleventh Circuit decided *Doe 1 v. Red Roof Inns, Inc.*, Nos. 20-11764, 20-11769, 20-11770, 20-11771 (11th Cir. June 24, 2020). Doc. 30 (AG), Doc. 31 (GW). After the Eleventh Circuit's decision in *Doe 1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), the

---

[1] A.G. and G.W. moved to proceed using only their initials in public filings while confidentially disclosing their full names to United Inn. Doc. 5 (AG)(GW). The district court granted the request.  Doc. 19 (AG), Doc. 7 (GW).

[2] Citations are in the form of Doc. __ at __ (AG); Doc. __ (GW).  Page numbers refer to the CM-ECF stamped page. Because this is a consolidated appeal brief, citations are provided to Doc. numbers in A.G.'s *and* G.W.'s respective cases. Because the page numbers for the filings in the respective cases are identical, they are only provided for the first filing cited (*i.e.*, A.G.'s filing).

parties submitted supplemental briefing, Docs. 34, 36 (AG), Docs. 35, 37 (GW). In May 2022, the district court denied United Inn's motion to dismiss and found that A.G.'s and G.W.'s allegations were sufficient as to each element of a civil-beneficiary TVPRA claim. Regarding "participation in a venture," the district court observed that "the Eleventh Circuit has made clear that the definition of 'participation in a venture' is not the same as that found in the criminal provisions of § 1591(e)(4)." Doc. 39 at 6 (AG), Doc. 40 (GW) (citing *Red Roof*, 21 F.4th at 724). It "merely requires that a plaintiff allege that the defendant took part in a common undertaking or enterprise involving risk and potential profit." *Id.* Given that, the district court concluded that A.G. and G.W. had alleged "participation in a venture" because they alleged that United Inn "rented a room to [their] trafficker in the past" and "that Defendant knew or should have known that the trafficker was presently engaged in sex trafficking with [A.G. and G.W.]" (Doc. 39 at 7 (AG); Doc. 40 at 7 (GW)).

During discovery, a dispute arose. In June 2023, the district court held a status conference about the dispute. The court directed the parties to mediate the dispute, and if resolution were not reached, authorized A.G. and G.W. to move for sanctions. Doc. 76 (AG), Doc. 74 (GW). Because mediation was unsuccessful, A.G. and G.W. moved for sanctions in December 2023. Doc. 116 (AG), Doc. 114 (GW).

Also in December 2023, United Inn moved for summary judgment. Doc. 118 (AG), Doc. 116 (GW).

On June 14, 2024, the district court granted summary judgment to United Inn, absolving the hotel of all liability for the damages A.G. and G.W. incurred while being sex trafficked as children at the hotel. In doing so, the district court noted it would schedule a hearing on A.G.'s and G.W.'s motion for sanctions. Doc. 151 (AG), Doc. 148 (GW).

On July 12, 2024, A.G. and G.W. timely moved for reconsideration of the summary-judgment order. United Inn did not respond. On July 30, A.G. and G.W. filed a reply in support of reconsideration.[3] On August 6, the court heard oral argument on A.G.'s and G.W.'s motions for sanctions and for reconsideration.

On February 13, 2025, the district court denied the motion for reconsideration. Doc. 164 (AG), Doc. 161 (GW). In the same order, the district court held that "sanctions under Rule 26(g) and Rule 37(c)(1) are appropriate here." Doc. 164 at 14 (AG), Doc. 161 (GW). The district court awarded monetary sanctions but declined to impose non-monetary sanctions because of the motion for reconsideration denial. Doc. 164 at 17 (AG), Doc. 161 (GW).

---

[3] On August 7, 2024, United Inn moved for leave to file a supplemental brief in response to the motion for reconsideration, which the district court granted, Doc. 160 (AG), Doc. 157 (GW).

## II.   Statement of Facts.

### a.  United Inn's Management, Staffing, and Operations.

United Inn is a hotel in Decatur, Georgia. At all times relevant, it was owned by Tahir Shareef and Harsimran Sabharwal. Doc. 131-8 at 22:1-25:11 (AG), Doc. 128-8 (GW). Shareef and Ashar Islam managed the day-to-day operations of the hotel.  Doc. 131-8 at 29:25-30:6 (AG), Doc. 128-8 (GW). The hotel has 172-rooms, and averages around 150 – 300 guests per night. Doc. 131-8 at 158:16-159:17 (AG), Doc. 128-8 (GW).

During discovery, United Inn produced conflicting information about who worked at the hotel. Doc. 116 at 14 (AG), Doc. 114 (GW). It provided first names only for some staff; no contact information for others; and its owner admitted that the hotel paid some staff in cash and did not keep records of the payments. Doc. 116-27 at 361:5 – 363:20; 380:18 – 381:2; 395:23 – 396:7 (AG), Doc. 114-27 (GW). In its sanctions briefing, United Inn's lawyer, "readily acknowledge[d]" that United Inn's "initial discovery responses and production were deficient." Doc. 122 at 1 (AG), Doc. 120 (GW). For this, the district court sanctioned United Inn under Rule 26(g) and 37(c)(1). Doc. 164 at 14 (AG), Doc. 161 (GW).

By 2013, O.C.G.A. § 16-5-47 required Georgia hotels, including United Inn, to post anti-trafficking notices that told trafficking victims of their rights and provided information about who to call for help. United Inn did not post the notices,

which is a criminal misdemeanor under Georgia law. *See* Doc. 130-23 at 10 (AG), *See* Doc. 127-23 at 10 (GW); O.C.G.A. § 16-5-47.

United Inn's owner admitted that United Inn "regularly violated" DeKalb County safety and health codes. *Id.* at 73:10-16. And it did. In 2017 alone, DeKalb County cited United Inn for 447 violations. *Id.* at 80:2-81:19. In 2018, United Inn pled guilty to those violations and paid a $60,345 fine. Doc. 130-22 (AG), Doc. 127-22 (GW); Doc. 130-4 at 344:11–346:12 (AG), Doc. 127-4 (GW). In 2019, DeKalb County suspended United Inn's license until it paid additional fines for noncompliance. Doc. 131-3 at 348:14-25, 349:1-25, 350:1-6 (AG), Doc. 128-3 (GW).

### b. United Inn's Frequent Crime, and "Problem" with Commercial Sex Crimes.

United Inn was a "problem hotel" in a high-crime neighborhood and it was known for "drug[s] and prostitution." Doc. 130-20 at 87:12-15 (AG), Doc. 127-20 (GW); Doc. 130-16 at 18:25-19:10 (AG), Doc. 127-16 (GW).

Commercial sex was a "common" "problem" at United Inn. Doc. 130-16 at 18:25-19:10, 52:18-53:4 (AG), Doc. 127-16 (GW). During the relevant period, a "number of women" who were "working at the [United Inn]" and engaging in "commercial sex activities" were being sex trafficked. *Id.* at 20:24-21:7, 27:24-28:23. The most popular website for commercial sex ads at this time—Backpage—

had a tool to filter search results to a certain area. *Id.* at 66:9-67:10. After using that tool, "9 out of 10" ads on the hotel's street were for United Inn. *Id.* at 33:22-34:10, 47:11-15. Worse, some of those sex ads involved minors. *Id.* at 54:9-55:6.

From 2012 to 2016, DeKalb County Police Department came to United Inn at least seven times for commercial sex crimes. Doc. 130-17 at 9-41 (AG), Doc. 127-17 (GW).

In 2017, the year A.G. and G.W. were trafficked at United Inn, commercial sex crimes were rampant. While at United Inn, G.W. met several other women, and one minor, who were engaging in commercial sex. Doc. 130-3 at 115:6 - 117:13; 145:3-147:15 (AG), Doc. 127-3 (GW). In May 2017, United Inn's manager texted about a prostitution-related shooting at the hotel. Doc. 130-4 at 370:21-25 (AG), Doc. 127-4 (GW). This was hardly an isolated incident.

- On June 2, 2017, the police arrested a man who had beaten a woman over monies owed for sexual favors. Doc. 130-17 at 42-56 (AG), Doc. 127-17 (GW).

- On June 20, 2017, the police responded to a fight between a prostitute and her pimp. After the fight, the pimp left the prostitute's room to go stay in another woman's room at the hotel (likely another prostitute). Docs. 130-17 at 57-58 and 130-18 at 1-2 (AG), Docs. 127-17 and 127-18 (GW).

- From June 23 – 26, 2017, A.G. and G.W. were sex trafficked at the hotel.

8

- On July 2 – July 4, and July 20 – July 21, G.W. was sex trafficked at United Inn again.

- On July 20, 2017, the Metro Atlanta Child Exploitation Task Force conducted an operation "in reference [to] child and adult prostitution" unrelated to A.G. and G.W. Doc. 130-18 at 3-4 (AG), Doc. 127-18 (GW).

After 2017, sex crimes and commercial sex remained common at United Inn. From 2018 – 2020, there were at least eight arrests or investigations relating to commercial sex and sex crimes. Doc. 130-18 at 5-56 (AG), Doc. 127-18 (GW).[4]

### c. DeKalb County Police Department's Recommendation that United Inn Get More Security, and United Inn's Choice Not to Do So.

DeKalb County Police Department alerted United Inn to the commercial sex crimes at the hotel. Doc. 130-14 at 15 (AG), Doc. 127-14 (GW). To stem the tide of sex crimes, the police department recommended that United Inn hire additional security. But United Inn did not do so. *Id.* at 113:23-114:3; 154:5-13, 155:19-22.

United Inn had only one security guard who worked at the hotel from 10 p.m. – 2 a.m. Doc.130-4 at 275:14-276:1, 277:9-15 (AG), Doc.127-4 (GW). For the rest of the night, United Inn had one person working. *Id.* at 49:17-50:7. The hotel had 36 surveillance cameras that captured footage of the common areas, parking lots,

---

[4] Undersigned counsel represents a woman who was sex trafficked at United Inn at the age of 16 in 2018-2019. Her civil-beneficiary TVPRA claim is set for trial on July 7, 2025 before Judge Geraghty in the N.D.Ga.

hallways, and other parts of the hotel.  Doc. 130-20, at 158:13-15, 214:4-10 (AG),
Doc. 127-20 (GW).

### d.  The Trafficking of AG and GW at United Inn.

A.G. and G.W. are from Commerce, Georgia. They met their primary
trafficker, Zaccheus Obie, through Instagram. Doc. 131-2 at 31:18-22 (AG), Doc.
128-2 (GW). After A.G. and G.W. expressed interest in dancing at a club in Atlanta,
Obie sent a car to pick them up. Doc. 131-2 at 35:6-9 (AG), Doc. 128-2 (GW). Soon
thereafter, he coerced the girls to engage in commercial sex at United Inn through
violence and threats.[5]

From June 23 to 26, 2017, Obie and his associates, Kikia Anderson and
Dontavis Carr, trafficked A.G. and G.W. at United Inn.  Doc. 130-2 at 14:23-24,
28:17-21, 73:1-8, 99:21-24 (AG), Doc. 127-2 (GW); Doc. 130-3 at 14:12-13, 21:15-
19, 76:13-17, 110:13-17; 158:14-19 (AG), Doc. 127-3 (GW).  In addition, Obie,
Anderson, and Carr sex trafficked G.W. at United Inn again from July 2, 2017 to
July 4, 2017 and July 20, 2017 to July 21, 2017. Doc. 130-3 at 158:22-159:8 (AG),

---

[5] A.G. and G.W. believed Obie and his associates were in a gang. Doc. 130-2
at 138:11-139:10 (AG), Doc. 127-2 (GW); Doc. 130-3 at 168:1-19 (AG), Doc. 127-
3 (GW). Obie and his associates carried guns. Doc. 130-2 at 137:9-138:3 (AG), Doc.
127-2 (GW); Doc. 130-3 at 166:12-167:2 (AG), Doc. 127-3 (GW). Obie threatened
A.G. and G.W. at United Inn. Doc. 130-2 at 132:4-9, 137:9-16, 114:9-15 (AG), Doc.
127-2 (GW); Doc. 130-3 at 151:23-152:3, 165:22-166:11 (AG), Doc. 127-3 (GW).
He was violent towards women in front of them. Doc. 130-3 at 72:4-16, 151:23-
152:3, 165:22-166:11 (AG), Doc. 127-3 (GW).

Doc. 127-3 (GW). A.G. and G.W. lived at the hotel—they slept there, showered there, ate there, and engaged in other acts of daily life before and after their serial victimization.

Obie and Anderson pled guilty to sex trafficking A.G. and G.W. as minors at United Inn in violation of 18 U.S.C. § 1591. *United States v. Obie*, Case No. 1:18-cr-424 (N.D.Ga., Nov. 6, 2020), Docs. 160, 178; *United States v. Anderson*, Case No. 1:18-cr-424 (N.D.Ga., April 1, 2021), Doc. 177.

### i. AG and GW were repeatedly assaulted and sexually exploited at United Inn.

A.G.'s and G.W.'s traffickers demanded that the two children make at least $500 per day from commercial-sex work at United Inn. Doc. 130-2 at 71:10-24, 179:16-180:8 (AG), Doc. 127-2 (GW); Doc. 130-3 at 80:11-16 (AG), Doc. 127-3 (GW). A.G. had sex for money with approximately 15 men at United Inn. Doc. 130-2 at 86:4-19, 131:12-20 (AG), Doc. 127-2 (GW). One man who paid the 17-year-old for sex slapped her in the face and held her down while she cried. Doc. 130-2 at 131:21-132:3 (AG), Doc. 127-2 (GW); Doc. 130-3 at 191:8-13 (AG), Doc. 127-3 (GW). G.W. had sex for money with approximately 30 men at United Inn. Doc. 130-3 at 159:21-160:5 (AG), Doc. 127-3 (GW).

To attract sex buyers, the two minors wore scant, provocative clothing and loitered in the hotel's common areas. Doc. 130-2 at 82:2-7, 147:8-11 (AG), Doc. 127-2 (GW); Doc. 130-3 at 77:7-10, 117:19-24, 169:24-170:10, 173:23-5 (AG),

Doc. 127-3 (GW). A.G. and G.W. loitered in the parking lot in the middle of the night to meet sex buyers. Doc. 130-2 at 63:2-12, 65:5-8; 74:20-75:4; 119:13-5; 140:19-141:5 (AG), Doc. 127-2 (GW); Doc. 130-3 at 56:14-57:2, 88:6-15, 163:18-24, 169:18-170:10, 171:22-25, 173:23-25 (AG), Doc. 127-3 (GW). Sex buyers drove into the hotel's parking lot and circled the lot to find girls. Doc. 130-2 at 63:2-12, 65:5-8; 74:20-75:4; 140:19-141:5 (AG), Doc. 127-2 (GW). Sometimes the two teenagers had sex with groups of men together, and sometimes one girl would wait in the bathroom or the hallway while the other engaged in commercial sex with a buyer. Doc. 130-2 at 200:2-203:25 (AG), Doc. 127-2 (GW); Doc. 130-3 at 94:23-96:3, 161:4-18, 162:20-163:17 (AG), Doc. 127-3 (GW).

At least twice, groups of five adult men purchased sex with A.G. and G.W. Doc. 131-2 at 161 (AG), Doc. 128-2 (GW). Both times, disputes arose, and there was significant commotion in United Inn's common areas as a result. Doc. 131-2 at 161 (AG), Doc. 128-2 (GW). G.W. threatened to pepper spray one of the groups of men. Doc. 130-2 at 134:14-136:9 (AG), Doc. 127-2 (GW); Doc. 130-3 at 161:4-163:7 (AG), Doc. 127-3 (GW). One dispute between the five adult men and the two teenagers lasted for 15-20 minutes in United Inn's common areas, and the other lasted for 10-15 minutes in United Inn's common areas. Doc. 130-2 at 77:4-21, 81:10-82:1 (AG), Doc. 127-2 (GW); Doc. 130-3 at 95:9-11 (AG), Doc. 127-3 (GW).

### ii.    AG's and GW's Traffickers Visited United Inn Repeatedly and Appeared Friendly with Staff.

United Inn had an ongoing business relationship with A.G.'s and G.W.'s traffickers and their associates. Doc. 130-3 at 213:5-10, 91:18-25 (AG), Doc. 127-3 (GW); Doc. 130-2 at 132:14-134:3 (AG), Doc. 127-2 (GW); Doc. 130-11 (AG), Doc. 127-11 (GW); Doc. 130-12 (AG), Doc. 127-12 (GW). A.G. and G.W.'s traffickers, and their associates, repeatedly paid United Inn to rent rooms for A.G.'s and G.W.'s trafficking. Doc. 130-2 at 57:7-22, 58:15-25 (AG), Doc. 127-2 (GW); Doc. 130-3 at 76:8-15, 100:11-101:11 (AG), Doc. 127-3 (GW); Doc. 130-11 (AG), Doc. 127-11 (GW); Doc. 130-12 (AG), Doc. 127-12 (GW). For example, Carr, an associate of A.G.'s and G.W.'s traffickers, rented a United Inn room from June 23 to June 26, 2017, and from this room, Carr, Obie, and Anderson trafficked the minors A.G. and G.W. Doc. 130-2 at 57:7-22 (AG), Doc. 127-2 (GW); Doc. 130-3 at 76:8-15 (AG), Doc. 127-3 (GW); Doc. 130-11 (AG), Doc. 127-11 (GW). Carr had previously rented a room in February 2017, and he later rented a room used to traffic G.W. as a teen on July 2 – 4, 2017. Doc. 130-3 at 158:22-159 (AG), Doc. 127-3 (GW); Doc. 130-11 (AG), Doc. 127-11 (GW). Anderson, one of A.G.'s and G.W.'s convicted traffickers, rented a United Inn room that was used to traffic G.W. on July 20 – July 21, 2017. Doc. 130-3 at 158:22-159 (AG), Doc. 127-3 (GW); Doc. 130-12 (AG), Doc. 127-12 (GW).

Every morning, Obie collected the money A.G. and G.W. received from the men victimizing them. Doc. 130-2 at 88:16-20, 132:14-18 (AG), Doc. 127-2 (GW); Doc. 130-3 at 73:4-7, 91:18-25, 122:8-11 (AG), Doc. 127-3 (GW). Then he went directly to United Inn's front office to pay for the room to traffic them another day. Doc. 130-3 at 91:18-25, 100:11-101:11 (AG), Doc. 127-3 (GW); Doc. 130-2 at 132:14-134:3 (AG), Doc. 127-2 (GW). The teens' traffickers had been to United Inn multiple times and appeared familiar with United Inn's staff. Doc. 130-2 at 132:14-134:3 (AG), Doc. 127-2 (GW); Doc. 130-3 at 213:5-10, 91:7-25 (AG), Doc. 127-3 (GW). G.W. testified:

> Q. Do you have any information, knowledge, or evidence that anyone at the United Inn acted as a lookout for PD?
> A. Like, do I have concrete knowledge of that?
> Q. Yes, ma'am.
> A. No. I don't.
> Q. But you think that's what was occurring. Is that fair to say?
> A. Yes. That's fair to say.
> Q. And is that because of what you told me earlier about PD disappear-ing for 15 or 20 minutes?
> A. ***Yes. And also based on the way I realized that he was very familiar with every single place that he took us to. And United Inn and Suites was the most frequent place that we went to***.
> Q. Okay. So in this month -- roughly a little over a month -- that you were trafficked, you believe that you were trafficked the most at United Inn?
> A. ***I believe that I never went to any hotel three times besides, you know, the Inn and Suites***.

Doc. 119-2 at 174 (AG), Doc. 117-2 (GW) (emphasis added).

One night, the two children went to United Inn's front office because they were locked out of their room. The front desk clerk called either Obie or Carr. After

that call, the front desk clerk walked G.W. and A.G. back to the room in which they were being sex trafficked, unlocked the door, and let A.G. and G.W. back in. Doc. 130-2 at 142:5-11, 145:14-147:2 (AG), Doc. 127-2 (GW); Doc. 130-3 at 102:16-103:25 (AG), Doc. 127-3 (GW).

### iii.    A.G. and G.W. Repeatedly went to the Lobby to Buy Goods.

A.G. and G.W. frequented the store at United Inn and United Inn staff sold the children condoms, food, and other items. Doc. 130-2 at 125:25-126:1, 142:6-11 (AG), Doc. 127-2 (GW); Doc. 130-3 at 89:11-15, 98:6-24, 211:12-17 (AG), Doc. 127-3 (GW).

## III.    A.G. and G.W.'s Motions for Sanctions Based on Defendant's Discovery Abuse.

After discovery, but before summary-judgment briefing, A.G. and G.W. moved for sanctions based on United Inn's discovery misconduct. Doc. 116 (AG), Doc. 114 (GW). In their sanctions motion, A.G. and G.W. requested monetary and non-monetary sanctions.  Relevant here, A.G. and G.W. argued:

> Defendant should not be allowed to introduce evidence or argument at trial that its staff never reported concerns about commercial sex at the hotel, … and that none of its staff had criminal records or were complicit in crime at the hotel, because it has produced inconsistent, incomplete information about who worked at the hotel. Plaintiff cannot confront Defendant's claims about staff reports of crime, staff trainings, and vetting of staff because Plaintiff does not know who Defendant's employees were and cannot find them. ... Alternatively, Plaintiff requests a jury instruction on how Defendant's conflicting and partial staff records compromised Plaintiff's ability to

examine Defendant's claims about staff crime reports, staff trainings, and vetting of staff, among other topics.

The district court did not rule on A.G. and G.W.'s earlier-filed sanctions motions until after it ruled on United Inn's later-filed summary-judgment motions, which are addressed in the next section.

When finally addressing A.G.'s and G.W.'s sanctions motions, the district court held that United Inn engaged in sanctionable discovery misconduct and awarded A.G.'s and G.W.'s requested attorneys' fees. As noted in Section V. below, the district court denied A.G.'s and G.W.'s request for additional non-monetary sanctions and said that their requested inference instruction about United Inn's failure to identify its staff did not change the summary judgment outcome because they "only requested trial sanctions." (Doc. 164 at 3 n.1). The district court also contended that "only after the Court granted summary judgment in favor of Defendant" did A.G. and G.W. argue "that [they were] critically hamstrung in [their] ability to develop the evidence because of Defendant's discovery misconduct." (Doc. 164 at 3 n.2).

## IV.    The District Court's Order Granting Defendant's Motion for Summary Judgment and Dismissing A.G.'s and G.W.'s Lawsuits.

The district court's order granting summary judgment "focus[ed] on the participation element" of 18 U.S.C. § 1595(a). Doc. 151 at 7 (AG), Doc. 148 (GW). It did "not address the other prongs of the test." Doc.151 at 17, n.6 (AG), Doc. 148

(GW). The court said that to meet the participation element, A.G. and G.W. "must demonstrate that United *acted pursuant to the common goal of the trafficking venture*." Doc.151 at 13 (AG), Doc. 148 at 14 (GW) (emphasis). According to the district court, the "common goal" framework means that A.G. and G.W. had to produce evidence of "*more* than United's knowledge of the illicit activity and its rental of rooms to Plaintiff's traffickers," like evidence that "United took steps *with* Plaintiff's traffickers to facilitate the traffickers' illicit activities." Doc.151 at 13-14 (AG), Doc. 148 (GW). The district court concluded that A.G. and G.W.'s evidence fell short; "the record presented here shows that United took actions that would be expected to further the interest of a hotel enterprise. This included renting rooms, collecting payment for the rooms and providing additional towels to guests upon request." Doc. 151 at 13-14 (AG), Doc. 148 (GW).

The district court disagreed that A.G. and G.W. could meet the second prong by showing "that United took part in a common undertaking or enterprise involving risk and potential profit." Doc. 151 at 16 (AG), Doc. 148 (GW (quoting Eleventh Circuit's standard from *Red Roof*)). "[I]f that were true, the participation requirement would automatically be satisfied any time the defendant is a hotel

operator or other commercial entity, irrespective of whether the entity had any involvement in the plaintiff's trafficking." (*Id.* at 16).[6]

As to the negligence claims, the district court held that A.G. and G.W. were licensees, not invitees, because "the subject matter of the alleged implied invitation was sex trafficking, which necessarily places [them] outside the bounds of invitee status." Doc. 151 at 21 (AG), Doc. 148 at 22 (GW). Consequently, United Inn's duty "was to avoid willful or wanton injury" to A.G. and G.W.; "[s]ince [A.G. and G.W.] do[] not argue that United willfully or wantonly caused [their] injur[ies], United is entitled to judgment as a matter of law on [their] negligence claim." Doc. 151 at 22 (AG), Doc. 148 at 22-23 (GW).

Finally, the district court said it would schedule a hearing about the sanctions briefing. Doc. 151 at 22 (AG), Doc. 148 (GW).

---

[6] The District Court cited two Eleventh Circuit opinions. The Eleventh Circuit has one published, precedential opinion on 18 U.S.C. § 1595(a): *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021). The other referenced opinion is an unpublished, unargued, *per curiam* opinion: *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024). The *Riti* opinion was issued *after* summary judgment briefing was submitted in the instant case; the parties were not given an opportunity to respond to the issues raised by the *Riti* opinion, as required by Rule 56(f)(2).

## V.     The District Court's Order Denying A.G.'s and G.W.'s Motions for Reconsideration and Imposing Partial Sanctions.

A.G. and G.W. moved for the district court to reconsider its summary judgment order.  Doc. 154 (AG), Doc. 151 (GW).

The district court held that A.G. and G.W. had not met the second element, because "observation of prostitution and sex trafficking at its property is not the same as [United Inn] participating in it."  Doc. 164 at 5 (AG), Doc. 161 (GW) (quoting Doc. 151). As to negligence, the district court reaffirmed its lawful purpose analysis and licensee ruling. Doc. 164 at 11 (AG), Doc. 161 (GW).

The district court contended that A.G. and G.W. made "one additional argument … for the first time," that an "adverse inference" should be drawn at the summary judgment stage "that [United Inn's] partial, late, and inconsistent discovery responses regarding the people who worked [at United Inn] means that the workers would have supported [A.G.'s and G.W.'s] position that [United Inn]] aided and abetted [A.G.'s and G.W.'s] trafficking."  Doc. 164 at 9 (AG), Doc. 161 (GW).  "In the Court's view, [A.G.'s and G.W.'s] request is something that should have been raised earlier—if not with the summary judgment briefing, then sometime soon after *Riti* was decided."[7]  Doc. 164 at 9 (AG), Doc. 161 (GW).

---

[7] Rule 56(f)(2) requires the court to "giv[e] notice and a reasonable time to respond" before granting a motion for summary judgment on grounds not raised by a party.

19

In the same order, however, the district court noted that A.G. and G.W. moved for sanctions *before* United Inn moved for summary judgment, and that A.G. and G.W. had requested "sanctions" for United Inn's failure to identify its staff in violation of Federal Rules of Civil Procedure 26(a), 26(e), 26(g), and 37. Doc. 164 at 2-3, n.1 (AG), Doc. 161 (GW). Nonetheless, the Court said that it "appeared that the motions [for summary judgment and for sanctions] were completely independent of each other." Doc. 164 at 3 (AG), Doc. 161 (GW). It clarified that, "[e]ven if the Court would have handled the Motion for Sanctions first, it would not have changed the outcome of the summary judgment order because Plaintiff's Motion for Sanctions only requested trial sanctions." Doc. 164 at 3, n.1 (AG), Doc. 161 (GW).

The district court imposed monetary sanctions under Rule 26(g) and Rule 37(c)(1) because "[United Inn] failed to conduct a reasonable inquiry" of its records and "failed to timely supplement its discovery responses." Doc. 164 at 14 (AG), Doc. 161 (GW). It denied "non-monetary trial sanctions" because it denied reconsideration. Doc. 164 at 17 (AG), Doc. 161 (GW).

## **STANDARD OF REVIEW**

The Court reviews "[the] district court's grant of summary judgment de novo, viewing all evidence and drawing all reasonable factual inferences" in favor of A.G. and G.W., as the non-movants, and against United Inn, as the movant. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012). "'Credibility

20

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [the judge] is ruling on a motion for summary judgment or for a directed verdict.'" *Id.*

## SUMMARY OF ARGUMENT

**I.**      The district court erred in finding that A.G. and G.W did not satisfy the "participation in a venture" element of 18 U.S.C. § 1595(a).  Contrary to the district court's holding, "participation in a venture" does not require evidence that a hotel operator "acted pursuant to the common goal of the trafficking venture." Rather, as this Court held in *Doe #1 v. Red Roof Inns, Inc.,* 21 F.4th 714 (11th Cir. 2021), "participation in a venture" means "t[aking] part in a common undertaking or enterprise involving risk and potential profit." *Id.* at 725. If the "common undertaking or enterprise" element required proof "that the defendant knowingly facilitated" criminal trafficking, then the "should have known" standard in 18 U.S.C. § 1595(a) would be "superfluous;" the Eleventh Circuit held that the statute "make[s] no sense" if read that way. *Id.* at 724; *id.* at 730 (Jordan, J.) (concurring) ("T]he participation element of a 'beneficiary' claim under § 1595(a) does not require that the defendant in question have participated in the sex trafficking act itself.").

Even if the district court properly interpreted the "participation in a venture" element, it erred in its application of it. *First*, the court erred by failing to construe all facts in the light most favorable to the non-movant by, among other things,

considering reasonable inferences from direct evidence and circumstantial evidence. Summary judgment is not warranted when the proper standard is applied. *Second*, the court erred by rejecting A.G.'s and G.W.'s requests for an inference based on United Inn's failure to identify its staff. Even though the court sanctioned United Inn for discovery violations, at summary judgment it did not consider the inference arising from United Inn's discovery misconduct because A.G. and G.W. "only requested trial sanctions." Doc. 164 at 3, n.1 (AG), Doc. 161 (GW). But A.G. and G.W. moved for sanctions before summary judgment briefing, and the court was obligated to construe all facts in the light most favorable to A.G. and G.W. and to draw all reasonable inferences therefrom, which included the requested inference. Because United Inn acts through its staff—the same staff it did not identify in discovery—its failure to identify its staff materially prejudiced A.G.'s and G.W.'s ability to meet the district court's "participation in a venture" standard. With the inference considered, summary judgment is improper.

II.    The district court also erred in concluding, as a matter of law, that "the subject matter of the alleged implied invitation was sex trafficking, which necessarily places [A.G. and G.W.] outside the bounds of invitee status." Doc. 151 at 21 (AG), Doc. 148 at 22 (GW). Under Georgia premises liability law, summary judgment in negligence cases is only appropriate where the evidence is "plain, palpable, and undisputed." This is not such a case. A.G. and G.W. lived at United

Inn for several days, were frequent customers of United Inn's store, and were invited to stay in a room by United Inn staff. Any of those facts, standing alone, creates a jury question as to A.G.'s and G.W.'s invitee status at United Inn, which is sufficient to defeat summary judgment. A jury, not the judge, must weigh conflicting evidence on status, and resolve questions about the scope of United Inn's invitations to A.G. and G.W. The district court's categorial rule that child sex trafficking *victims* (not perpetrators) "necessarily" are "outside the bounds of invitee status" is wrong as a matter of law and public policy.

## **ARGUMENT**

### I.   **The District Court Erred by Finding that A.G. and G.W. Did Not Satisfy the "Participation in a Venture" Element of 18 U.S.C. § 1595(a).**

The district court's ruling that A.G. and G.W. did not satisfy the "participation in a venture" element of their TVPRA civil-beneficiary claim under 18 U.S.C. § 1595 is legal error. It runs afoul of the text of 18 U.S.C. § 1595(a) and the Court's binding interpretation of "participation in a venture" in *Red Roof*, 21 F.4th at 727.

Because A.G. and G.W.'s evidence satisfies the definition of "participation in a venture" set forth in *Red Roof*, which aligns with the text of § 1595(a), summary judgment was improper.  Even if the district court's "common goal" framework were correct, the district court still erred in granting summary judgment. When all evidence is construed in the light most favorable to A.G. and G.W., as is required,

and when all reasonable inferences are drawn therefrom, summary judgment is improper.

### a. Binding Eleventh Circuit Precedent Holds that 18 U.S.C. § 1595(a) Means What it Says: Negligent Beneficiaries of Trafficking May be Liable.

In in its only precedential opinion on civil-beneficiary claims under 18 U.S.C. § 1595(a) against franchisors, this Court held that the 2008 amendment to the TVPRA means what it says: negligent beneficiaries of trafficking, who are not criminal perpetrators of trafficking, may be liable to sex trafficking victims under 18 U.S.C. § 1595(a). *Red Roof,* 21 F.4th 714.[8]

In 2008, Congress amended the civil cause of action under Section 1595(a) to create a cause of action against beneficiaries:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (***or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter***) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees. (emphasis added).

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044, 5067 (2008) (codified at 18 U.S.C. § 1595(a)).

---

[8] The Eleventh Circuit has never issued a precedential opinion on civil-beneficiary claims against hotel owners and operators. *Red Roof* concerned franchisors, and *Riti* is non-precedential.

Before the 2008 amendment, sex trafficking victims were only authorized to bring "civil action[s] against the perpetrator"—*i.e.*, the criminal trafficker. After the 2008 amendment, victims were empowered to bring civil actions against "whoever" "benefits," so long as the statutory elements are proven.

*Red Roof* concerned the district court's dismissal of civil-beneficiary claims for failure to state a claim against franchisors of international hotel brands where plaintiffs were sex trafficked. *Red Roof*, 21 F.4th at 721. On appeal, "[t]he only question" was "whether the Does have plausibly alleged that the franchisors are liable." *Id.* at 723. "At its core," the appeal was "about statutory interpretation"—*i.e.*, the meaning of the 2008 amendment to § 1595(a). *Id.* To interpret the statute, the Court, "as always," analyzed "the common and ordinary meaning of the words used[.]" *Id.* at 723.[9]

"Most of the parties' dispute" concerned the "second element"—*i.e.*, "participation in a venture." 21 F.4th at 724. The Court surveyed dictionary definitions, and "conclude[d] that the phrase 'participation in a venture' requires that the Does allege that the franchisors ***took part in a common undertaking or enterprise involving risk and potential profit***." *Red Roof*, 21 F.4th at 725 (emphasis added).

---

[9] *Red Roof*'s analysis of the second element ("participation in a venture") and the fourth element ("knew or should have known of an action in violation of the TVPRA") are relevant here.

25

The "common undertaking or enterprise" element (i.e., the second element of a § 1595(a) civil-beneficiary claim) does ***not*** require evidence of participation in a sex trafficking venture for at least five reasons.

*First*, the statute does not say "participation in a sex trafficking venture." Rather, it says "participation in a venture." That should end the discussion, because "[w]hen the meaning of the statute's terms is plain, our job is at an end." *Bostock v. Clayton County*, 590 U.S. 644, 674, 140 S. Ct. 1731, 1749 (2020); *see also Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.").

*Second*, the Court's interpretation of "participation in a venture" to mean "taking part in a common undertaking or enterprise involving risk or potential profit" is not limited to sex trafficking ventures. There are various "undertaking[s] or enterprise[s] involving risk and potential profit" that are not sex trafficking ventures and that fit the Court's definition. For example, certain hotel ventures, as alleged here. *See, e.g.*, *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023) ("[n]early every court agrees," and even "the Eleventh Circuit has acknowledged," that "the alleged venture can be a 'commercial venture []' like running or expanding a business.")

*Third*, if proof of "participation in a venture" *really* means participation in a *sex trafficking venture*, then the statutory distinction between perpetrators and beneficiaries created by Congress would be nullified. "A plaintiff can sue a perpetrator of sex trafficking—*i.e.*, someone who has violated the criminal statute—without resort to the beneficiary cause of action." *Red Roof*, 21 F.4th at 724. Congress amended the statute, and created the "beneficiary cause of action," to expand civil liability beyond perpetrators to a new class of persons: beneficiaries. *Id.* at 724.

*Fourth*, the statute's elements must be read in context with each other. *Util. Air Regulatory Grp. v. E.P.A.*, 573 U.S. 302, 320, 134 S. Ct. 2427, 2441 (2014) (It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). The fourth element asks whether the "defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA." *Red Roof*, 21 F.4th at Id. at 726. "Constructive knowledge" is that "knowledge which one using reasonable care or diligence should have." *Id.* at 725 (internal quotation omitted). "This is a ***negligence standard***[.]" *Salesforce.com*, 76 F.4th at 555 (emphasis added). If "participation in a venture" required proof "that the defendant knowingly facilitated" criminal trafficking, then the "should have known" standard would be

27

"superfluous." *Id.* at 724.[10] Thus, the Eleventh Circuit's only binding precedent on civil-beneficiary claims establishes that a TVPRA victim has a right to recover from a defendant that *unknowingly* facilitates a violation, if the defendant should have—but did not—know about it.

*Fifth*, in a prescient concurrence, Judge Jordan emphasized that "the participation element of a 'beneficiary' claim under § 1595(a) . . . requires only that a defendant take part in a common undertaking or enterprise involving risk and profit." *Id.* at 730 (Jordan, J., concurring). "[T]he participation element of a 'beneficiary' claim under § 1595(a) does not require that the defendant in question have participated in the sex trafficking act itself." *Id.*

True, the *Red Roof* Court did analyze "whether the Does plausibly alleged that the franchisors took part in the common undertaking of sex trafficking with hotel employees, management, owners, and sex traffickers." *Id.* at 726. But the Court's "common undertaking of sex trafficking" framework was rooted in the facts of that case. The *Red Roof* plaintiffs, unlike A.G. and G.W., *only* alleged that the "ventures" in which the franchisors allegedly participated were "sex trafficking ventures." *See id.* at 726 ("We begin with the venture the Does say that the franchisors participated

---

[10] The *Red Roof* Court rejected the argument that the criminal definition of "participation in a venture" in § 1591 should be imported into § 1595(a) because doing so would "make no sense." *Red Roof*, 21 F.4th at 724. The Court explained that "the text of this statute overcomes th[e] presumption" that "Congress intends phrases in the same statute to mean the same thing." *Id.*

28

in. Throughout their complaints, the Does alleged that the franchisors participated in 'sex trafficking ventures.'"); *see also id.* at 727 ("Again, every time the complaints refer to ventures, they refer to 'sex trafficking ventures.' And those ventures were alleged to include the sex traffickers themselves as participants.").[11]

Nowhere in *Red Roof* does the court say—much less hold—that all sex-trafficking victims must plead and prove in a civil-beneficiary lawsuit that the defendant knowingly participated in a sex-trafficking venture or knowingly facilitated a violation of criminal trafficking laws. In fact, it says *the opposite*.

### b. A.G. and G.W. Satisfied the Second Element—Participation in a Venture—Under 1595(a) and *Red Roof*.

Here, A.G. and G.W. met *Red Roof*'s plain-meaning interpretation of "participation in a venture." Because of the evidence that United Inn "took part in a common undertaking or enterprise involving risk and potential profit," summary judgment was improper. *Red Roof*, 21 F.4th at 725.

---

[11] When, as in *Red Roof*, a civil-beneficiary plaintiff alleges that the defendant participated in a *sex trafficking venture*, then proof that the defendant observed sex trafficking doesn't necessarily prove that the defendant participated in the alleged venture. More is needed. In that context, the *Red Roof* Court correctly noted that "[o]bserving something is not the same as participating in it"—*i.e.*, evidence that defendant observed sex trafficking did not prove that defendant participated in the alleged sex trafficking venture. *Doe #1*, 21 F.4th at 727. But when, as here, A.G. and G.W. alleged that the venture is operating a hotel and renting rooms, they prove the second element by showing that defendant operated the hotel and rented rooms, because it shows the defendant took part in an "undertaking or enterprise undertaking involving risk or profit."

29

A.G. and G.W. presented evidence that A.G.'s and G.W.'s traffickers paid for rooms and goods at United Inn. Doc. 130-3 at 76:4-7 (AG), Doc. 127-3 (GW). By doing so, the hotel engaged in a "common undertaking or enterprise involving risk and potential profit." The "common undertaking or enterprise" was business transactions between United Inn and the traffickers—money to United Inn in exchange for rooms and goods for the traffickers. Each side benefited from the bargain—United Inn made money, and the traffickers obtained rooms to sell children for sex and a place to buy goods. There was "risk" from these exchanges. Risks like rooms being damaged, or used for nefarious purposes, like child sex trafficking.

In sum, United Inn participated in a venture with A.G. and G.W.'s traffickers by participating in a common undertaking with risk and profit. *See, e.g.*, *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023) ("[n]early every court agrees," and even "the Eleventh Circuit has acknowledged," that "the alleged venture can be a 'commercial venture []' like running or expanding a business.")

### c. The District Court's "Common Goal" Standard Eviscerates the Text of Section 1595(a) and *Red Roof*.

Even though United Inn's room rentals to A.G.'s and G.W.'s traffickers were a common undertaking with risk (e.g., damage to rooms, criminal activity in rooms) and profit (e.g., rent money), the district court held that was not enough. It held that A.G. and G.W. "must demonstrate that United ***acted pursuant to the common goal***

*of the trafficking venture*" by showing that "United took steps *with* [A.G.'s and G.W.'s] traffickers to facilitate the traffickers' illicit activities." Doc. 151 at 13 (AG), Doc. 148 at 14 (GW). The next section explains why A.G. and G.W. met even that heightened standard. But this section explains why the district court's standard is incorrect and why A.G. and G.W. do not have to meet it.

The "common goal" framework is nearly identical to the criminal standard. Under Section 1591(e)(4)—the criminal section—"[t]he term 'participation in a venture' means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1) [a violation of the TVPRA]." 18 U.S.C. § 1591(e)(4). If United Inn "acted pursuant to the common goal of the trafficking venture," or "took steps *with* [A.G.'s and G.W.'s] traffickers to facilitate the traffickers' illicit activities," then it was not a beneficiary that "should have known" of minor sex trafficking; it was a criminal perpetrator. But A.G. and G.W. did not allege United Inn perpetrated sex trafficking; they sued under the civil-beneficiary provision.

*Red Roof* considered and **rejected** the argument that "participation in a venture" means the same thing in the criminal statute and the civil statute. *Red Roof*, 21 F.4th at 724 (statute "make[s] no sense" when read that way). If a civil-beneficiary plaintiff had to show evidence that the defendant had the "common goal of the trafficking venture," or facilitated specific trafficking activities, then the

defendant would be a perpetrator, and the "should have known" standard in the civil-beneficiary provision would be "superfluous." *Red Roof* at 724.

As noted, *Red Roof* did hold that the plaintiffs there had not plausibly alleged participation in "sex trafficking ventures." There are at least two key distinctions between *Red Roof* and this case.

*First*, unlike the *Red Roof* plaintiffs, A.G. and G.W. alleged that United Inn participated in a venture by operating the hotel and renting rooms for money to the traffickers. In the second paragraph of their complaints, A.G. and G.W. alleged:

> Northbrook knowingly benefited from participation in a venture which it knew or should have known engaged in an act in violation of the TVPRA because it **(i)** rented the rooms at the United Inn in which Plaintiff was sex trafficked, **(ii)** collected fees for rental of those rooms, and **(iii)** did so notwithstanding that it knew or should have known that Plaintiff was a victim of sex trafficking. As such, Northbrook is liable to Plaintiff for her damages under the TVPRA.

(Doc. 1 at Doc. 1 at ¶2(a)).  A.G. and G.W. incorporated that allegation into the substantive TVPRA count (Count I) in their respective complaints.  ¶ 71 ("Plaintiff incorporates Paragraphs 1 through 70 as if fully restated herein verbatim."). Elsewhere, they alleged United Inn violated the TVPRA with language directly from the civil-beneficiary statutory provision. *See* ¶¶ 72, 76, 77.[12]

---

[12] Considering these allegations, the Court's statement in its reconsideration order that it "is not persuaded that Plaintiff did not plead a sex trafficking venture" Doc. 164 at 7 (AG), Doc. 161 (GW) conflicts with the record, Rule 8, and the Rule 56 standard. It is true that, in some paragraphs of their complaints, A.G. and G.W. allege that United Inn participated in "sex trafficking ventures," (Doc. 1, ¶¶11, 74, 79). But

Courts have consistently held that participation in a venture can be shown without demonstrating participation in a sex trafficking venture. "Nearly every court agrees," and even "as the Eleventh Circuit has acknowledged," "the alleged venture can be a 'commercial venture []' like running or expanding a business." *Salesforce.com*, 76 F.4th at 554. "While a 'venture' can certainly run the gamut from an isolated act of sex trafficking to an international sex-trafficking enterprise, it can also be a business whose primary focus is not on sex trafficking." *Id.* After all, "[t]he text of Section 1595 does not say 'sex-trafficking venture,' but only 'venture.'" *Id.* at 553-54.

*Second*, unlike here, the claims at issue in *Red Roof* were against the franchisors—not the hotel operators. *See, e.g.,* 21 F.4th at 727. Unlike here, the *Red Roof* franchisors didn't rent the rooms to the sex traffickers, they just received a

---

it is also true that their complaints allege that the subject venture was the operation of the hotel and rental of rooms, (Doc. 1, ¶¶ 2(a), 71), and that United Inn violated the language of the statute. (Doc. 1, ¶¶ 72, 76, 77).

In sum, A.G. and G.W. pled multiple theories of the subject venture. In *Red Roof*, the plaintiffs *only* alleged a sex trafficking venture. *Red Roof*, 21 F.4th at 726-7. The Federal Rules permit pleading in the alternative *and* pleading inconsistent liability theories. Fed. R. Civ. P. 8(d)(2), (d)(3), (e); *Brookhaven Landscape & Grading Co., Inc. v. J. F. Barton Contracting Co.*, 676 F.2d 516, 523 (11th Cir. 1982). At the Rule 56 stage, the district court was required to construe all facts in the light most favorable to A.G. and G.W. Therefore, the district court erred to the extent it concluded that A.G. and G.W. only alleged participation in "sex trafficking ventures" and ignored contrary allegations about the nature of the venture.

33

percentage of revenue from the operation of the franchises. They also never interacted with or assisted the traffickers themselves. *See, e.g., id.* at 726-27. Here, United Inn took part in the venture by directly renting the rooms to A.G.'s and G.W.'s traffickers. Without United Inn, the trafficking wouldn't have occurred at United Inn.

If there were a question about whether a motel operator participates in a venture by directly renting rooms to a sex trafficker, *Red Roof* resolves it. *Red Roof* agreed with *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017) that "renting a room to the abuser" is one of the "kinds of allegations [that] would establish a hotel operator's participation in a venture with a sex trafficker." 21 F.4th at 725-26. This Court explained that its "reasoning is consistent with the disposition" in *Ricchio*, where the plaintiff "plausibly alleged that, ***by renting a room to the abuser***, the operators were 'associating with him in an effort to force [the plaintiff] to serve their business objective.'" *Id.* This Court said, "***we agree that these kinds of allegations would establish a hotel operator's participation in a venture with a sex trafficker***." *Id.* (emphasis added).

If this Court's majority opinion were not enough, Judge Jordan's concurring opinion reinforced, once more, that "the participation element of a 'beneficiary' claim ... does not require that the defendant in question have participated in the sex trafficking act itself." *Id.* at 730. "'[P]articipation in a venture' requires only that a

defendant take part in a common undertaking or enterprise[.]" *Id.; see also M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 971 (S.D. Ohio 2019) (room rentals show participation in a venture); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020) (cited by Judge Jordan in *Red Roof*) (similar).

Finally, this Court's decision in *K. H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024) (unpublished), doesn't support the district court's decision. The complaint in *Riti* was much like the complaint in *Red Roof*—both defined and alleged the venture *only* as a sex-trafficking venture. *See Riti,* 2024 WL 505063, at *3 ("K.H.'s allegations are much like the allegations ... in *Red Roof*. K.H. alleges that Riti participated in a ***common sex trafficking undertaking*** with Laye ....") (emphasis added). Because A.G. and G.W. alleged the venture differently—as the operation of the hotel and the rental of rooms—*Riti* is distinguishable.

For these reasons, the district court's "common goal" framework conflicts with *Red Roof* and Section 1595(a).

### d. Even if the District Court's "Common Goal" Standard is Correct, A.G. and G.W. Met it Anyway.

Even if the district court's "common goal" framework were right, the court still erred in finding that A.G. and G.W. did not meet it. *First*, it improperly disregarded circumstantial evidence and reasonable inferences, which create a jury question as to whether United Inn "acted pursuant to the common goal of the

trafficking venture." *Second*, it did not apply an inference at summary judgment based on United Inn's discovery misconduct and failure to identify hotel staff. Either of those errors, alone, is sufficient to warrant reversal.

### i. The District Court Improperly Disregarded Reasonable Inferences and Circumstantial Evidence.

Even though Rule 56 mandates that the district court view the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor, the district court did not do so. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). And while "there's no legal difference in the weight" between "direct or circumstantial evidence," Pattern Civ. Jury Instr. 11th Cir. 3.3 (2024), the court only considered direct evidence, and disregarded reasonable inferences and circumstantial evidence altogether.[13] Application of the correct standards shows that the district court erred in finding that there was not a jury question as to whether United Inn "acted pursuant to the common goal of the trafficking venture."

In its order granting summary judgment, the district court wrote a benign summary of the record that construes it in the light most favorable to the movant— the *opposite* of the Rule 56 standard. For example:

---

[13] Circumstantial evidence "is proof of a chain of facts and circumstances that tend to prove or disprove a fact." Pattern Civ. Jury Instr. 11th Cir. 3.3 (2024).

> The record presented here shows that United took actions that would be expected to further the interest of a hotel enterprise. This included renting rooms, collecting payment for the rooms and providing additional towels to guests upon request.

Doc. 151 at 13-14 (AG), Doc. 148 (GW). Elsewhere, the district court claimed: "Plaintiff has *not presented evidence* showing that United did more than rent hotel rooms to the traffickers with the knowledge that sex trafficking occurred at its hotel." Doc. 151 at 16, n.5 (AG), Doc. 148 (GW) (emphasis added).  And: "there is *no evidence* that United took steps with [A.G.'s and G.W.'s] traffickers to facilitate the traffickers' illicit activities." Doc. 151 at 14 (AG), Doc. 148 (GW) (emphasis added).

The court must have meant no "[***direct***] evidence," because there was, unquestionably, evidence on those points in the form of reasonable inferences from direct evidence and circumstantial evidence. For example, there was direct evidence that:

(1) United Inn committed a crime under Georgia law during the relevant period by not posting a legally required anti-trafficking notice to notify trafficking victims, like A.G. and G.W., of their rights and how to get help;

(2) United Inn was a problem hotel in a high-crime neighborhood known for its frequent and persistent vice crimes, namely commercial sex activity;

(3) Law enforcement recommended that United Inn get more security to stem the tide of commercial sex on the property, but United Inn did not do so;

(4) United Inn did not background check its staff, keep records of its staff, or identify all its staff in discovery.

37

This direct evidence gives rise to the reasonable inference that United Inn "took steps with [A.G.'s and G.W.'s] traffickers to facilitate the traffickers' illicit activities." Doc. 151 at 14 (AG), Doc. 148 (GW). That's especially true when considered in conjunction with circumstantial evidence, like the below:

(1) A.G.'s and G.W.'s traffickers were experienced traffickers investigated by FBI and convicted by DOJ;

(2) The traffickers repeatedly chose to visit United Inn[14];

(3) The traffickers visited United Inn with G.W. more than any other hotel;

(4) The traffickers would spend 15-20 minutes talking with hotel staff per day;

(5) The traffickers spoke to the hotel front desk in the middle of the night by phone and convinced the front desk staff to allow A.G. and G.W. (two minors) back into the room that they were locked out of and as to which neither was a registered guest;

(6) The hotel had surveillance cameras covering common areas, and A.G. and G.W. had multiple 15-20 minute encounters in common areas with raucous groups of as many as five sex buyers at a time in the middle of the night.

This evidence establishes a "chain of facts and circumstances that tend to prove or disprove a fact"—*i.e.*, that United Inn "took steps with [A.G.'s and G.W.'s] traffickers to facilitate the traffickers' illicit activities." For example, G.W. testified that she inferred United Inn was aiding and abetting her traffickers because Obie would go talk to the hotel staff for 15-20 minutes daily, and "he was very familiar

---

[14] The Court makes a factual assessment that "a total of only eleven nights in three different months at a property that has numerous rooms for rent 365 nights a year" is inadequate. Doc. 151 at 16 (AG), Doc. 148 (GW). That is a jury question. And it ignores reasonable inferences from the evidence, like the seasoned traffickers used other people or other names to rent rooms, so it was not "only eleven nights."

with every single place that he took us to. And United Inn and Suites was the most frequent place that we went to…I believe that I never went to any hotel three times besides, you know, the Inn and Suites." Doc. 119-2 at 174 (AG), Doc. 117-2 (GW) (emphasis added).[15]

The question is not whether these pieces of circumstantial evidence exclude all lawful possibilities. It is whether a reasonable jury could conclude that there is sufficient evidence to find United Inn "acted pursuant to the common goal of the trafficking venture." "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Liberty Lobby, Inc.*, 477 U.S. at 255.

---

[15] On reconsideration, the district court claimed that this evidence was "not properly before the Court" because it was not raised in A.G.'s and G.W.'s summary judgment response. Doc. 164 at 6, n.3 (AG), Doc. 161 (GW). The court erred. A.G. and G.W. argued at summary judgment that their traffickers went to United Inn repeatedly and had a continuing business relationship there. Doc. 130 at 4, 23 (AG), Doc. 127 (GW).

After the district court granted summary judgment, A.G. and G.W. argued that the district court failed to draw reasonable inferences from the evidence. G.W.'s testimony is not evidence that was "not properly before the Court," it is an illustration of a reasonable inference that the court was required to draw. Compare it to the high-five in *Ricchio*; it was not necessary for the victim in *Ricchio* to testify what she reasonably inferred that high-five to mean, the court could infer it. But here, the court did not draw reasonable inferences, and to illustrate that error at reconsideration, A.G. and G.W. pointed to testimony drawing the inference based on the evidence already pending before the court.

The effect of the court's rule—that minor sex trafficking victims need *direct evidence* that a hotel "acted pursuant to the common goal of the trafficking venture"—would gut the civil-beneficiary provision of § 1595(a). Whether a § 1595(a) beneficiary claim survives summary judgment cannot turn on whether there is direct evidence of hotel staff aiding and abetting sex traffickers. Such direct evidence stems from chance observations made by a child between instances of child rape and child sex abuse. Requiring it in the context of the *Trafficking Victims Protection Reauthorization Act* would be perverse, and ignores the weight of circumstantial evidence, and the mandate that all reasonable inferences must be drawn in the non-movant's favor at summary judgment

In sum, because the court improperly disregarded reasonable inferences and circumstantial evidence in its analysis, it provided a benign summary of the record written in the light most favorable to the movant. When the correct standard is applied, there is a jury question as to whether United Inn "acted pursuant to the common goal of the trafficking venture." *Anderson*, 477 U.S. at 255. The district court's ruling should be reversed.

### ii.    The District Court Improperly Rejected the Inference arising from United Inn's Failure to Identify its Staff.

The district court granted summary judgment before ruling on the earlier-filed motion for sanctions, which requested an inference instruction at trial based on United Inn's failure to produce critical information about its staff in discovery. By

denying the inference because A.G. and G.W. requested it "for trial," the court improperly drew a procedural distinction that is unsupported by law and contrary to the record.

The issue was not whether A.G. and G.W. sought a "trial" remedy, as the district court contended. At summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, Inc.*, 477 U.S. at 255. "[I]f a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment." *Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020). The district court erred in failing to consider the requested inference at summary judgment because it was based on established facts before the court. Indeed, United Inn's counsel admitted that its discovery responses were "deficient," and the district court sanctioned United Inn under Rules 26(g) and 37(c)(1) for discovery violations. The judge should have considered that the jury would hear about how United Inn did not provide the names of its employees, and that A.G. and G.W. could not find or speak to those employees and that they could not testify. With that predicate, a reasonable jury could draw the inference that United Inn did not identify its employees because their statements would be harmful to United Inn. *See, e.g., Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247, 1254 (N.D.Ga. 2023) (enumerating evidence of hotel complicity in

sex trafficking from testimony of hotel staff). And if the jury could draw that inference, the court also should have drawn it at summary judgment.

By failing to construe the evidence in the light most favorable to A.G. and G.W., and to draw all reasonable inferences therefrom, the district court erred. The information that United Inn failed to provide about its staff goes to the heart of United Inn's actions, because the hotel acts through its employees and its unidentified employees could not be found. If the district court had drawn the requested inference, then there would have been a genuine dispute of material fact as to United Inn's participation in a venture—even under the court's heightened standard.

## II. The District Court Erred by Finding as a Matter of Law that A.G. and G.W. were Licensees at United Inn.

The district court erred in holding as a matter of law that A.G. and G.W. were licensees at United Inn, and, on that basis, dismissing their negligence claims. Under Georgia law, summary judgment is only appropriate in negligence cases where the evidence is "plain, palpable, and undisputed." *Robinson v. Kroger Co.*, 268 Ga. 735, 748, 493 S.E.2d 403, 414 (1997). This is not such a case because of the evidence that A.G. and G.W. lived at United Inn for several days with the knowledge and approval of United Inn hotel employees, and that the teenagers repeatedly patronized the hotel store for condoms, food, and other items. As such, there is a jury question about whether A.G. and G.W. were invitees at United Inn under O.C.G.A. § 51-3-1.

42

Further, the district court's licensee conclusion conflicts with Georgia law establishing that a licensee, by definition, is *not* a customer and is *not* invited to be on the premises. In sum, there are jury questions as to whether A.G. and G.W. were invitees owed a duty of ordinary care. The district court erred in finding otherwise.

### a. There is a jury question as to whether A.G. and G.W. were invitees at United Inn because United Inn invited them to stay at the hotel.

The district court erred in concluding that A.G. and G.W. were licensees as a matter of law because the evidence that United Inn staff welcomed them into a hotel room creates a fact issue as to whether United Inn expressly or impliedly invited them to be on the property.

"Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1. Here, A.G. and G.W. lived at the hotel for several days, and they slept, bathed, and ate at United Inn. One night, A.G. and G.W. went to United Inn's front office because they were locked out of their room. After the clerk called either Obie or Carr, he walked G.W. and A.G. back to the room in which they were being sex trafficked, unlocked the door, and let them back in. Doc. 130-2 at 142:5-11, 145:14-147:2 (AG), Doc. 127-2 (GW); Doc. 130-3 at 102:16-103:25 (AG), Doc. 127-3 (GW).

43

Taken together, these facts at least create a jury question as to United Inn's "invitation" to A.G. and G.W. to be on the hotel's premises. *See Invitation*, Black's Law Dictionary (11th ed. 2019) ("In the law of negligence, the enticement of others to enter, remain on, or use property or its structures; conduct that justifies others in believing that the possessor wants them to enter.").

Even if such evidence did not give rise to a jury question about an express invitation, then it at least gives rise to a jury question about an implied invitation. *See* Georgia Suggested Civil Pattern Jury Instructions § 60.630 ("An implied invitation is one that is extended because of the owner doing something or permitting some-thing to be done, fairly indicating to the person entering that the entry and use of the property is consistent with the intents (or interests) and purposes of the owner.").

Whether express or implied, there is evidence that United Inn's invitation was made for "any lawful purpose," like lodging, bathing, and an opportunity to buy goods from United Inn. O.C.G.A. § 51-3-1. That G.W. and A.G. were ultimately victimized on the property does not change that they were at the hotel for "any lawful purpose."

Because there is evidence that United Inn approved of and invited A.G. and G.W. to live in a hotel room at United Inn for "any lawful purpose," there is a jury

44

question as to whether United Inn owed them a duty of ordinary care under § 51-3-1. The district court erred in holding otherwise.

### b.  There is a jury question as to whether A.G. and G.W. were invitees at United Inn because they were repeat hotel customers.

The district court also erred because evidence that A.G. and G.W. were repeat United Inn customers creates a jury question about their statuses.

The Supreme Court of Georgia ruled in 2021 that "the customer of a business is typically an invitee of the business owner." *Cham v. ECI Mgmt. Corp.*, 856 S.E.2d 267, 276 n.13 (Ga. 2021). *Cham* follows a long line of binding Georgia cases establishing as much. *See, e.g.*, *Howell v. Three Rivers Sec., Inc.*, 456 S.E.2d 278, 280 (Ga. Ct. App. 1995); *Munford, Inc. v. Lay*, 216 S.E.2d 123, 126 (Ga. Ct. App. 1975) *rev'd on other grounds*, 219 S.E.2d 416 (Ga.); *S.A. Lynch Corp. v. Greene*, 109 S.E.2d 615, 617 (Ga. Ct. App. 1959); *Hopkins v. Hudgins & Co.*, 462 S.E.2d 393, 395 (Ga. Ct. App. 1995); *Lenny's No. Two, Inc. v. Echols*, 384 S.E.2d 898 (Ga. Ct. App. 1989).

The rule that customers are invitees aligns with Georgia's pattern jury instruction defining invitees as "[a] person who enters the premises of another for any purpose connected with the business of the owner or occupier[.]" Georgia Suggested Civil Pattern Jury Instructions § 60.610; *see also Howard v. Gram Corp.*, 602 S.E.2d 241, 244 (Ga. Ct. App. 2004) ("[W]here [a] retail establishment sells goods to all comers, ***any person*** entering the premises occupies the status of invitee.

45

Even if the injured party does not have a present intent to make a purchase upon entry, the existence of a possible economic exchange is of mutual benefit to both parties.") (emphasis added).

There is no question that A.G. and G.W. were customers of United Inn. They lawfully bought drinks, food, condoms, and feminine hygiene products from United Inn's lobby store and from its hallway vending machine.

Because a business's customers are its invitees, and A.G. and G.W. were United Inn customers, there is a fact question as to whether A.G. and G.W. were invitees of United Inn owed a duty of ordinary care. *See, e.g., Wiltse v. Wal-Mart Stores E., LP*, 720 F. Supp. 3d 1313, 1319 (N.D. Ga. 2024) (under Georgia law when plaintiff went "to shop, tried to make a purchase, and was a regular customer at the store," "[a] rational juror could find that Plaintiff was an invitee" when she was shot in the store's parking lot). The district court erred in holding otherwise.

### c. The district court's ruling conflicts with Georgia premises liability law.

The district court's ruling violates Georgia law. *First*, under Georgia premises liability law, questions about a defendant's negligence are for the jury except in cases where the evidence is "plain, palpable, and undisputed." *Robinson v. Kroger Co.*, 268 Ga. 735, 748, 493 S.E.2d 403, 414 (1997). This is not a "plain, palpable, and undisputed" case. While the district court found, as a matter of law, that the "implied invitation was sex trafficking, which necessarily places [A.G. and G.W.] outside the

46

bounds of invitee status," Doc. 151 at 21 (AG), Doc. 148 at 22 (GW), it ignored competing evidence showing that United Inn invited A.G. and G.W. to be at the hotel.  In doing so, the district court erred by failing to consider all evidence in the light most favorable to A.G. and G.W.  Further, the district court's conclusion that child sex trafficking victims are "necessarily" "outside the bounds of invitee status" is wrong; status is not so rigid under Georgia law.

Even if A.G. and G.W. were not invitees when they arrived because the "implied invitation was sex trafficking," "[a] person's status on property can change." *Robles v. QuikTrip Corp.*, No. 1:16-CV-2050-WSD, 2017 WL 6497673, at *6 (N.D. Ga. Dec. 19, 2017) (citing *See Card v. Dublin Constr. Co.*, 788 S.E.2d 845 (Ga. App. 2016)). Here, there is evidence that A.G. and G.W. were invitees when they lived on the property with the knowledge and approval of the hotel and bought goods at the hotel's store. Whether A.G.'s and G.W.'s statuses changed during their time at the hotel (assuming the district court correctly found they did not arrive as invitees) are fact issues for the jury. *See, e.g., Card v. Dublin Constr. Co., Inc.*, 337 Ga. App. 804, 809, 788 S.E.2d 845, 851 (2016) (jury must resolve fact disputes about shifting status of visitor); *Wiltse v. Wal-Mart Stores E., LP*, 720 F. Supp. 3d 1313, 1320 (N.D. Ga. 2024) (applying Georgia law and stating same); *Lenny's No. Two, Inc. v. Echols*, 192 Ga. App. 371, 373, 384 S.E.2d 898, 900 (1989) (similar). At a minimum, "conflicting evidence as to the legal status" of A.G. and

G.W. should have been "left to the jury." *Georgia Dep't of Corr. v. Couch*, 312 Ga. App. 544, 546, 718 S.E.2d 875, 880 (2011).

Likewise, evidence of a "dual purpose" for A.G.'s and G.W.'s presences on the property (e.g., lawful and unlawful purposes) gives rise to a fact question for the jury. *See, e.g., McGarity v. Hart Elec. Membership Corp.*, 307 Ga. App. 739, 744, 706 S.E.2d 676, 680–81 (2011) (person who has "dual purpose" may still be invitee).

Finally, questions about the scope of A.G.'s and G.W.'s invitations to be on the property as hotel guests and customers are for the jury. *See, e.g., Clark Atlanta Univ., Inc. v. Williams*, 654 S.E.2d 402 (Ga. Ct. App. 2007).

*Second*, the district court's order violates the rule that a customer is *not* a licensee. *See* Georgia Suggested Civil Pattern Jury Instructions § 60.710; *see also* O.C.G.A. § 51-3-2. A.G.'s and G.W.'s purchases benefited the hotel. *C.f.* § 51-3-2 ("licensee" is on the "premises **merely** for his own interests, convenience, or gratification") (emphasis added); *see also Howard*, 602 S.E.2d at 244 ("[W]here [a] retail establishment sells goods to all comers, **any person** entering the premises occupies the status of invitee. Even if the injured party does not have a present intent to make a purchase upon entry, the existence of a possible economic exchange is of mutual benefit to both parties.") (emphasis added).

*Third*, the district court ignored that a person invited to stay at a hotel is, by definition, not a licensee. *Compare* O.C.G.A. § 51-3-1 *with* § 51-3-2.

48

*Fourth*, the district court's reliance on the "lawful purpose" language in § 51-3-1 was also mistaken. Because the statutory text says, "any lawful purpose," A.G.'s and G.W.'s invitee status does not hinge on whether they had any *unlawful* purpose while on the property. It hinges on the inverse: whether A.G. and G.W. had any *lawful* purpose. Here, A.G. and G.W. had many—eating, sleeping, buying food and drinks, and so forth. That is enough to meet the "any lawful purpose" standard.

The district court also missed that A.G. and G.W. were victims—not perpetrators—of child sex trafficking. Their "purpose" was not "unlawful." They did not commit "unlawful" acts. They were victims of "unlawful" acts—assault, rape, and sex trafficking.

Nothing in Georgia law suggests that a person is not an invitee as a matter of law because others commit crimes against them while they are on a premises. The status of a crime perpetrator does not carry over to the crime victim. *See, e.g., Ga. CVS Pharmacy, LLC v. Carmichael*, 890 S.E.2d 209, 227 (Ga. 2023) (robbery victim was invitee); *see also Matt v. Days Inns of Am., Inc.*, 443 S.E.2d 290 (Ga. Ct. App. 1994) (robbery victim was invitee); *Walker v. Aderhold Props., Inc.*, 694 S.E.2d 119, 124 (Ga. Ct. App. 2010) (rape victim was invitee). If a tenant who is attacked in their apartment may be an invitee, then a child trafficking victim who eats, sleeps, and lives in a hotel room is not barred as a matter of law from invitee status because she was exploited there by criminal assailants. Likewise, if a customer who is attacked

49

in a store may be an invitee, a child trafficking victim who buys goods at a hotel store is not precluded from invitee status as a matter of law because she was victimized on the hotel property.

Under the district court's logic, a child sex trafficking victim exploited at a hotel would never be an invitee at the hotel as a matter of law—they are "outside the bounds of invitee status." Doc. 151 at 21 (AG), Doc. 148 at 22 (GW).  That is wrong as a matter of law, and public policy. There is no carveout for any other category of victims under Georgia law; child sex trafficking victims should not be treated differently. Georgia premises liability law imposes a duty on landowners to protect guests against reasonably foreseeable criminal acts by third parties. *Georgia CVS Pharmacy, LLC v. Carmichael*, 316 Ga. 718, 890 S.E.2d 209 (2023). The district court's rule would render that duty meaningless if the people at risk are child sex trafficking victims.

Therefore, the district court's negligence analysis violates Georgia premises liability law and should be reversed.[16]

---

[16] The district court's negligence holding is directly at odds with its finding that there is no evidence of United Inn's "participation in a venture," and shows its failure to draw inferences in the Plaintiffs' favor. If the "implied invitation was sex trafficking," as the district court said, and A.G. and G.W. were invited to the hotel only for unlawful purposes, Doc. 151 at 21 (AG), Doc. 148 (GW), then the district court's TVPRA holding that United Inn did not "participate in a venture" collapses. If United Inn extended an "implied invitation for sex trafficking," then the court could not rightly conclude United Inn did not "participate in a venture" under its heightened definition of that element.

### d.  Even if A.G. and G.W. were licensees, United Inn still owed them a duty of ordinary care.

The district court's order granting summary judgment "[s]ince [A.G. and G.W.] do[] not argue that United willfully or wantonly caused her injury" is flawed. Doc. 151 at 22 (AG), Doc. 148 (GW). A.G. and G.W. alleged, presented evidence, and argued that United Inn was negligent and failed to exercise ordinary care. *See, e.g.*, Doc. 1 ¶¶ 85, 96, 97; *see also* Doc. 130 at 23 (AG), Doc. 127 (GW). United Inn cannot escape its duty of ordinary care regardless of A.G.'s and G.W.'s statuses as invitees or licensees. In Georgia, "it is usually willful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or may reasonably be expected to be, within the range of a dangerous act being done or a hidden peril on one's premises." *Bethany Grp., LLC v. Grobman*, 727 S.E.2d 147, 149 (Ga. Ct. App. 2012) (citation omitted). "[I]f a danger to a licensee is known and foreseen by the property owner, then the owner must exercise ordinary care and diligence to protect that licensee from the peril." *Id.*

Here, United Inn knew of the property's extensive criminal history, including commercial-sex activity, and talked with and observed A.G. and G.W. on the property. Under *Bethany*, there is a jury question as to whether United owed A.G.

and G.W. a duty of ordinary care—whether they were invitees or licensees—and

whether the failure to exercise that duty of ordinary care was willful or wanton.

## **<u>CONCLUSION</u>**

For these reasons, this Court should reverse the district court's judgment.

Dated: June 27, 2025                    Respectfully submitted,

*/s/ David H. Bouchard*
David H. Bouchard
Oto U. Ekpo
FINCH MCCRANIE LLP
229 Peachtree St. NE
Suite 2500
Atlanta, GA 30303
(404) 658-9070
david@finchmccranie.com
oto@finchmccranie.com

*Counsel for Appellants*

52

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This document complies with the type-volume limitation of 13,000 because it contains 12,820 words, not counting the parts of the brief excluded by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

2.    This document complies with the typeface requirements of Fed. R. Ap. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman.

Dated: June 27, 2025

*/s/ David H. Bouchard*
David H. Bouchard
FINCH MCCRANIE LLP

*Counsel for Appellants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 27, 2025, I electronically filed the foregoing

Opening Brief for Appellants A.G. and G.W. using the Court's Appellate ECF

system, which will automatically send notification to counsel of record.

Dated: June 27, 2025

*/s/ David H. Bouchard*
David H. Bouchard
FINCH MCCRANIE LLP

*Counsel for Appellants*
