**No. 25-10829**

---

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

G.W.,

*Appellant,*

v.

NORTHBROOK INDUSTRIES, INC.,

*Appellee.*

---

**On Appeal from the United States District Court,
J.P. Boulee, United States District Judge,
Case No. 1:20-cv-05232-JPB**

---

**APPELLANT'S APPENDIX
VOLUME I**

---

David H. Bouchard
Oto U. Ekpo
FINCH MCCRANIE LLP
229 Peachtree St. NE, Suite 2500
Atlanta, GA 30303
(404) 658-9070
david@finchmccranie.com
oto@finchmccranie.com
*Counsel for Appellant G.W.*

*G.W. v. Northbrook Industries, Inc.*

# INDEX OF APPENDIX

<u>**VOLUME I**</u>                                                    <u>**Docket/Tab #**</u>

District Court Docket Sheet……………………………………………………. A

Complaint…………………………………………………………………..1

Plaintiff's Motion for Protective Order and Leave to Proceed Anonymously and
Brief in Support Thereof………………………………………………….....5

Order Granting Plaintiff's Motion for Protective Order and Leave to Proceed
Anonymously……………………………………………………………….....7

Defendant's Motion to Dismiss Plaintiff's Complaint and Alternatively,
Defendant's Motion to Strike Portions of Plaintiff's Complaint…………………16

Order regarding Defendant's Motion to Dismiss Complaint and, alternatively,
Motion to Strike Portions of Complaint……………………………………..31

Order regarding Defendant's Motion to Dismiss Complaint and, alternatively,
Motion to Strike Portions of Complaint……………………………………..40

Answer and Affirmative Defenses of Defendant…………………………………41

Minute Sheet…………………………………………………………………74

Plaintiff's Motion for Sanctions and Memorandum in Support…………………114

Certificate of Service

A

# U.S. District Court
## Northern District of Georgia (Atlanta)
## CIVIL DOCKET FOR CASE #: 1:20-cv-05232-JPB

G.W. v. Northbrook Industries, Inc.                          Date Filed: 12/28/2020
Assigned to: Judge J. P. Boulee                              Date Terminated: 06/17/2024
Case in other court:  USCA- 11th Circuit, 25-10829-A         Jury Demand: Both
Cause: 18:1589 Forced Labor, Sex Trafficking                 Nature of Suit: 360 P.I.: Other
                                                             Jurisdiction: Federal Question

**Plaintiff**

**G. W.**                              represented by    **David Holmes Bouchard**
                                                         Finch McCranie, LLP
                                                         Georgia
                                                         229 Peachtree Street, N.E.
                                                         Suite 2500, International Tower
                                                         Atlanta, GA 30303
                                                         404-658-9070
                                                         Email: david@finchmccranie.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Jonathan Tonge**
                                                         Andersen, Tate & Carr, PC
                                                         One Sugarloaf Centre
                                                         1960 Satellite Blvd.
                                                         Suite 4000
                                                         Duluth, GA 30097
                                                         770-822-0900
                                                         Email: jtonge@atclawfirm.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Patrick J. McDonough**
                                                         Andersen, Tate & Carr, P.C.
                                                         One Sugarloaf Centre
                                                         1960 Satellite Boulevard
                                                         Suite 4000
                                                         Duluth, GA 30097
                                                         770-822-0900
                                                         Email: pmcdonough@atclawfirm.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Richard Wayne Hendrix**
                                                         Finch McCranie, LLP
                                                         229 Peachtree Street
                                                         Suite 2500
                                                         Atlanta, GA 30303
                                                         404-658-9070

Fax: 404-688-0649
Email: rhendrix@finchmccranie.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Warren Carl Lietz , III**
Finch McCranie, LLP
229 Peachtree Street, NE
Suite 2500, International Tower
Atlanta, GA 30303
404-658-9070
Fax: 404-688-0649
Email: carl@finchmccranie.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gabe Knisely**
Finch McCranie, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, GA 30303
404-658-9070
Fax: 404-688-0649
Email: gabe@warlawgroup.com
*ATTORNEY TO BE NOTICED*

**Rory Allen Weeks**
Andersen, Tate & Carr, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard
Suite 4000
Duluth, GA 30097
770-822-0900
Email: rweeks@atclawfirm.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Northbrook Industries, Inc.**                    represented by   **Admir Allushi**
*doing business as*                                                 Lewis, Brisbois, Bisgaard & Smith, LLP
United Inn and Suites                                               600 Peachtree Stree, NE
                                                                    Suite 4700
                                                                    Atlanta, GA 30308
                                                                    404-991-2173
                                                                    Fax: 404-467-8845
                                                                    Email: adi.allushi@lewisbrisbois.com
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Cameron Alexander Mobley**
                                                                    Lewis, Brisbois, Bisgaard & Smith, LLP-
                                                                    ATL
                                                                    600 Peachtree Street, NE

Suite 4700
Atlanta, GA 30308
404-991-3787
Fax: 404-467-8845
Email:
Cameron.Mobley@lewisbrisbois.com
*ATTORNEY TO BE NOTICED*

**Cecilia Ann Walker**
Lewis Brisbois Bisgaard & Smith
600 Peachtree Street
Suite 4700
Atlanta, GA 30308
706-401-0252
Email: cecilia.walker@fmglaw.com
*ATTORNEY TO BE NOTICED*

**Donald Brown**
Hall Booth Smith, P.C. - ATL
191 Peachtree Street Northeast
Suite 2900
Atlanta, GA 30303
404-954-5000
Email: dbrown@hallboothsmith.com
*TERMINATED: 10/30/2023*

**Sarah Meghan Pittman**
Hall Booth Smith, P.C.
191 Peachtree Street
Suite 2900
Atlanta, GA 30303
404-954-5000
Email: meghan@thechampionfirm.com
*TERMINATED: 10/30/2023*

**William Richard Story**
Hall Booth Smith, P.C. - ATL
191 Peachtree Street Northeast
Suite 2900
Atlanta, GA 30303
404-954-5000
Email: will@storylawllc.com
*TERMINATED: 07/11/2023*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/28/2020 | 1 | COMPLAINT with Jury Demand filed by G.W.. (Filing fee $402.00, receipt number AGANDC-10538401) (Attachments: # 1 Civil Cover Sheet)(eop) Please visit our website at http://www.gand.uscourts.gov/commonly-used-forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 12/29/2020) |

| 12/29/2020 | 2 | Electronic Summons Issued as to Northbrook Industries, Inc.. (eop) (Entered: 12/29/2020) |
|---|---|---|
| 12/29/2020 | 3 | NINTH AMENDMENT TO GENERAL ORDER 20-01 RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID-19 AND RELATED CORONA VIRUS. Signed by Judge Thomas W. Thrash, Jr. on 12/8/20. (eop) (Entered: 12/29/2020) |
| 12/29/2020 | 4 | Certificate of Interested Persons by G.W.. (Bouchard, David) (Entered: 12/29/2020) |
| 12/29/2020 | 5 | MOTION for Protective Order *and Leave to Proceed Anonymously* with Brief In Support by G.W.. (Attachments: # 1 Text of Proposed Order Granting Plaintiff's Motion for Protective Order and Leave to Proceed Anonymously)(Bouchard, David) (Entered: 12/29/2020) |
| 12/30/2020 | 6 | STANDING ORDER Regarding Civil Litigation. Signed by Judge Steven D. Grimberg on December 30, 2020. (ash) (Entered: 12/30/2020) |
| 12/31/2020 | 7 | ORDER granting 5 Motion for Protective Order and Leave to Proceed Anonymously. The Court finds that Plaintiff's privacy and safety interests outweigh the public's interest in knowing Plaintiff's identity. All material, documents, pleadings, exhibits and evidence of any kind filed in this case shall refer to Plaintiff as G.W. and her immediate family members (siblings and parents) by pseudonymous initials with no other additional identifying information. Signed by Judge Steven D. Grimberg on 12/31/2020. (jed) (Entered: 12/31/2020) |
| 01/04/2021 | 8 | MOTION to Reassign Case by G.W.. (Attachments: # 1 Text of Proposed Order Granting Plaintiff's Motion to Reassign Related Case)(Bouchard, David) (Entered: 01/04/2021) |
| 01/11/2021 | 9 | ORDER granting 8 Motion to Reassign Case. The Court finds that Plaintiff's case is related to the first-filed action, A.G. v. Northbrook Industries, Inc., d/b/a United Inn and Suites, No. 1:20- cv-05231- JPB. Case reassigned to Judge J. P. Boulee for all further proceedings. Judge Steven D. Grimberg no longer assigned to the case. Signed by Judge Steven D. Grimberg on 1/11/2021. (jed) (Entered: 01/11/2021) |
| 01/15/2021 | 10 | Return of Service Executed by G.W.. Northbrook Industries, Inc. served on 1/8/2021, answer due 1/29/2021. (Attachments: # 1 Affidavit of Service)(Bouchard, David) (Entered: 01/15/2021) |
| 01/27/2021 | 11 | NOTICE of Appearance by Donald Brown on behalf of Northbrook Industries, Inc. (Brown, Donald) (Entered: 01/27/2021) |
| 01/27/2021 | 12 | NOTICE of Appearance by William Richard Story on behalf of Northbrook Industries, Inc. (Story, William) (Entered: 01/27/2021) |
| 01/27/2021 | 13 | Consent MOTION for Extension of Time by Northbrook Industries, Inc.. (Brown, Donald) (Entered: 01/27/2021) |
| 01/28/2021 | | ORDER: For good cause shown, the 13 Consent Motion for Extension of Time is GRANTED. IT IS HEREBY ORDERED that Defendants deadline to respond to Plaintiff's Complaint is extended through and including February 12, 2021. Signed by Judge J. P. Boulee on 1/28/21. (bnw) (Entered: 01/28/2021) |
| 01/28/2021 | 14 | TENTH AMENDMENT TO GENERAL ORDER 20-01 RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID-19 AND RELATED CORONAVIRUS. Signed by Judge Thomas W. Thrash, Jr. on 01/27/2021. (adg) (ADI) (Entered: 01/28/2021) |

| | | |
|---|---|---|
| 02/12/2021 | <u>15</u> | First Certificate of Interested Persons by Northbrook Industries, Inc.. (Brown, Donald) (Entered: 02/12/2021) |
| 02/12/2021 | <u>16</u> | First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *alternatively Motion to strike* with Brief In Support by Northbrook Industries, Inc.. (Attachments: # <u>1</u> Brief Brief of Support in Motion to Dismiss, # <u>2</u> Exhibit Ex. A- Superseding Criminal Indictment, # <u>3</u> Exhibit Ex. B- Amended Complaint in Jane Doe 4 v. Red Roof Inn) (Brown, Donald) . Added MOTION to Strike on 2/17/2021 (ddm). (Entered: 02/12/2021) |
| 02/12/2021 | <u>17</u> | First MOTION to Stay by Northbrook Industries, Inc.. (Attachments: # <u>1</u> Exhibit Ex. A Superseding Criminal Indictment, # <u>2</u> Exhibit Ex. B Order by Docket Only Granting Defendant Zaccheus Obies Motion for Continuance)(Brown, Donald) (Entered: 02/12/2021) |
| 02/16/2021 | <u>18</u> | Notice for Leave of Absence for the following date(s): 04/02,04/03,04/04,04/05,04/06,04/07,04/08,04/09, by Donald Brown. (Brown, Donald) (Entered: 02/16/2021) |
| 02/22/2021 | <u>19</u> | RESPONSE re <u>17</u> First MOTION to Stay filed by G.W.. (Bouchard, David) (Entered: 02/22/2021) |
| 02/22/2021 | <u>20</u> | RESPONSE in Opposition re <u>16</u> First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *alternatively Motion to strike* MOTION to Strike filed by G.W.. (Bouchard, David) (Entered: 02/22/2021) |
| 03/01/2021 | <u>21</u> | JOINT PRELIMINARY REPORT AND DISCOVERY PLAN filed by G.W.. (Bouchard, David) (Entered: 03/01/2021) |
| 03/02/2021 | <u>22</u> | SCHEDULING ORDER approving the parties' <u>21</u> Joint Preliminary Report and Discovery Plan. This case is assigned to a six-month discovery tract. Discovery will commence thirty days after Defendant files its answer. Signed by Judge J. P. Boulee on 3/2/2021. (ddm) (Entered: 03/02/2021) |
| 03/08/2021 | <u>23</u> | REPLY to Response to Motion re <u>16</u> First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *alternatively Motion to strike* MOTION to Strike filed by Northbrook Industries, Inc.. (Brown, Donald) (Entered: 03/08/2021) |
| 03/10/2021 | <u>24</u> | ELEVENTH AMENDMENT TO GENERAL ORDER 20-01 RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID-19 AND RELATED CORONAVIRUS. Signed by Judge Thomas W. Thrash, Jr. on 03/09/2021 (adg) (ADI) (Entered: 03/10/2021) |
| 03/10/2021 | | Submission of <u>17</u> First MOTION to Stay , <u>16</u> First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, *alternatively Motion to strike*, to District Judge J. P. Boulee. (ddm) (Entered: 03/10/2021) |
| 03/15/2021 | <u>25</u> | CERTIFICATE OF SERVICE *Rule 5.4 Certificate of Service of Discovery* by G.W.. (Bouchard, David) (Entered: 03/15/2021) |
| 03/15/2021 | <u>26</u> | CERTIFICATE OF SERVICE *for Initial Disclosures* by Northbrook Industries, Inc.. (Story, William) (Entered: 03/15/2021) |
| 05/12/2021 | <u>27</u> | Notice for Leave of Absence for the following date(s): July 28, 2021-August 2, 2021, October 9, 2021-October 18, 2021, December 22, 2021-December 31, 2021, by Donald Brown. (Brown, Donald) (Entered: 05/12/2021) |
| 06/07/2021 | <u>28</u> | MOTION Leave of Absence *for Richard W. Hendrix* by G.W.. (Attachments: # <u>1</u> Text of Proposed Order Proposed Order (re Motion for Leave of Absence))(Hendrix, Richard) (Entered: 06/07/2021) |

| 06/28/2021 | 29 | CERTIFICATE OF SERVICE *of Plaintiff's Identity Disclosure* by G.W..(Bouchard, David) (Entered: 06/28/2021) |
|---|---|---|
| 06/30/2021 | | Submission of 28 MOTION Leave of Absence to District Judge J. P. Boulee. (rjc) (Entered: 06/30/2021) |
| 07/26/2021 | 30 | ORDER denying as moot 17 Motion to Stay. Signed by Judge J. P. Boulee on 07/26/2021. (bdb) (Entered: 07/27/2021) |
| 07/27/2021 | 31 | ORDER: Until a decision is issued, Defendants Motion to Dismiss and, alternatively, Motion to Strike 16 is DEFERRED, and the Clerk is DIRECTED to terminate the submission. The parties are DIRECTED to notify this Court within seven days of the Eleventh Circuit issuing its decision in the Consolidated Appeals. Upon notification, this Court will enter a briefing schedule so that the parties can supplement their arguments with the Eleventh Circuits decision. Once the additional briefing is complete, the Clerk is DIRECTED to resubmit Defendants motion 16 to the undersigned. Signed by Judge J. P. Boulee on 7/27/21. (ceo) (Entered: 07/27/2021) |
| 08/02/2021 | | ORDER granting 28 Motion for Leave of Absence for the following dates: July 19, 2021 through and including July 25, 2021; August 15, 2021 through and including August 22, 2021; September 25, 2021 through and including October 3, 2021; October 18, 2021 through and including October 23, 2021; and November 7, 2021 through and including November 14, 2021. Signed by Judge J. P. Boulee on 8/2/21. (bnw) (Entered: 08/02/2021) |
| 09/16/2021 | 32 | ORDER DIRECTING THE CLERK to ADMINISTRATIVELY CLOSE this case for docket management purposes. The parties shall notify the Court no later than seven days after the appeals are resolved, at which time the Court will reopen the case. Signed by Judge J. P. Boulee on 09/16/2021. (ayw) (Entered: 09/16/2021) |
| 09/16/2021 | | Civil Case Terminated. (ayw) (Entered: 09/16/2021) |
| 12/29/2021 | 33 | NOTICE by G.W. re 31 Order on Motion to Dismiss for Failure to State a Claim,,, Order on Motion to Strike,, *(Notification of Eleventh Circuit Court of Appeals Decision)* (Bouchard, David) (Entered: 12/29/2021) |
| 01/04/2022 | 34 | ORDER: On December 29, 2021, the parties notified the Court that the appeals were resolved. 33 . Because the appeals have been resolved, the Clerk is DIRECTED to reopen this action. Moreover, the parties are ORDERED to comply with the following deadlines: (1) Defendant shall file any supplemental briefing on the currently pending Motion to Dismiss no later than January 12, 2022; (2) Plaintiff shall file her response to any supplemental briefing no later than January 26, 2022; (3) Defendant shall file its reply, if any, no later than February 4, 2022. Signed by Judge J. P. Boulee on 1/4/22. (ceo) (Entered: 01/04/2022) |
| 01/12/2022 | 35 | NOTICE Of Filing Supplemental Brief in Support by Northbrook Industries, Inc. re 16 First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *alternatively Motion to strike* MOTION to Strike (Brown, Donald) Modified on 1/13/2022 to edit text. (cmd) (Entered: 01/12/2022) |
| 01/18/2022 | 36 | Notice for Leave of Absence for the following date(s): 04.21.2022-04.29.2022, 07.04.2022-07.15.2022, 12.22.2022-01.02.2023, by Donald Brown. (Brown, Donald) (Entered: 01/18/2022) |
| 01/26/2022 | 37 | RESPONSE re 16 MOTION to Dismiss, MOTION to Strike, 35 Notice of Filing, *(Plaintiff's Response to Defendant's Supplemental Brief in Support of its Motions to Dismiss and Strike* filed by G.W. (Bouchard, David) Modified on 1/27/2022 to add docket relationship and edit text. (cmd) (Entered: 01/26/2022) |

| | | |
|---|---|---|
| 02/02/2022 | 38 | Request for Leave of Absence for the following date(s): May 19, 2022 through and including May 20, 2022; June 18, 2022 through and including July 4, 2022; and July 25, 2022 through and including July 29, 2022, by Richard Wayne Hendrix. (Hendrix, Richard) (Entered: 02/02/2022) |
| 02/11/2022 | | Submission of 34 Order to District Judge J. P. Boulee. (bnw) (Entered: 02/11/2022) |
| 02/15/2022 | | NOTICE: Effective immediately, all communications related to cases assigned to Judge Boulee should be directed to 404-215-1410 or CRD_JPB@gand.uscourts.gov. (kxm) (Entered: 02/15/2022) |
| 04/21/2022 | 39 | Notice for Leave of Absence for the following date(s): July 21-29, 2022, by Donald Brown. (Brown, Donald) (Entered: 04/21/2022) |
| 05/24/2022 | 40 | ORDER denying 16 Motion to Dismiss for Failure to State a Claim, or alternatively, MOTION to Strike Portions of Complaint. The parties are reminded that they have six months to complete discovery, which shall commence thirty days after Defendant files it answer. Signed by Judge J. P. Boulee on 5/24/2022. (anc) (Entered: 05/24/2022) |
| 06/07/2022 | 41 | ANSWER to 1 COMPLAINT with Jury Demand by Northbrook Industries, Inc.. Discovery ends on 11/4/2022.(Brown, Donald) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 06/07/2022) |
| 06/08/2022 | | ORDER {by Docket Entry Only}: Pursuant to the Scheduling Order entered in this case, the parties were given six months to complete discovery. As a result, discovery closes on December 7, 2022. Dispositive motions shall be filed no later than January 6, 2023 Ordered by Judge J. P. Boulee on 6/8/22. (ceo) (Entered: 06/08/2022) |
| 06/13/2022 | 42 | CERTIFICATE OF SERVICE *OF DISCOVERY* by Northbrook Industries, Inc..(Brown, Donald) (Entered: 06/13/2022) |
| 07/07/2022 | 43 | CERTIFICATE OF SERVICE *of Written Discovery* by G.W..(Bouchard, David) (Entered: 07/07/2022) |
| 08/16/2022 | 44 | CERTIFICATE OF SERVICE *of Discovery* by G.W..(Bouchard, David) (Entered: 08/16/2022) |
| 08/17/2022 | 45 | CERTIFICATE OF SERVICE *of Discovery* by Northbrook Industries, Inc..(Brown, Donald) Modified on 8/18/2022 to correct capitalized text (nmb). (Entered: 08/17/2022) |
| 09/07/2022 | 46 | CERTIFICATE OF SERVICE *of Discovery* by G.W..(Bouchard, David) (Entered: 09/07/2022) |
| 09/22/2022 | 47 | CERTIFICATE OF SERVICE *of Discovery* by G.W..(Bouchard, David) (Entered: 09/22/2022) |
| 10/21/2022 | 48 | CERTIFICATE OF SERVICE *of Discovery* by Northbrook Industries, Inc..(Brown, Donald) Modified on 10/24/2022 to correct capitalized text (nmb). (Entered: 10/21/2022) |
| 10/27/2022 | 49 | Notice for Leave of Absence for the following date(s): 12/7-12/9/2022, 01/26-01/30/2023, by Donald Brown. (Brown, Donald) Modified on 11/1/2022 to correct docket text (nmb). (Entered: 10/27/2022) |
| 12/02/2022 | 50 | Joint Motion for Proposed Scheduling Order filed by Northbrook Industries, Inc. (Attachments: # 1 Text of Proposed Order)(Story, William) (Entered: 12/02/2022) |
| 12/05/2022 | | For good cause shown, the 50 Joint Motion is GRANTED. The dates proposed by the parties are approved and fully incorporated herein. IT IS HEREBY ORDERED that the discovery period is extended as follows: (1) fact discovery is extended through and including March 10, 2023; (2) expert discovery is extended through and including June |

| | | 16, 2023. Dispositive motions shall be filed no later than July 28, 2023. In the event dispositive motions are not filed, the consolidated pretrial order shall be filed no later than August 4, 2023. Given this lengthy extension, future extensions are unlikely. So ordered by Judge J. P. Boulee on 12/5/22. (jkl) (Entered: 12/05/2022) |
|---|---|---|
| 12/05/2022 | 51 | CERTIFICATE OF SERVICE *of Discovery* by Northbrook Industries, Inc..(Brown, Donald) Modified on 12/8/2022 to correct capitalization (nmb). (Entered: 12/05/2022) |
| 12/05/2022 | 52 | CERTIFICATE OF SERVICE *of Discovery* by G.W..(Bouchard, David) (Entered: 12/05/2022) |
| 01/09/2023 | 53 | CERTIFICATE OF SERVICE *of Discovery* by G.W..(Bouchard, David) (Entered: 01/09/2023) |
| 01/09/2023 | 54 | CERTIFICATE OF SERVICE *of Discovery* by G.W..(Bouchard, David) (Entered: 01/09/2023) |
| 02/10/2023 | 55 | CERTIFICATE OF SERVICE *of Discovery* by G.W..(Bouchard, David) (Entered: 02/10/2023) |
| 02/24/2023 | 56 | CERTIFICATE OF SERVICE *of Discovery* by G.W..(Bouchard, David) (Entered: 02/24/2023) |
| 03/31/2023 | 57 | Application for Leave of Absence for the following date(s): 06/22/23-06/30/23,11/20/23-11/24/23,12/22/23-01/02/24, by Donald Brown. (Brown, Donald) (Entered: 03/31/2023) |
| 04/18/2023 | 58 | CERTIFICATE OF SERVICE *of Discovery* by Northbrook Industries, Inc..(Story, William) Modified capitalized text on 4/19/2023 (nmb). (Entered: 04/18/2023) |
| 04/28/2023 | 59 | CERTIFICATE OF SERVICE *of Discovery* by G. W..(Bouchard, David) (Entered: 04/28/2023) |
| 05/09/2023 | 60 | Unopposed MOTION for Extension of Time to Complete Discovery *(Proposed Second Modified Scheduling Order)* by G. W.. (Attachments: # 1 Exhibit A - Proposed Second Modified Scheduling Order)(Bouchard, David) (Entered: 05/09/2023) |
| 05/11/2023 | | The Court will allow one final extension. As such, the 60 Unopposed Motion is GRANTED. The dates proposed by the parties are APPROVED. Fact discovery is extended through and including May 31, 2023, and expert discovery shall conclude on July 14, 2023. Dispositive motions shall be filed no later than August 4, 2023. So ordered by Judge J. P. Boulee on 5/11/2023. (jkl) (Entered: 05/11/2023) |
| 05/12/2023 | 61 | CERTIFICATE OF SERVICE *of Discovery* by G. W..(Bouchard, David) (Entered: 05/12/2023) |
| 05/12/2023 | 62 | NOTICE by G. W. *(Notice of Intent to Serve Subpoena)* (Attachments: # 1 Exhibit A - Subpoena)(Bouchard, David) (Entered: 05/12/2023) |
| 05/12/2023 | 63 | CERTIFICATE OF SERVICE *of Discovery* by G. W..(Bouchard, David) (Entered: 05/12/2023) |
| 05/15/2023 | 64 | CERTIFICATE OF SERVICE *of Discovery* by G. W..(Bouchard, David) (Entered: 05/15/2023) |
| 05/16/2023 | 65 | NOTICE by G. W. *(Notice of Service of Rule 45 Subpoena)* (Bouchard, David) (Entered: 05/16/2023) |
| 05/16/2023 | 66 | AFFIDAVIT of Service for Subpoena , as to HomeTrust Bank, Inc. c/o CT Corporation System. (Bouchard, David) (Entered: 05/16/2023) |

| 05/18/2023 | 67 | Notice for Leave of Absence for the following date(s): May 22-25, 2023, May 30-June 2, 2023, June 5-9, 2023, by David Holmes Bouchard. (Bouchard, David) (Entered: 05/18/2023) |
|---|---|---|
| 05/19/2023 | 68 | Notice of Filing *Consolidated/Joint Discovery Statement* by G. W.. (Attachments: # 1 Exhibit 1 - Relevant Excerpts of Plaintiff's Requests, # 2 Exhibit 2 - Relevant Excerpts of Defendant's Responses)(Bouchard, David) Modified event on 5/22/2023 (nmb). (Entered: 05/19/2023) |
| 05/22/2023 | 69 | Notice for Leave of Absence for the following date(s): (Amended) June 5-9, 2023, by David Holmes Bouchard. (Bouchard, David) (Entered: 05/22/2023) |
| 05/23/2023 | | NOTICE OF VIDEO PROCEEDING : Status Conference set for 6/14/2023 at 09:30 AM VIA ZOOM before Judge J. P. Boulee.<br>Connection Instructions:<br>Link: https://ganduscourts.zoomgov.com/j/1610820319<br>Meeting ID: 161 082 0319<br>Passcode: 1908<br>Audio via phone: +1 551 285 1373<br>You must follow the instructions of the Court for remote proceedings available here. The procedure for filing documentary exhibits admitted during the proceeding is available here. *Photographing, recording, or broadcasting of any judicial proceedings, including proceedings held by video teleconferencing or telephone conferencing, is strictly and absolutely prohibited.* (jkl) Modified on 6/8/2023 to update start time (jkl). (Entered: 05/23/2023) |
| 05/31/2023 | 70 | NOTICE by G. W. *(Notice of Intent to Serve Subpoenas)* (Attachments: # 1 Exhibit A - Bulldog Insurance, Inc. Subpoena, # 2 Exhibit B - Midland Loan Services, L.P. Subpoena, # 3 Exhibit C - Kitchens Kelley Gaynes, P.C. Subpoena, # 4 Exhibit D - Morgan & Chakales, P.C. Subpoena, # 5 Exhibit E - Alischild Tax and Accounting Inc. Subpoena)(Bouchard, David) (Entered: 05/31/2023) |
| 05/31/2023 | 71 | CERTIFICATE OF SERVICE *of Discovery* by G. W..(Bouchard, David) (Entered: 05/31/2023) |
| 06/08/2023 | | NOTICE OF TIME CHANGE - Zoom status conference set for 9:30 AM on June 14, 2023. (jkl) (Entered: 06/08/2023) |
| 06/12/2023 | 72 | AFFIDAVIT of Service for Subpoena , as to Bulldog Insurance, Inc.. (Bouchard, David) (Entered: 06/12/2023) |
| 06/12/2023 | 73 | AFFIDAVIT of Service for Subpoena , as to Alischild Tax and Accounting, Inc.. (Bouchard, David) (Entered: 06/12/2023) |
| 06/14/2023 | 74 | Minute Entry for proceedings held before Judge J. P. Boulee: Status Conference held on 6/14/2023 via Zoom. The Court directed parties to either mediate the matter in the next couple of weeks or if a resolution is not reached, Plaintiff may file a motion for sanctions. (Court Reporter Penny Coudriet)(jkl) (Entered: 06/14/2023) |
| 06/16/2023 | 75 | Expert Report of Karim H. Vellani by Northbrook Industries, Inc..(Brown, Donald) (Entered: 06/16/2023) |
| 06/16/2023 | 76 | CERTIFICATE OF SERVICE *of Discovery* by Northbrook Industries, Inc..(Brown, Donald) (Entered: 06/16/2023) |
| 06/16/2023 | 77 | CERTIFICATE OF SERVICE *of Discovery* by G. W..(Bouchard, David) (Entered: 06/16/2023) |

| 06/26/2023 | 78 | CERTIFICATE OF SERVICE *of Discovery* by Northbrook Industries, Inc..(Brown, Donald) (Entered: 06/26/2023) |
|---|---|---|
| 06/30/2023 | 79 | CERTIFICATE OF SERVICE *of Discovery* by Northbrook Industries, Inc..(Brown, Donald) (Entered: 06/30/2023) |
| 07/10/2023 | 80 | NOTICE of Appearance by Sarah Meghan Pittman on behalf of Northbrook Industries, Inc. (Pittman, Sarah) (Entered: 07/10/2023) |
| 07/11/2023 | 81 | Certification of Consent to Substitution of Counsel. Sarah Meghan Pittman replacing attorney William Richard Story. (Pittman, Sarah) (Entered: 07/11/2023) |
| 07/13/2023 | 82 | Consent MOTION to Amend Order on Motion for Extension of Time to Complete Discovery, by Northbrook Industries, Inc. (Attachments: # 1 Text of Proposed Order) (Brown, Donald) Modified on 7/17/2023 (jkl). (Entered: 07/13/2023) |
| 07/14/2023 | 83 | Expert Report of Dr. Kimberly Mehlman-Orozco by Northbrook Industries, Inc..(Brown, Donald) (Entered: 07/14/2023) |
| 07/17/2023 | | In light of the parties' desire to settle this case and for good cause shown, the 82 Third Consent Motion to Modify the Scheduling Order is GRANTED. In the event mediation is unsuccessful, the expert discovery shall close on September 29, 2023. Dispositive motions shall be filed no later than October 20, 2023. So ordered by Judge J. P. Boulee on July 17, 2023. (jkl) (Entered: 07/17/2023) |
| 07/19/2023 | 84 | Application for Leave of Absence for the following date(s): 11/13/23-11/15/23, 11/20/23-11/24/23, and 12/22/23-01/02/24, by Donald Brown. (Brown, Donald) (Entered: 07/19/2023) |
| 07/27/2023 | 85 | CERTIFICATE OF SERVICE *of Discovery* by G. W..(Bouchard, David) (Entered: 07/27/2023) |
| 09/27/2023 | 86 | Fourth MOTION to Amend *Scheduling Order* by Northbrook Industries, Inc.. (Attachments: # 1 Text of Proposed Order Exhibit A)(Brown, Donald) (Entered: 09/27/2023) |
| 09/28/2023 | 87 | ORDER GRANTING IN PART 86 Motion to Modify the Scheduling Order. IT IS HEREBY ORDERED that discovery is extended a final time through and including 10/31/2023. Dispositive motions shall be filed no later than 11/21/2023. Signed by Judge J. P. Boulee on 9/28/2023. (nmb) (Entered: 09/29/2023) |
| 10/03/2023 | 88 | MOTION Requesting That Court Refer Discovery Dispute To United States Magistrate Judge for Mediation by G. W.. (Bouchard, David) (Entered: 10/03/2023) |
| 10/06/2023 | 89 | CERTIFICATE OF SERVICE *of Discovery* by G. W..(Bouchard, David) (Entered: 10/06/2023) |
| 10/09/2023 | 90 | CERTIFICATE OF SERVICE *of Discovery* by Northbrook Industries, Inc..(Brown, Donald) (Entered: 10/09/2023) |
| 10/13/2023 | 91 | CERTIFICATE OF SERVICE *of Discovery* by G. W..(Bouchard, David) (Entered: 10/13/2023) |
| 10/18/2023 | 92 | ORDER GRANTING 88 Motion Requesting That Court Refer Discovery Dispute To United States Magistrate Judge for Mediation. This matter is REFERRED to the next available United States Magistrate Judge for resolution of the parties' discovery dispute. If a resolution is not reached, the parties shall notify the Court within 1 week of reaching an impasse. Signed by Judge J. P. Boulee on 10/18/2023. (nmb) (Entered: 10/19/2023) |

| 10/18/2023 | | CASE REFERRED to Settlement Judge Magistrate Judge Linda T. Walker. (nmb) (Entered: 10/19/2023) |
|---|---|---|
| 10/20/2023 | 93 | CERTIFICATE OF SERVICE *of Discovery* by Northbrook Industries, Inc..(Brown, Donald) (Entered: 10/20/2023) |
| 10/20/2023 | 94 | MOTION to Withdraw Donald Brown as Attorneyby Northbrook Industries, Inc.. (Attachments: # 1 Text of Proposed Order Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Brown, Donald) (Entered: 10/20/2023) |
| 10/20/2023 | 95 | Emergency MOTION to Stay *Litigation* by Northbrook Industries, Inc.. (Brown, Donald) (Entered: 10/20/2023) |
| 10/20/2023 | | Submission of 94 MOTION to Withdraw Donald Brown as Attorney, 95 Emergency MOTION to Stay *Litigation*, to District Judge J. P. Boulee. (tcc) (Entered: 10/20/2023) |
| 10/20/2023 | 96 | RESPONSE in Opposition re 95 Emergency MOTION to Stay *Litigation* filed by G. W.. (Bouchard, David) (Entered: 10/20/2023) |
| 10/20/2023 | | Defendant is DIRECTED to file its reply in support of its Emergency Motion to Stay Litigation no later than 10:00 AM on Monday, October 23, 2023. The reply shall include information about the status of who counsel will be going forward if the Motion to Withdraw is granted and when new counsel will be prepared to complete the week of remaining discovery in the event the Emergency Motion to Stay Litigation is granted. So ordered by Judge J. P. Boulee on 10/20/2023. (jkl) (Entered: 10/20/2023) |
| 10/23/2023 | 97 | REPLY to Response to Motion re 95 Emergency MOTION to Stay *Litigation* filed by Northbrook Industries, Inc.. (Brown, Donald) (Entered: 10/23/2023) |
| 10/23/2023 | | Submission of 95 Emergency MOTION to Stay *Litigation*, to District Judge J. P. Boulee. (jkl) (Entered: 10/23/2023) |
| 10/23/2023 | 98 | INTERIM ORDER re 95 Emergency MOTION to Stay *Litigation* filed by Northbrook Industries, Inc. Signed by Judge J. P. Boulee on 10/23/23. (jkl) (Entered: 10/23/2023) |
| 10/25/2023 | 99 | RESPONSE in Support re 95 Emergency MOTION to Stay *Litigation* filed by Northbrook Industries, Inc.. (Brown, Donald) (Entered: 10/25/2023) |
| 10/25/2023 | 100 | RESPONSE re 99 Response in Support of Motion *(Response in Opposition)* filed by G. W.. (Bouchard, David) (Entered: 10/25/2023) |
| 10/25/2023 | | ORDER: The temporary stay is extended through noon on Monday, October 30, 2023. At that time, the Court will consider extending the stay if new counsel enters his or her appearance and explains to the Court how much time will be needed to complete expert discovery. In the event an entry of appearance is not filed, the Court is not inclined to continue the stay. So ordered by Judge J. P. Boulee on 10/25/23. (jkl) (Entered: 10/25/2023) |
| 10/27/2023 | 101 | NOTICE of Appearance by Admir Allushi on behalf of Northbrook Industries, Inc. (Allushi, Admir) (Entered: 10/27/2023) |
| 10/27/2023 | 102 | NOTICE of Appearance by Cameron Alexander Mobley on behalf of Northbrook Industries, Inc. (Mobley, Cameron) (Entered: 10/27/2023) |
| 10/27/2023 | 103 | NOTICE of Appearance by Cecilia Ann Walker on behalf of Northbrook Industries, Inc. (Walker, Cecilia) (Entered: 10/27/2023) |
| 10/27/2023 | 104 | MOTION to Amend 87 Order on Motion to Amend, *Scheduling Order* by Northbrook Industries, Inc.. (Mobley, Cameron) (Entered: 10/27/2023) |

| | | |
|---|---|---|
| 10/30/2023 | | Because new counsel has entered an appearance, the 94 Motion to Withdraw as Counsel is GRANTED. The Clerk is DIRECTED to remove Donald Brown and Sarah Pittman as counsel of record in this case. Plaintiff is DIRECTED to respond to Defendant's Motion to Amend Scheduling Order no later than 3:00 PM on October 30, 2023. So ordered by Judge J. P. Boulee on 10/30/2023. (jkl) (Entered: 10/30/2023) |
| 10/30/2023 | 105 | RESPONSE in Opposition re 104 MOTION to Amend 87 Order on Motion to Amend, *Scheduling Order* filed by G. W.. (Bouchard, David) (Entered: 10/30/2023) |
| 10/31/2023 | | Because new counsel has entered an appearance, the 95 Emergency Motion to Stay Litigation is DENIED as moot. The 104 Motion to Amend Scheduling Order is GRANTED in part. Discovery in this case is reopened for a period of thirty days. Accordingly, discovery is extended through and including November 30, 2023. Dispositive motions shall be filed no later than December 21, 2023. SO ORDERED by Judge J. P. Boulee on 10/31/2023. (jkl) (Entered: 10/31/2023) |
| 11/01/2023 | 106 | Application for Leave of Absence for the following date(s): December 6, 2023 - December 14, 2023, by Admir Allushi. (Allushi, Admir) (Entered: 11/01/2023) |
| 11/03/2023 | 107 | CERTIFICATE OF SERVICE *of Discovery* by G. W..(Bouchard, David) (Entered: 11/03/2023) |
| 11/09/2023 | 108 | CERTIFICATE OF SERVICE *of Discovery* by Northbrook Industries, Inc..(Allushi, Admir) (Entered: 11/09/2023) |
| 11/13/2023 | 109 | CERTIFICATE OF SERVICE *of Discovery* by Northbrook Industries, Inc..(Allushi, Admir) (Entered: 11/13/2023) |
| 11/17/2023 | 110 | CERTIFICATE OF SERVICE *of Discovery* by G. W..(Bouchard, David) (Entered: 11/17/2023) |
| 11/17/2023 | 111 | CERTIFICATE OF SERVICE *of Discovery* by G. W..(Bouchard, David) (Entered: 11/17/2023) |
| 12/01/2023 | 112 | Minute Entry for proceedings held before Magistrate Judge Linda T. Walker: Discovery Hearing held on 12/1/2023. Hearing concluded. (Tape #zoomgov.com)(nmb) (Entered: 12/01/2023) |
| 12/07/2023 | 113 | NOTICE by G. W. *(Plaintiff's Notice Regarding Outcome of Mediation of Discovery Dispute with Magistrate Judge Walker and Notice of Intention to Proceed with Filing Motion for Sanctions)* (Bouchard, David) (Entered: 12/07/2023) |
| 12/12/2023 | 114 | MOTION for Sanctions with Brief In Support by G. W.. (Attachments: # 1 Exhibit 1 - 2022-06-15 AG-GW Email re Search Terms, # 2 Exhibit 2 - 2022-07-13 AG-GW No objection re Search Terms, # 3 Exhibit 3 - 2022-07-07 - GW - P's RPDs, RFAs, ROGs to UI&S, # 4 Exhibit 4 - 2022-08-17 - D - Def Resp to Pltf RPDs, RFAs, ROGs, # 5 Exhibit 5 - 2023-01-09 - NOD & Cross 30(b)(6) - Northbrook Ind dba UI&S, # 6 Exhibit 6 - 2023-02-23 - GW NOD 30(b)(6) - Northbrook Ind dba UI&S (GW), # 7 Exhibit 7 - 2023-02-23 - Dfts response re missing docs, # 8 Exhibit 8 - 2023-02-24 - GW Suppl Disco Requests, # 9 Exhibit 9 - 2023-03-08 - Follow up re suppl disco requests, # 10 Exhibit 10 - 2023-03-20 - Follow up re search terms across suppl disco requests, # 11 Exhibit 11 - 2023-03-28 - Follow up re Dfts failure to respond to suppl'l discovery requests, # 12 Exhibit 12 - 2023-03-29 - Follow up re Dfts failure to respond to suppl'l discovery requests, # 13 Exhibit 12a - 2023-03-29 - Made arrangements, # 14 Exhibit 12b - 2023-04-06 - Email re search terms, # 15 Exhibit 12c - 2023-04-11 - Email re Sabharwal search term, # 16 Exhibit 13 - 2023-03-31 - DB raises idea of extension of time, # 17 Exhibit 14 - 2023-03-31 - DB email to Will and Dana re holding May dates, # 18 Exhibit 15 - 2023-04-13 - Email re how many documents to expect, # 19 Exhibit 16 - 2023-04-17 - Email |

| | | claim re how many documents to expect, # 20 Exhibit 17 - 2023-04-13 - Email to Don and Will re failure to meet extended 4-14-23 deadline, # 21 Exhibit 18 - 2023-04-18 - Getting everything bates stamped, # 22 Exhibit 19 - 2023-04-18 - Suppl'l Hard Copy Production, # 23 Exhibit 19a - Emails, # 24 Exhibit 20 - Trafficking Materials, # 25 Exhibit 21 - Letter from Major Padrick, # 26 Exhibit 22,22a,22b,22c,22d - Sum Chart, Def Disc & Resp, Excel (GW), # 27 Exhibit 23 - 2023-05-02 - 30b6TahirShareef_COND, # 28 Exhibit 24 - CONFTahirShareef_COND, # 29 Exhibit 25 - AsharIslam_COND, # 30 Exhibit 26 - BOLO Notice, # 31 Exhibit 27 - 2023-05-03 - DB email re draft consent motion to extend discovery, # 32 Exhibit 28 - 2023-05-12 - Email re compressed timeline, # 33 Exhibit 28a - 2023-05-09 - Email re intention to pursue discovery dispute process, # 34 Exhibit 29 - 2023-05-11 - discovery dispute statement (emails), # 35 Exhibit 30 - 2023-05-30 - emails re will produce & follow up, # 36 Exhibit 31 - 2023-06-15 - emails requesting mediation & follow ups, # 37 Exhibit 32 - Attorneys Fees Chart & Affidavit) (Bouchard, David) (Entered: 12/12/2023) |
| 12/15/2023 | 115 | Consent MOTION for Extension of Time re: 114 MOTION for Sanctions by Northbrook Industries, Inc.. (Attachments: # 1 Text of Proposed Order Proposed Order Extending Defendant Northbrook Industries, Inc.'s Time to File a Response to Plaintiff's Motion for Sanctions)(Allushi, Admir) (Entered: 12/15/2023) |
| 12/18/2023 | | For good cause shown, the Consent Motion to Extend Time to File Reply [Doc. 115] is GRANTED. IT IS HEREBY ORDERED that Defendant's deadline to respond to Plaintiff's Motion for Sanctions is extended through and including January 2, 2024. (nmb) (Entered: 12/18/2023) |
| 12/21/2023 | 116 | MOTION for Summary Judgment with Brief In Support by Northbrook Industries, Inc.. (Attachments: # 1 Statement of Material Facts Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites' Statement of Undisputed Material Facts)(Allushi, Admir) -- Please refer to http://www.gand.uscourts.gov to obtain the Notice to Respond to Summary Judgment Motion form contained on the Court's website.-- (Entered: 12/21/2023) |
| 12/21/2023 | 117 | SEALED NOTICE Of Filing by Northbrook Industries, Inc. re 116 MOTION for Summary Judgment (Attachments: # 1 Deposition Transcript of A.G. taken 12.7.23, # 2 Deposition Transcript of G.W. taken 12.6.23, # 3 Deposition Transcript of Tahir Shareef taken 2.22.23, # 4 Deposition Transcript of Tahir Shareef taken 5.2.23, # 5 Deposition Transcript of Ashar Islam taken 2.22.23, # 6 Deposition Transcript of Ashar Islam taken 5.2.23)(Allushi, Admir) Modified on 12/22/2023 (nmb). (Entered: 12/21/2023) |
| 12/21/2023 | 118 | MOTION for Leave to File Matters Under Seal re: 117 Notice of Filing,, 116 MOTION for Summary Judgment by Northbrook Industries, Inc.. (Attachments: # 1 Text of Proposed Order [Proposed] Order on Motion for Leave for Leave to File Materials Under Seal)(Allushi, Admir) (Entered: 12/21/2023) |
| 12/22/2023 | 119 | ORDER GRANTING 118 Motion for Leave to File Matters Under Seal. IT IS HEREBY ORDERED that Defendant is authorized to file under seal the documents identified in its motion. Signed by Judge J. P. Boulee on 12/22/2023. (nmb) (Entered: 12/22/2023) |
| 01/02/2024 | 120 | RESPONSE in Opposition re 114 MOTION for Sanctions filed by Northbrook Industries, Inc.. (Attachments: # 1 Exhibit A - Release Agreement, # 2 Exhibit B -Uniteds Initial Disclosures and ROG Responses, # 3 Exhibit C - Richens Declaration, # 4 Exhibit D - Employee List, # 5 Exhibit E - Sex Trafficking Training Document, # 6 Exhibit F - Shareef Depositions, # 7 Exhibit G - Islam Depositions)(Allushi, Admir) (Entered: 01/02/2024) |
| 01/02/2024 | 121 | SEALED NOTICE Of Filing by Northbrook Industries, Inc. re 120 Response in Opposition to Motion, (Attachments: # 1 Deposition Transcript of Tahir Shareef taken 2.22.23, # 2 Deposition Transcript of Tahir Shareef taken 5.2.23, # 3 Deposition of Ashar |

| | | |
|---|---|---|
| | | Islam taken 12.22.23, # 4 Deposition Transcript of Ashar Islam taken 12.22. # 5 Settlement Agreement and Release re A.G. and G.W.)(Allushi, Admir) Modified on 1/3/2024 (nmb). (Entered: 01/02/2024) |
| 01/02/2024 | 122 | MOTION for Leave to File Matters Under Seal re: 121 Notice of Filing, by Northbrook Industries, Inc.. (Attachments: # 1 Text of Proposed Order Proposed Order on Motion for Leave to File Material Under Seal)(Allushi, Admir) (Entered: 01/02/2024) |
| 01/03/2024 | 123 | ORDER GRANTING 122 Motion for Leave to File Matters Under Seal. IT IS HEREBY ORDERED that Defendant is authorized to file under seal the documents identified in its motion. Signed by Judge J. P. Boulee on 1/3/2024. (nmb) (Entered: 01/03/2024) |
| 01/03/2024 | 124 | Consent MOTION for Extension of Time to File Response to re: 116 MOTION for Summary Judgment by G. W.. (Attachments: # 1 Exhibit A - proposed Order)(Bouchard, David) (Entered: 01/03/2024) |
| 01/04/2024 | | The Consent Motion [Doc. 124] is GRANTED. IT IS HEREBY ORDERED that Plaintiff's deadline to file a response to Defendant's Motion for Summary Judgment is extended through and including January 19, 2024. So ordered by Judge J. P. Boulee on January 4, 2024. (jkl) (Entered: 01/04/2024) |
| 01/10/2024 | 125 | Unopposed MOTION for Extension of Time to File a Reply in Support re: 114 MOTION for Sanctions by G. W.. (Attachments: # 1 Exhibit A - proposed Order)(Bouchard, David) (Entered: 01/10/2024) |
| 01/11/2024 | | Plaintiff's 125 Unopposed Motion is GRANTED. IT IS HEREBY ORDERED that Plaintiff's deadline to file her reply in support of the Motion for Sanctions is extended through and including January 23, 2024. So ordered by Judge J. P. Boulee on January 11, 2024. (jkl) (Entered: 01/11/2024) |
| 01/11/2024 | 126 | Notice for Leave of Absence for the following date(s): March 28-April 12, 2024, June 3-7, 2024, June 10-14, 2024, June 17-21, 2024, June 24-28, 2024, July 1-5, 2024, by Patrick J. McDonough. (McDonough, Patrick) (Entered: 01/11/2024) |
| 01/18/2024 | 127 | RESPONSE in Opposition re 116 MOTION for Summary Judgment *and Brief in Support* filed by G. W.. (Attachments: # 1 Statement of Material Facts in Support of G.W.'s Response in Opposition to United Inn's Motion for Summary Judgment, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16 (1 of 2), # 18 Exhibit 16 (2 of 2), # 19 Exhibit 17, # 20 Exhibit 18, # 21 Exhibit 19, # 22 Exhibit 20, # 23 Exhibit 21, # 24 Exhibit 22)(Bouchard, David) (Entered: 01/18/2024) |
| 01/18/2024 | 128 | NOTICE Of Filing by G. W. re 127 Response in Opposition to Motion,, *(G.W.'s Notice of Filing Deposition Transcripts in Support of G.W.'s Response in Opposition to United Inn's Motion for Summary Judgment)* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 7, # 5 Exhibit 8, # 6 Exhibit 14, # 7 Exhibit 15, # 8 Exhibit 18, # 9 Exhibit 22)(Bouchard, David) (Entered: 01/18/2024) |
| 01/18/2024 | 129 | Response to Statement of Material Facts re 116 MOTION for Summary Judgment *in Doc. 116-1* filed by G. W.. (Bouchard, David) (Entered: 01/18/2024) |
| 01/23/2024 | 130 | REPLY BRIEF re 114 MOTION for Sanctions *(Plaintiff G.W.'s Reply in Support of Motion for Sanctions and Memorandum in Support)* filed by G. W.. (Attachments: # 1 Exhibit 1)(Bouchard, David) (Entered: 01/23/2024) |
| 01/24/2024 | | Submission of 114 MOTION for Sanctions , to District Judge J. P. Boulee. (nmb) (Entered: 01/24/2024) |

| 01/31/2024 | 131 | NOTICE of Appearance by Gabe Knisely on behalf of G. W. (Knisely, Gabe) (Entered: 01/31/2024) |
|---|---|---|
| 01/31/2024 | 132 | Consent MOTION for Extension of Time to File Reply Brief to 116 MOTION for Summary Judgment by Northbrook Industries, Inc. (Attachments: # 1 Text of Proposed Order)(Mobley, Cameron) Modified on 2/1/2024 to remove duplicate wording (jbu). (Entered: 01/31/2024) |
| 02/01/2024 | | For good cause shown, the Consent Motion to Extend [Doc. 132] is GRANTED. IT IS HEREBY ORDERED that Defendant's deadline to file its reply is extended through and including February 8, 2024. So ordered by Judge J. P. Boulee on February 1, 2024. (jkl) (Entered: 02/01/2024) |
| 02/08/2024 | 133 | REPLY to Response to Motion re 116 MOTION for Summary Judgment filed by Northbrook Industries, Inc.. (Mobley, Cameron) (Entered: 02/08/2024) |
| 02/09/2024 | | Submission of 116 MOTION for Summary Judgment , to District Judge J. P. Boulee. (nmb) (Entered: 02/09/2024) |
| 02/28/2024 | 134 | MOTION to Exclude The Purported Expert Testimony of Darrell B. Chaneyfield with Brief In Support by Northbrook Industries, Inc.. (Attachments: # 1 Exhibit A - Expert Report of Darrell B. Chaneyfield)(Mobley, Cameron) (Entered: 02/28/2024) |
| 02/28/2024 | 135 | MOTION to Exclude The Purported Expert Testimony of Naeshia McDowell with Brief In Support by Northbrook Industries, Inc.. (Attachments: # 1 Exhibit A - Expert Report of Naeshia McDowell)(Mobley, Cameron) (Entered: 02/28/2024) |
| 02/28/2024 | 136 | NOTICE Of Filing Original Discovery by Northbrook Industries, Inc. re 134 MOTION to Exclude The Purported Expert Testimony of Darrell B. Chaneyfield, 135 MOTION to Exclude The Purported Expert Testimony of Naeshia McDowell (Mobley, Cameron) (Entered: 02/28/2024) |
| 02/28/2024 | 137 | SEALED DEPOSITION of Darrell B. Chaneyfield taken on November 16, 2023 by Northbrook Industries, Inc..(Mobley, Cameron) Modified on 2/29/2024 (jkl). (Entered: 02/28/2024) |
| 02/28/2024 | 138 | SEALED DEPOSITION of Darrell B. Chaneyfield taken on December 4, 2023 by Northbrook Industries, Inc..(Mobley, Cameron) Modified on 2/29/2024 (jkl). (Entered: 02/28/2024) |
| 02/28/2024 | 139 | SEALED DEPOSITION of Naeshia McDowell taken on November 10, 2023 by Northbrook Industries, Inc..(Mobley, Cameron) Modified on 2/29/2024 (jkl). (Entered: 02/28/2024) |
| 02/28/2024 | 140 | MOTION for Leave to File Matters Under Seal re: 134 MOTION to Exclude The Purported Expert Testimony of Darrell B. Chaneyfield, 137 Deposition, 135 MOTION to Exclude The Purported Expert Testimony of Naeshia McDowell, 136 Notice of Filing, 138 Deposition, 139 Deposition by Northbrook Industries, Inc.. (Attachments: # 1 Text of Proposed Order Proposed Order on Motion for Leave to File Material Under Seal) (Mobley, Cameron) (Entered: 02/28/2024) |
| 02/29/2024 | | Defendant's unopposed 140 Motion for Leave to File Matters Under Seal is GRANTED. So ordered by Judge J. P. Boulee on 2/29/2024. (jkl) (Entered: 02/29/2024) |
| 03/08/2024 | 141 | Consent MOTION for Extension of Time to File a Response to Defendant's re: 134 MOTION to Exclude The Purported Expert Testimony of Darrell B. Chaneyfield, 135 MOTION to Exclude The Purported Expert Testimony of Naeshia McDowell by G. W.. (Attachments: # 1 Exhibit A - proposed Order)(Bouchard, David) (Entered: 03/08/2024) |

| | | |
|---|---|---|
| 03/11/2024 | | The Consent 141 Motion to Extend is GRANTED. IT IS HEREBY ORDERED that Plaintiff's deadline to respond to Defendant's Motions to Exclude are extended through and including March 20, 2024. So ordered by Judge J. P. Boulee on March 11, 2024. (jkl) (Entered: 03/11/2024) |
| 03/20/2024 | 142 | RESPONSE in Opposition re 134 MOTION to Exclude The Purported Expert Testimony of Darrell B. Chaneyfield filed by G. W.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Bouchard, David) (Entered: 03/20/2024) |
| 03/20/2024 | 143 | RESPONSE in Opposition re 135 MOTION to Exclude The Purported Expert Testimony of Naeshia McDowell filed by G. W.. (Attachments: # 1 Exhibit 1 - Karim Vellani's Deposition Transcript, # 2 Exhibit 2 - Dr. Mehlman-Orozco Report, # 3 Exhibit 3 - Dft's Resp to RFAs, # 4 Exhibit 4 - Trafficker's Plea Agreement, # 5 Exhibit 5 - Naeshia McDowell Report)(Bouchard, David) (Entered: 03/20/2024) |
| 03/28/2024 | 144 | Consent MOTION for Extension of Time to File a Reply Brief in Support of its Motion to Exclude the Purported Expert Testimony of D. Chaneyfield re: 134 MOTION to Exclude The Purported Expert Testimony of Darrell B. Chaneyfield, by Northbrook Industries, Inc.. (Attachments: # 1 Exhibit A - Proposed Order to Extend the Deadline for Defendant to File a Reply Brief in Support of its Motion to Exclude the Purported Expert Testimony of Darrell Chaneyfield)(Mobley, Cameron) Modified text on 3/29/2024 (nmb). (Entered: 03/28/2024) |
| 03/28/2024 | 145 | Consent MOTION for Extension of Time to File a Reply Brief in Support of its Motion to Exclude the Purported Expert Testimony of N. McDowell re: 135 MOTION to Exclude The Purported Expert Testimony of Naeshia McDowell, by Northbrook Industries, Inc.. (Attachments: # 1 Exhibit A - Proposed Order to Extend the Deadline for Defendant to File a Reply Brief in Support of its Motion to Exclude the Purported Expert Testimony of Naeshia McDowell)(Mobley, Cameron) Modified text on 3/29/2024 (nmb). (Entered: 03/28/2024) |
| 03/29/2024 | | The consent motions [Docs. 144 and 145] are GRANTED. IT IS HEREBY ORDERED that Defendant's deadline to file the reply briefs is extended through and including April 12, 2024. So ordered by Judge J. P. Boulee on March 29, 2024. (jkl) (Entered: 03/29/2024) |
| 04/12/2024 | 146 | REPLY to Response to Motion re 135 MOTION to Exclude The Purported Expert Testimony of Naeshia McDowell filed by Northbrook Industries, Inc.. (Attachments: # 1 Exhibit A - Expert Report of Naeshia McDowell)(Mobley, Cameron) (Entered: 04/12/2024) |
| 04/12/2024 | 147 | REPLY to Response to Motion re 134 MOTION to Exclude The Purported Expert Testimony of Darrell B. Chaneyfield filed by Northbrook Industries, Inc.. (Attachments: # 1 Exhibit A - Expert Report of Darrell Chaneyfield, # 2 Exhibit B - IAPSC Forensic Methodology)(Mobley, Cameron) (Entered: 04/12/2024) |
| 04/15/2024 | | Submission of 135 MOTION to Exclude The Purported Expert Testimony of Naeshia McDowell, 134 MOTION to Exclude The Purported Expert Testimony of Darrell B. Chaneyfield, to District Judge J. P. Boulee. (nmb) (Entered: 04/15/2024) |
| 06/14/2024 | 148 | ORDER: United's Motion 116 as to both counts of the Complaint is GRANTED, and Plaintiffs Complaint is hereby DISMISSED. The Clerk is DIRECTED to terminate all pending motions, except for Plaintiffs Motion for Sanctions, ECF No. 114 , related to United's admitted failure to satisfy its discovery obligations. The Court will issue a separate order scheduling a hearing on the Motion for Sanctions. Signed by Judge J. P. Boulee on 6/14/2024. (ajw) (Entered: 06/17/2024) |

| 06/17/2024 | 149 | CLERK'S JUDGMENT in favor of Defendant against Plaintiff dismissing action (ajw)-- Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist-- (Entered: 06/17/2024) |
| 06/17/2024 | | Civil Case Terminated. (ajw) (Entered: 06/17/2024) |
| 06/18/2024 | | ORDER: The Court hereby schedules oral argument on the 114 Motion for Sanctions for Tuesday, August 6, 2024, at 1:30 PM in Courtroom 1908. The Clerk is DIRECTED to administratively terminate the motion and to resubmit it after the hearing. So ordered by Judge J. P. Boulee on June 18, 2024. (jkl) (Entered: 06/18/2024) |
| 07/12/2024 | 150 | NOTICE of Appearance by Rory Allen Weeks on behalf of G. W. (Weeks, Rory) (Entered: 07/12/2024) |
| 07/12/2024 | 151 | MOTION for Reconsideration re 148 Order on Motion for Summary Judgment, 149 Clerk's Judgment and Motion for Oral Argument with Brief in Support by G. W.. (Attachments: # 1 Exhibit 1 - Ricchio Complaint)(Weeks, Rory) . Added MOTION for Oral Argument on 7/15/2024 (gww). Modified on 7/15/2024 (gww). (Entered: 07/12/2024) |
| 07/30/2024 | | Submission of 151 MOTION for Reconsideration re 148 Order on Motion for Summary Judgment, 149 Clerk's Judgment / MOTION for Oral Argument, to District Judge J. P. Boulee. (jkl) (Entered: 07/30/2024) |
| 07/30/2024 | 152 | REPLY BRIEF re 151 MOTION for Reconsideration re 148 Order on Motion for Summary Judgment, 149 Clerk's Judgment MOTION for Oral Argument *(Reply in Support)* filed by G. W.. (Bouchard, David) (Entered: 07/30/2024) |
| 08/05/2024 | | NOTICE of Hearing **TIME CHANGE ONLY**: Oral Argument Hearing set for 8/6/2024 at 02:00 PM in Courtroom 1908 before Judge J. P. Boulee. (jkl) (Entered: 08/05/2024) |
| 08/06/2024 | | Submission of 114 MOTION for Sanctions to District Judge J. P. Boulee. (jkl) (Entered: 08/06/2024) |
| 08/06/2024 | 153 | SEALED. Minute Entry for proceedings held before Judge J. P. Boulee(gww) (Entered: 08/07/2024) |
| 08/07/2024 | 154 | Motion for Leave to File Supplemental Brief in Support of RESPONSE in Opposition re 114 MOTION for Sanctions , 151 MOTION for Reconsideration re 148 Order on Motion for Summary Judgment, 149 Clerk's Judgment MOTION for Oral Argument *DEFENDANTS MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO PLAINTIFFS MOTION FOR SANCTIONS OR IN THE ALTERNATIVE, MOTION FOR LEAVE TO FILE RESPONSE TO PLAINTIFFS MOTION FOR RECONSIDERATION* filed by Northbrook Industries, Inc.. (Mobley, Cameron) Modified on 8/8/2024 to edit docket text (gww). (Entered: 08/07/2024) |
| 08/13/2024 | 155 | NOTICE Of Filing Supplemental Exhibits by G. W. re 114 MOTION for Sanctions (Attachments: # 1 Exhibit 32 (updated), # 2 Affidavit)(Bouchard, David) Modified on 8/14/2024 (gww). (Entered: 08/13/2024) |
| 09/06/2024 | 156 | SEALED TRANSCRIPT of Proceedings held on 8/6/2024, before Judge JP Boulee. Court Reporter/Transcriber PENNY COUDRIET. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/court-reporter-directory. Redaction requests are due within 21 days of entry. (ppc) (Entered: 09/06/2024) |
| 11/14/2024 | 157 | ORDER: Because the motion is unopposed and because new arguments were raised during oral argument, Defendants Motion for Leave to File Supplemental Brief Doc. 154 is GRANTED. IT IS HEREBY ORDERED that no later than fourteen days from the date of this order, Defendant may file either a supplemental brief in support of its response to |

| | | Plaintiffs Motion for Sanctions or file a response brief to Plaintiffs Motion for Reconsideration. Signed by Judge J. P. Boulee on 11/14/2024. (gww) (Entered: 11/14/2024) |
|---|---|---|
| 11/26/2024 | 158 | Consent MOTION for Extension of Time to File Either a Supplemental Brief in Opposition to Plaintiffs Motion for Sanction or Response to Plaintiffs Motion for Reconsideration re: 154 Motion for Leave to File Supplemental Brief, 157 Order on Motion for Leave to File, by Northbrook Industries, Inc.. (Attachments: # 1 Text of Proposed Order Proposed Order Extending Defendant's Time to File Either a Supplemental Brief in Opposition to Plaintiffs Motion for Sanction or Response to Plaintiffs Motion for Reconsideration)(Mobley, Cameron) (Entered: 11/26/2024) |
| 11/26/2024 | | ORDER: The Consent Motion [Doc. 158] is GRANTED. IT IS HEREBY ORDERED that Defendant's deadline to file either a supplemental brief or response is extended through and including December 5, 2024. So ordered by Judge J. P. Boulee on November 26, 2024. (jkl) (Entered: 11/26/2024) |
| 12/05/2024 | 159 | RESPONSE in Opposition re 151 MOTION for Reconsideration re 148 Order on Motion for Summary Judgment, 149 Clerk's Judgment MOTION for Oral Argument filed by Northbrook Industries, Inc.. (Mobley, Cameron) (Entered: 12/05/2024) |
| 12/19/2024 | 160 | REPLY BRIEF re 151 MOTION for Reconsideration re 148 Order on Motion for Summary Judgment, 149 Clerk's Judgment MOTION for Oral Argument filed by G. W.. (Bouchard, David) (Entered: 12/19/2024) |
| 12/19/2024 | | Submission of 151 MOTION for Reconsideration/MOTION for Oral Argument to District Judge J. P. Boulee. (jkl) (Entered: 12/19/2024) |
| 02/13/2025 | | Document 161 is sealed. (bgt) (Entered: 02/15/2025) |
| 03/07/2025 | 162 | NOTICE OF APPEAL as to 149 Clerk's Judgment, 148 Order on Motion for Summary Judgment, by G. W.. Case Appealed to USCA - 11th Circuit. Filing fee $ 605, receipt number AGANDC-14127221. Transcript Order Form due on 3/21/2025 (Bouchard, David) (Entered: 03/07/2025) |
| 03/08/2025 | 163 | Transmission of Certified Copy of Notice of Appeal, USCA Appeal Fees, Judgment, Order, and Docket Sheet to USCA- 11th Circuit re: 162 Notice of Appeal. Appeal fees have been paid on receipt# 3/7/25; AGANDC-14127221. The court reporter is Penny Coudriet, ZOOM. The District Judge is J. P. Boulee. (pjm) (Entered: 03/08/2025) |
| 03/14/2025 | 164 | USCA Acknowledgment of 162 Notice of Appeal, filed by G. W. Case Appealed to USCA- 11th Circuit. Case Number 25-10829-A. (pjm) (Entered: 03/14/2025) |
| 03/28/2025 | 165 | TRANSCRIPT Order Form for proceedings held on 8/6/24 before Judge Boulee, re 162 Notice of Appeal,. Court Reporter: Penny Coudriet. (Bouchard, David) (Entered: 03/28/2025) |
| 03/28/2025 | | Set Deadline re: 162 Notice of Appeal: Financial Arrangements due on 4/11/2025. (pjm) (Entered: 03/28/2025) |
| 03/28/2025 | 166 | Court Reporter Acknowledgment re: 165 Transcript Order Form filed by G.W. Case Appealed to USCA- 11th Circuit, Case Number 25-10829-A.Transcript is required. Court Reporter: Penny Coudriet. Satisfactory financial arrangements completed. Notification of Transcript Filed in District Court re: 165 Transcript Order Form filed by G.W. All transcripts for this request are now on file. (pjm) (Entered: 03/28/2025) |

## PACER Service Center

**Transaction Receipt**

| 07/03/2025 18:10:54 | | | |
|---|---|---|---|
| **PACER Login:** | dbouchard2 | **Client Code:** | 15278 |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-05232-JPB |
| **Billable Pages:** | 16 | **Cost:** | 1.60 |

# Doc. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| G.W., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE |
| vs. | : | |
| | : | NO. _____ |
| NORTHBROOK INDUSTRIES, | : | |
| INC., D/B/A UNITED INN AND | : | |
| SUITES, | : | JURY TRIAL DEMANDED, |
| | : | PURSUANT TO FED.R.CIV.P. 38 |
| Defendant. | : | |

## **COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff in the above-styled action and hereby files her Complaint as follows:

1.

This case involves the sex trafficking of a child. Plaintiff G.W. was trafficked for sex as a minor at the United Inn & Suites hotel located at 4649 Memorial Drive, Decatur, Georgia 30032 (the "United Inn"). Plaintiff is identified only by her initials given the nature of the case and that she was a minor at the times pertinent to the events alleged herein.[1]

2.

Sex trafficking and other sex crimes are common occurrences at the United Inn. Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites ("Northbrook") chose to ignore, allow, condone, facilitate, support, and permit such activity at the United Inn. Northbrook is liable to Plaintiff for its actions and failures to act. The basis for Northbrook's liability is straightforward:

    a) The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), provides a cause of action to victims of sex trafficking against "whoever knowingly benefits, financially or by

---

[1] A Motion for Protective Order regarding Plaintiff's identity is being filed contemporaneously herewith.

2

receiving anything of value from participation in a venture which that person **knew or should have known** has engaged in an act in violation of" the TVPRA.  Northbrook knowingly benefited from participation in a venture which it knew or should have known engaged in an act in violation of the TVPRA because it (i) rented the rooms at the United Inn in which Plaintiff was sex trafficked, (ii) collected fees for rental of those rooms, and (iii) did so notwithstanding that it knew or should have known that Plaintiff was a victim of sex trafficking.   As such, Northbrook is liable to Plaintiff for her damages under the TVPRA.

b) United Inn negligently breached duties imposed by law, assumed by contract and behavior, and voluntarily undertaken. United Inn knew or should have known of the foreseeable risk of sex trafficking and other sex crimes at the United Inn and failed to act as similarly situated businesses would in like circumstances. As such, United Inn is liable to Plaintiff for her damages under Georgia common law.

## PARTIES, JURISDICTION, AND VENUE

3.

Plaintiff G.W. is a citizen of the United States of America and a resident of the State of Georgia. She consents to the jurisdiction of this Court. Though Plaintiff G.W. was a minor when she was trafficked, she is now an adult.

4.

Northbrook's principal office address is 4649 Memorial Drive, Decatur, Georgia 30032. Northbrook's registered agent for service of process is Ashar M. Islam, 2737 Sheraton Drive, Macon, Georgia 31204, where Northbrook can be served.[2]

5.

Jurisdiction and venue are proper as to Northbrook and Northbrook was properly served with process in this action.

6.

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331, because Plaintiff asserts claims arising under 18 U.S.C. § 1595(a),

---

[2] Whenever reference is made in this Complaint to any action, inaction, or conduct of Northbrook, the allegation is that Northbrook engaged in the action, inaction, or conduct at issue by or through one or more of its officers, directors, agents, employees, or representatives who was engaged in the management, direction, control, or transaction of the ordinary business and affairs of Northbrook.

and pursuant to 28 U.S.C. § 1367, because Plaintiff's state law claims form part of the same case or controversy as her federal law claims.

### 7.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action is brought.

## **INTRODUCTION**

### 8.

Plaintiff G.W. was trafficked for sex as a minor at the United Inn in violation of 18 U.S.C. § 1591.  On November 6, 2020, Plaintiff's trafficker entered a guilty plea in the United States District Court for the Northern District of Georgia for sex trafficking Plaintiff G.W. in violation of 18 U.S.C. § 1591.[3]

### 9.

At all times relevant hereto, Northbrook owned, operated, maintained, controlled, and managed the United Inn.

---

[3] *United States v. Obie*, Case No. 1:18-cr-00424-MLB-JKL (N.D.GA., Nov. 6, 2020), ECF No. 60.

10.

At all times relevant hereto, Northbrook directed, operated, supervised, monitored, managed, and/or employed all employees, agents, representatives, managers, directors, and other staff at the United Inn, giving Northbrook specific and direct knowledge of crimes and sex trafficking at the hotel during the relevant period.

11.

Northbrook knew or should have known that Plaintiff was sex trafficked at the United Inn.  Sex trafficking is a well-documented and pervasive problem in hotels and motels.  During the period at issue, Northbrook knew or should have known common signs of sex trafficking as well as policies to prevent, identify, and deter sex trafficking at the United Inn, and furthermore, to ensure Northbrook was not profiting from sex trafficking, as required by federal law.  But Northbrook chose to profit from the sex trafficking ventures in which it participated, including the trafficking of Plaintiff, rather than to take reasonable and known steps to prevent, identify, and deter sex trafficking at the United Inn.  In doing so, the Defendant participated in, facilitated, condoned, or ignored the sex trafficking of Plaintiff.

12.

Under Georgia law, Northbrook had a duty to exercise ordinary care to keep

United Inn's premises in a reasonably safe condition and not to expose business invitees—including the Plaintiff—to unreasonable risk or to lead them into dangerous conditions. Northbrook also had a duty to inspect the premises and take reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises. Likewise, Northbrook had other duties described further herein, including the duty to train hotel personnel, supervise hotel personnel, monitor the property, secure the property, remediate the property in light of known hazards, among other duties, to keep the property in a reasonably safe condition for invitees.

13.

By encouraging others to enter United Inn's premises and to pay monies for the use of the premises, Northbrook made an implied representation that it had exercised reasonable care to make those premises safe for those coming upon the property, including the Plaintiff.

14.

Northbrook breached its duty to the Plaintiff by negligently and/or willfully turning a blind eye to the open and obvious sexual exploitation of Plaintiff (and other minors) at the United Inn in exchange for commercial gain and in total disregard of the rights of the Plaintiff, as well as others who were similarly exploited at the United

Inn.

15.

Northbrook acted negligently, willfully, wantonly, and callously by not having policies or procedures in place at the United Inn to combat the well-known danger of sex trafficking in the hospitality industry, by failing to train its managers, employees, and agents at the United Inn on the pervasiveness of sex trafficking in the hospitality industry and to be on the lookout for well-known signs of sex trafficking, by failing to take any measures at the United Inn to prevent sex trafficking at the hotel, by allowing rooms at the United Inn to be rented to traffickers and pimps on a repeated and ongoing basis for open and obvious sexual exploitation of Plaintiff and other minors for days and weeks, and by failing to otherwise protect and/or warn invitees about dangerous and hazardous conditions at the United Inn about which Northbrook had actual and/or constructive knowledge. Through such actions and omissions, among others, the Defendant allowed, condoned, and facilitated sex trafficking that victimized the Plaintiff in this case.

**A.    Plaintiff's Minor Sex Trafficking at the United Inn**

16.

During the entire period Plaintiff was sex trafficked at the United Inn, she was a minor.

8

17.

Plaintiff was sex trafficked as a minor at the United Inn in June and July 2017, during which time she was an invitee of the United Inn.

18.

Minor sex trafficking includes recruiting, enticing, harboring, transporting, obtaining, maintaining, patronizing, or soliciting a person for a commercial sex act who is under the age of 18. 18 U.S.C. § 1591(a)(1), *et seq.* Minor sex trafficking also includes knowingly benefitting financially from participation in a venture, knowing or in reckless disregard, that the venture has committed one of the acts listed in paragraph 18 U.S.C. § 1591(a)(1). *See* 18 U.S.C. § 1591(a)(2).

19.

Minor sex trafficking does not require evidence that the victim was subject to "force, fraud, or coercion." 18 U.S.C. § 1591(a)(1), *et seq.*

20.

Plaintiff's sex trafficker operated openly and brazenly at the United Inn. For at least part of the time she was sex trafficked at the United Inn, Plaintiff was sex trafficked with a second minor victim of sex trafficking. On information and belief, other minors and young women were sex trafficked at the United Inn during the time Plaintiff was sex trafficked at the United Inn.

21.

While she was trafficked for sex at the United Inn, Plaintiff, and the other minor victim of sex trafficking with whom she was trafficked, exhibited numerous well-known and visible signs of minor sex trafficking victims, including their age and inappropriate appearance, physical deterioration, poor hygiene, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, no control of or possession of money, loitering, and soliciting male patrons. Northbrook knew or should have known of these many signs, which Plaintiff displayed during her stay at the United Inn while she was in common areas and approaches to the property.

22.

At least 15 adult men visited Plaintiff's room at the United Inn (*i.e.*, the room in which Plaintiff and another minor were sex trafficked) to purchase sex with a child. The adult men arrived in view of the hotel's lobby, which had a large window facing the parking lot. Northbrook knew or should have known that the large number of adult male visitors to the room was indicative of commercial sex activity, including minor sex trafficking. Northbrook negligently failed to respond to the evidence it knew or should have known indicated minor sex trafficking, including, for example, by failing to control or monitor the frequent male visitors.

23.

Once at the United Inn, five adult men purchased commercial sex with Plaintiff and the other minor with whom Plaintiff was sex trafficked. The five adult men had sex with both minor victims simultaneously. A fight ensued, which spilled out into the United Inn's open-air hallway and caused significant commotion. The other minor with whom Plaintiff was trafficked threatened to pepper spray the men. Northbrook knew or should have known that five adult men visited the single room of two children as well as the melee that ensued in a common area of the United Inn.

24.

A second time at the United Inn, five adult men purchased commercial sex with Plaintiff and the other minor with whom Plaintiff was sex trafficked. The five adult men had sex with both minor victims simultaneously. After the five adult men left Plaintiff's room, the men stood in the open-air hallway, banging on the door, and demanding the minors allow them back into the room. Northbrook knew or should have known that five adult men visited the single room of two children as well as the commotion that ensued in a common area of the United Inn.

25.

At least for part of Plaintiff's stay at the United Inn, the room in which she was trafficked was on the first floor of the hotel, close to the hotel lobby and front

desk.

26.

Plaintiff's room, which she shared with another minor victim of sex trafficking for at least part of the time she was trafficked at the United Inn, contained condoms and a large number of towels. While housekeeping provided the extra towels, Plaintiff either declined housekeeping entry to the room for consecutive days or housekeeping simply did not come to Plaintiff's room at all.

27.

Plaintiff was required to turn over money to her trafficker and at times was only able to eat a bag of chips in a day. During the time she was trafficked, Plaintiff lost substantial weight.

28.

Northbrook had ample opportunity to observe the age and appearance of Plaintiff and the other minor with whom she was sex trafficked at the United Inn. Plaintiff and the other sex trafficking victim with her frequently appeared around the hotel property, including common areas and approaches, wearing little clothing and soliciting adult men.

29.

Northbrook sold a box of condoms to Plaintiff and the other minor with whom she was sex trafficked while they were being trafficked at the hotel. Indeed, Plaintiff and the other minor purchased the box of condoms in the United Inn lobby from a Northbrook employee, agent, and/or representative.

30.

On at least one occasion Plaintiff and the other sex trafficking victim with her were locked out of their room at the United Inn. They visited the front desk and asked the Northbrook employee, agent, and/or representative working at the front desk for help. The Northbrook employee, agent, and/or representative spoke with Plaintiff's sex trafficker over the phone and then provided Plaintiff and the other minor with whom she was trafficked—two minors who had not rented a room at the hotel— with access to the room where they had been victimized and would again be victimized. Indeed, the Northbrook employee, agent, and/or representative walked Plaintiff and the other minor back to the room and opened the door to the room.

31.

Plaintiff and the other sex trafficking victim with her also interacted with other Northbrook employees, agents, and/or representatives at the United Inn who knew or should have known Plaintiff was a minor victim of sex trafficking occurring

13

at the hotel.  Plaintiff interacted with hotel staff in inappropriate clothing and was seen (or should have been seen) by hotel staff in common areas and approaches to the United Inn, among other places, soliciting various adult men.

32.

Plaintiff's trafficker and his associates also interacted with hotel staff, who accommodated their requests and thereby facilitated and assisted Plaintiff's minor sex trafficking.  Plaintiff's trafficker and/or his associate spoke to a hotel employee when Plaintiff and the other minor with whom she was sex trafficked were first brought to the United Inn to be trafficked.

33.

Plaintiff's trafficker and/or his associate rented the room/s in which Plaintiff was sex trafficked at the United Inn.  Northbrook collected revenue from rental of the room/s in which Plaintiff was trafficked for sex at the United Inn.

34.

Northbrook's employee, agent, and/or representative working at the United Inn front desk talked to Plaintiff's trafficker before letting Plaintiff and the other sex trafficking victim with her back into the room rented by Plaintiff's trafficker and/or his associate.

35.

On information and belief, Plaintiff's trafficker (and/or his associates) had previously rented rooms and trafficked women for sex at the United Inn. As such, Plaintiff's trafficker (and/or his associates) was familiar to Northbrook employees, agents, and/or representatives at the time he trafficked Plaintiff for sex at the United Inn.

36.

On information and belief, Northbrook employees, agents, and/or representatives were friendly with various sex traffickers operating at the United Inn, including Plaintiff's sex trafficker.

37.

On information and belief, Northbrook's employees, agents, and/or representatives allowed, condoned, assisted, and facilitated Plaintiff's minor sex trafficking at the United Inn by, among other things, acting as lookouts for Plaintiff's trafficker and informing the trafficker of police activity at the hotel as well as warning Plaintiff's trafficker about guest complaints and high visitor traffic drawing unwanted attention.

38.

On information and belief, Northbrook reviewed hotel performance data, room occupancy data, and profitability data in connection with managing and/or operating the United Inn & Suites.

39.

On information and belief, Northbrook turned a blind eye to safety and security issues at the United Inn & Suites when revenue was satisfactory, even when Defendant knew or should have known part of the profits were derived from sex trafficking ventures victimizing Plaintiff and other minors.

40.

At all relevant times, Northbrook received revenue from room rentals at the United Inn, including the rooms in which Plaintiff was trafficked.

41.

As described in the foregoing paragraphs, Northbrook knew or should have known that Plaintiff was a minor victim of sex trafficking who was sex trafficked at the United Inn, over which Northbrook exercised control.  Northbrook negligently failed to respond to the evidence described in the foregoing paragraphs showing Northbrook knew or should have known Plaintiff was a minor victim of sex trafficking.

**B.     Sex Trafficking and Other Crimes were Frequent and Foreseeable at the United Inn**

42.

Plaintiff's sex trafficker chose to traffic Plaintiff and another minor at the United Inn because of United Inn's sordid reputation as a hub of sex trafficking and other sex crimes.

43.

Northbrook knew or should have known that the United Inn and its approaches were rife with crime, including minor sex trafficking, before, during, and after Plaintiff's sex trafficking.  Northbrook nonetheless permitted Plaintiff to be sex trafficked at the United Inn.

44.

Northbrook knew or should have known of sex trafficking and other sex crimes at the hotel prior to Plaintiff's minor sex trafficking at the United Inn. Specifically, and based on publicly available information and police reports, Northbrook knew or should have known of the following crimes, among others, occurring on United Inn's premises and approaches prior to Plaintiff's sex trafficking:

a.  In September 2011, a man smothered and then strangled a woman to death at the United Inn before having sex with her dead body over the course of two days at the hotel.[4]

b.  On August 7, 2012, a woman was arrested at the United Inn on a prostitution warrant.

c.  On May 30, 2012, a woman staying in room 320 at the United Inn reported that she was being harassed by written messages left on her door and phone calls requesting sexual acts in exchange for money at the hotel.

d.  On July 16, 2014, a woman was arrested for prostitution in room 326 of the United Inn.

e.  On July 23, 2014, a woman reported being raped by a man in room 239 of the United Inn when a man forcibly had sex with her and did not pay her afterwards.

f.  On August 12, 2015, a woman was arrested for prostitution at the United Inn after meeting two undercover police officers in the parking lot and walking to room 101 of the hotel.  The woman did not have a

---

[4] *Norman v. State*, Case No. S-15-A-1525, (Ga. S. Ct. Jan. 19, 2016).

key to the room and left the officers waiting at the room while she went back to the front desk to get a key to the room for the encounter.

g.  On August 26, 2015, two armed men attempted to sexually assault a woman, who they also robbed, in room 120 of the United Inn.

h.  On December 24, 2016, a woman staying in room number 40 at the United Inn reported she was sexually assaulted by a man staying in room 116.

i.  On June 3, 2017, a man was arrested after beating a woman in room 345 of the United Inn over monies owed for sexual favors.

j.  On June 20, 2017, police responded to a fight between a prostitute and her pimp in room 101 at the United Inn.  The pimp left this prostitute's room after the fight to go stay in another woman's room at the hotel.

k.  On July 20, 2017, the Metro Atlanta Child Exploitation Task Force conducted an operation "in reference [to] child and adult prostitution" at the United Inn.  Police arrested a woman for prostitution in room 132 of the United Inn, wherein a toddler was also in the room.

45.

Northbrook did not act to address or combat this gruesome history prior to Plaintiff's trafficking.  Indeed, Northbrook continued to allow, condone, and permit

sex trafficking and other sex crimes at the hotel **_after_** Plaintiff was trafficked for sex
at the United Inn.  Specifically, and based on publicly available information and
police reports, Northbrook knew or should have known of the following sex crimes,
arrests, and incidents, among others, occurring on United Inn's premises and
approaches after Plaintiff was sex trafficked at the United Inn with another minor:

a. In April 2018, a man was beaten to death standing in front of room 320
   at the United Inn.

b. On March 24, 2019, a man at the United Inn reported that a prostitute
   at the hotel had stolen his car.

c. On April 8, 2019, a woman reported that she was raped in room 126 of
   the United Inn after witnessing a man get shot at the hotel.

d. On October 22, 2019, two women and one man were arrested in room
   118 of the United Inn for prostitution, pimping, and keeping a place of
   prostitution at the United Inn.

e. On November 27, 2019 a woman reported that a man attempted to rape
   her in room 117 of the United Inn.

f. On January 8, 2020, a woman was arrested for prostitution in room 141
   of the United Inn.  This woman's sister was also staying at the United
   Inn, in room 139.  Both rooms were registered to one man, who was

trafficking several women.  The woman made several calls to this man from jail and discussed staying quiet, moving other victims to a different hotel, and recruiting other women while the woman was in jail. The man was then issued warrants for pimping and keeping a place of prostitution at the United Inn.

g.  On January 10, 2020, a man was arrested at the United Inn on a keeping a place of prostitution warrant.

h.  On February 10, 2020, a man reported he was sexually assaulted multiple times at the United Inn.[5]

46.

As further evidence that Northbrook continued to allow, condone, and permit sex trafficking and other crimes at the hotel after Plaintiff was trafficked for sex at the United Inn, online reviews for the hotel indicate such activity remained commonplace after Plaintiff was trafficked.  Specifically, Northbrook knew or should have known of the following sex crimes, arrests, and incidents, among others,

---

[5] The list of graphic conduct set forth in paragraphs 44 and 45 is merely illustrative of the rampant sex crimes occurring at the United Inn about which Northbrook knew or should have known.  The full record is publicly available in voluminous police reports, among other places.

occurring on United Inn's premises and approaches after Plaintiff was sex trafficked at the United Inn with another minor:

- "[T]hey cook drugs here… Been coming around here for 9 months to visit family who stay there and this is horrific."  (Google.com, 2018)

- "[L]ots of hustlers stand out front of the hotel during the night; not to mention a hot spot for prostitution." (Google.com, 2018)

- "Full of … drugs." (Google.com, 2019)

- "[L]oitering all around the building." (Google, 2019)

47.

On information and belief, Defendant reviewed online reviews, among other information, in connection with managing and/or operating the United Inn.

48.

In 2018, the Dekalb County Commission cited the United Inn for 447 violations of county fire, health, and building codes—more violations than any other hotel or motel in Dekalb County in 2018.  Northbrook paid $60,345 to Dekalb County in 2018 because of those violations.[6]

---

[6] https://www.ajc.com/news/local-govt--politics/dekalb-news-extended-stay-hotel-inspections-lead-397-citations/V3NEXD3pPIdLloPfzOSzMP/#:~:text=Twelve%20extended%20stay%2

49.

By failing to take reasonable, appropriate, sufficient, and necessary actions in response to widespread sex crimes at the United Inn generally, and in response to Plaintiff's sex trafficking at the United Inn specifically, Northbrook's employees, agents, and/or representatives ignored, allowed, condoned, assisted, and facilitated Plaintiff's minor sex trafficking at the United Inn.

50.

As a direct and proximate result of Northbrook's acts and omissions, and Plaintiff being trafficked for sex as a minor at the United Inn, Plaintiff suffered substantial physical, emotional, and psychological harm and other damages. Such injuries and damages were reasonably foreseeable to Northbrook.

## C.    **Northbrook's Knowledge of Sex Trafficking**

51.

Northbrook knew or should have known of the existence of minor sex trafficking and its illegality since the passage of the Trafficking Victims Protection Act in 2000, the United Nations' adoption of the Palermo Protocol, to prevent,

---

0hotels%20in,fire%2C%20health%20and%20building%20codes (last visited Nov. 20, 2020).

suppress, and punish trafficking in persons, and the passage of O.C.G.A. § 16-5-46 in 2007.

52.

Northbrook knew or should have known that hotels and motels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

53.

Northbrook knew or should have known the following: The National Human Trafficking Hotline has reported that ninety-two percent of the calls it received involving hotels and motels reported sex trafficking, and another two percent reported a combination of sex and labor trafficking.[7] A 2012 study found that 63 percent of trafficking incidents occurred in hotels.[8] And the Polaris Project found

---

[7] *Human Trafficking and the Hotel Industry*, Polaris Project, https://polarisproject.org/sites/default/files/human-trafficking-hotel-industry-recommendations.pdf (last visited Nov. 15, 2020).

[8] Jon Conte, *et al., Inhospitable to Human Trafficking Program Evaluation*, at 2, Businesses Ending Slavery and Trafficking, (July 2014),

that "75% of [trafficking] survivors responding to Polaris's survey reported coming into contact with hotels at some point during their exploitation . . . . Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from hotel staff."

54.

Northbrook knew or should have known that attorneys for the hotel industry estimated and reported to hotel industry representatives that eight out of ten human trafficking arrests occur in or around hotels,[9] and that the industry had been warned, among other things, to "Make sure hotel not complicit," "Manager not looking the other way," and "No pay off for silence or lack of curiosity."[10]

55.

Northbrook knew or should have known that the organization called End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child-

---

https://www.bestalliance.org/uploads/5/0/0/4/50047795/itt_program_evaluation.11_without_appendix.pdf at 5 (last visited Nov. 15, 2020).

[9] Rich Keating, *Human Trafficking: What Is it and How It Impacts the Hospitality Industry*, Presentation Delivered at AHIA Sprint Conference 2013, Washington, D.C., http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983.

[10] Rich Keating, Human Trafficking: What Is it and How It Impacts the Hospitality Industry, Presentation Delivered at AHIA Sprint Conference 2013, Washington, D.C., http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983 at 6 (last visited Nov. 15, 2020).

Protection Code of Conduct (the "Code") in the United States in 2004.[11]

56.

Northbrook knew or should have known that the Code, which lays out well-established best practices for the hospitality industry to combat sex trafficking, identifies six reasonable and logical steps hotels and motels can take to prevent child sex trafficking:

a. establish corporate policy and procedures against sexual exploitation of children;

b. train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;

c. include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

d. provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

---

[11] *See The Tourism Child-Protection Code of Conduct*, ECPAT-USA, *available at* www.ecpatusa.org/code/ (last visited Nov. 15, 2020).

    e.  support, collaborate and engage stakeholders in the prevention of

sexual exploitation of children; and

    f.  report annually on the company's implementation of Code-

related activities.

57.

Northbrook knew or should have known that ECPAT is only one of several

high-profile organizations that have for years given hotels and motels the tools to

address the scourge of sex trafficking at hotels.

58.

Northbrook knew or should have known that the American Hotel and Lodging

Association states on its website that a "30-minute online training program,

developed by ECPAT-USA in collaboration with the hotel industry, is now available

for free. This offering discusses intersections between human trafficking and the

hotel industry and offers free tools and resources to go along with the training to

help companies combat trafficking."[12]

59.

Northbrook knew or should have known that the American Hotel and Lodging

---

[12] https://www.ahla.com/issues/human-trafficking (last visited Nov. 15, 2020)
(emphasis added).

Association website links to a free ECPAT training on sex trafficking.[13]

60.

Northbrook knew or should have known that the free ECPAT training available through the American Hotel and Lodging Association website states: "***The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity*** … ***From check-in to check-out there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property*** … ***With proper training, a front desk agent or a housekeeper can notice that something is not right and respond***."[14]  Defendant knew or should have known they had access to ECPAT's free training materials.

61.

Northbrook knew or should have known that during the relevant period the Department of Homeland Security ("DHS") published guidelines to help hotels and motels detect and stop human trafficking.  DHS's guidelines instruct housekeeping, maintenance, front desk, and security, among other hotel personnel, to be vigilant in looking for signs of human trafficking at hotels and motels, such as:

---

[13] *Id.*

[14] https://www.ecpatusa.org/hotel-training (last visited Nov. 15, 2020) (emphasis added).

28

a. persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b. persons who lack freedom of movement or are constantly monitored;

c. persons who have no control over or possession of money or ID;

d. persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e. requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

f. the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g. extended stay with few or no personal possessions in the room;

h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

i. the same person reserves multiple rooms;

j. a room is rented hourly, less than a day, or for an atypical extended stay;

k. attempts to sell items to or beg from patrons or staff;

l.  cars in the parking lot regularly parked backward, so the license plates are not visible;

m. loitering and solicitation of male patrons;

n.  waiting at a table or bar and picked up by a male (trafficker or customer)

o.  persons asking staff or patrons for food or money; and

p.  persons taking cash or receipts left on tables.

## 62.

Northbrook knew or should have known that since 2001 sex trafficking has been front-page news in Atlanta, when the Atlanta Journal-Constitution published Jane Hansen's groundbreaking series, *Selling Atlanta's Children*.

## 63.

Northbrook knew or should have known that, in 2011, then-Attorney General (AG) Sam Olens initiated a well-publicized, multi-year campaign to combat sex trafficking in Georgia.  AG Olens worked with the Georgia General Assembly to strengthen Georgia's human trafficking law by enhancing the penalties under the state's criminal statute.

## 64.

Northbrook knew or should have known that, in 2013, AG Olens announced

a statewide campaign, "Georgia's Not Buying It," to combat child sex trafficking. As part of the campaign, AG Olens' office "collaborated with partners to conduct trainings and increase awareness," which included "multiple trainings for the hotel industry."[15]

65.

Northbrook knew or should have known that, on September 15, 2013, the Georgia legislature passed O.C.G.A. § 16-5-47 requiring hotels to post sex trafficking notices "in each public restroom for the business or establishment and either in a conspicuous place near the public entrance of the business or establishment or in another conspicuous location in clear view of the public and employees where similar notices are customarily posted."  The contents of the notice are prescribed by statute but must "provide information giving individuals a method to contact the National Human Trafficking Hotline and the Statewide Georgia Hotline for Domestic Minor Trafficking."  Failure to comply with O.C.G.A. § 16-5-47 is a misdemeanor.

66.

Northbrook knew or should have known that, in 2016, AG Olens announced

---

[15]   https://law.georgia.gov/press-releases/2013-03-18/attorney-general-olens-law-enforcement-announce-campaign-fight-sex (last visited Nov. 15, 2020).

a statewide campaign to combat child sex trafficking entitled, "Unmasked." The campaign featured a public-service announcement, which played on various TV and radio stations.[16]

67.

Northbrook knew or should have known that Atlanta was a national hub of sex trafficking and that the crime was prevalent in the city, including at the United Inn. According to a well-publicized study commissioned by the U.S. Department of Justice, Atlanta had one of, if not the, largest illegal sex trafficking economies in the country. In 2007, Atlanta's sex trafficking economy was worth $290 million annually, and traffickers reported average *weekly* earnings of roughly $33,000.[17] Over the last two decades, sex trafficking has generated billions of dollars in illicit profits in metro Atlanta alone. Northbrook has received and retained some of those

---

[16]   https://law.georgia.gov/press-releases/2016-04-26/attorney-general-sam-olens-announces-statewide-campaign-combat-child-sex (last visited Nov. 15, 2020).

[17] *See* Christian Boone, *Study: Atlanta's Sex Trade Highly Profitable*, Atlanta Journal-Constitution, (March 13, 2014) https://www.ajc.com/news/crime--law/study-atlanta-sex-trade-highly-profitable/GiuU5vZdoUo5vdUYSaOBNM/ (last visited Oct. 21, 2020); *see also* Meredith Dank, et.al, *Estimating the Size and Structure of the Underground Commercial Sex Economy in Eight Major US Cities*, Urban Institute, (March 12, 2014), 30-32, *available at* https://www.urban.org/research/publication/estimating-size-and-structure-underground-commercial-sex-economy-eight-major-us-cities (last visited Oct. 21, 2020).

illicit profits through renting hotel rooms used for the trafficking of Plaintiff and other minors.

68.

Northbrook knew or should have known that in 2018 the National Human Trafficking Hotline ranked Georgia fourth among states in human trafficking.[18]

69.

Northbrook knew or should have known of the Atlanta area's well-publicized reputation as an "epicenter for human trafficking, and particularly child sex trafficking,"[19] and as "the number one city for child sex trafficking."[20]

70.

Northbrook knew or should have known that sex trafficking is particularly pervasive in DeKalb County, where the United Inn is located.   Northbrook knew or should have known that in the year before Plaintiff was trafficked as a minor in

---

[18] Anna Varela, *Human Trafficking Ensnares More Than Half of Metro Atlanta's Homeless Youth, Georgia State Study Shows*, Georgia State University, (Oct. 21, 2019) https://news.gsu.edu/2019/10/21/homeless-youth-trafficking/.

[19] Sally Yates, Remarks at Justice Department Event Marking National Slavery and Human Trafficking Prevention Month, (Jan. 29, 2015), *available at* https://www.justice.gov/opa/speech/acting-deputy-attorney-general-sally-quillian-yates-delivers-remarks-justice-department (last visited Nov. 5, 2020).

[20] *Id.*

DeKalb County, the County police had the tragic but commendable distinction of rescuing more sex trafficking victims than any other unit in Georgia.[21]

## COUNT I
## STATUTORY LIABILITY
## 18 U.S.C. § 1595

71.

Plaintiff incorporates Paragraphs 1 through 70 as if fully restated herein verbatim.

72.

In violation of the TVPRA, 18 U.S.C. § 1595(a), Northbrook knowingly benefitted from participation in a venture that Northbrook knew or should have known engaged in acts in violation of the TVPRA.

73.

Northbrook knowingly benefitted from Plaintiff's sex trafficking by receiving a percentage of the revenue generated by the operation of the United Inn, including a percentage of the revenue generated from the rate charged and paid for the rooms

---

[21] Joshua Sharpe, *Report: DeKalb Cops Rescue the Most Sex Trafficking Victims in Georgia*, Atlanta Journal-Constitution, May 18, 2017 https://www.ajc.com/news/local/report-dekalb-cops-rescue-the-most-sex-trafficking-victims-georgia/Lg6rXccQPCcqTITunbEW0M/ (last visited Nov. 5, 2020).

in which Plaintiff was trafficked.

74.

Northbrook participated in a sex trafficking venture by providing to Plaintiff's traffickers the necessary venue for Plaintiff's minor sex trafficking.  In the course of this venture, multiple men paid to have sex with Plaintiff G.W. at the United Inn. For a fee, Northbrook provided the crime scene, a room at the United Inn, where Plaintiff was sold for sex.

75.

The venture in which Northbrook participated was in or affecting interstate commerce.

76.

Northbrook knew or should have known the venture engaged in acts in violation of the TVPRA because Northbrook, its employees, agents, and representatives, had the opportunity to observe Plaintiff, a minor, at the hotel, with and without her trafficker, and with another minor sex trafficking victim.  Further, Northbrook, its employees, agents, and representatives, had the opportunity to observe the signs of minor sex trafficking exhibited by Plaintiff, her traffickers, and the other victim, the room/s in which she was trafficked, and the frequent traffic of adult male buyers to the minor G.W.'s room/s.

77.

Northbrook knew or should have known the venture engaged in acts in violation of the TVPRA because Northbrook, its employees, agents, and representatives, knew or should have known of other minor sex trafficking and sex crimes at the hotel before Plaintiff was trafficked for sex at the United Inn.

78.

Northbrook is directly and vicariously liable under § 1595(a) for the actions of its employees, agents, and representatives.

79.

Plaintiff has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Northbrook's participation in this sex trafficking venture.

80.

Northbrook is liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

81.

Northbrook is jointly and severally liable for damages arising from the indivisible injuries they caused Plaintiff, whose damages were proximately caused

by the acts discussed in this count.

## COUNT II
## NEGLIGENCE ALLEGATIONS

82.

Plaintiff incorporates paragraphs 1 through 81 as if fully set forth herein.

83.

At all relevant times, Northbrook controlled the operation and management of the United Inn.

84.

At all relevant times, Northbrook owed a duty to invitees to the United Inn, including Plaintiff, to exercise ordinary care in keeping the premises and approaches of United Inn safe from criminal activity, especially minor sex trafficking. Northbrook also voluntarily undertook actions that created additional duties to provide adequate safety and security at the United Inn.

85.

Northbrook breached its duty to Plaintiff and failed to act as similarly situated businesses would in like circumstances by failing to exercise even ordinary care to keep the premises and approaches of United Inn safe and by negligently permitting criminal activity, especially minor sex trafficking, to exist and flourish at the United Inn.

86.

Northbrook knew or should have known the steps to take to prevent the United Inn from being used as a venue for Plaintiffs' minor sex trafficking.  As stated in paragraph 60: "The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity… From check-in to check-out there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property… With proper training, a front desk agent or a housekeeper can notice that something is not right and respond."[22]

87.

Northbrook knew or should have known ECPAT's Code, yet negligently failed to implement appropriate steps to prevent child sex trafficking at the United Inn, such as:

a)   establishing corporate policies and procedures against sexual exploitation of children;

b)   training employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;

---

[22] https://www.ecpatusa.org/hotel-training (last visited Nov. 15, 2020) (emphasis added).

38

c)      including a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

d)      providing information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

e)      supporting, collaborating, and engaging stakeholders in the prevention of sexual exploitation of children; and

f)      reporting annually on the company's implementation of Code-related activities.

88.

Northbrook knew or should have known of the Department of Homeland Security ("DHS") guidelines on prevention of sex trafficking.  Yet Northbrook negligently failed to implement appropriate steps, such as training its employees, managers, and agents on those guidelines and on warning signs that indicate the presence of sex trafficking on the hotel premises, including:

a)      persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b)      persons who lack freedom of movement or are constantly monitored;

c)      persons who have no control over or possession of money or ID;

d)      persons who dress inappropriately for their age or have lower quality

clothing compared to others in their party;

e)     requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

f)     the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g)     extended stay with few or no personal possessions in the room;

h)     excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

i)     the same person reserves multiple rooms;

j)     a room is rented hourly, less than a day, or for an atypical extended stay;

k)     attempts to sell items to or beg from patrons or staff;

l)     cars in the parking lot regularly parked backward, so the license plates are not visible;

m)     loitering and solicitation of male patrons;

n)     waiting at a table or bar and picked up by a male (trafficker or customer);

o)     persons asking staff or patrons for food or money; and

p)     persons taking cash or receipts left on tables.

89.

ECPAT's Code and DHS' guidelines were only two of the many authorities Northbrook could and should have relied upon to address and combat sex trafficking at the United Inn. For example, the American Hotel and Lodging Association links to a "free" ECPAT training that is only "30-minute[s]" and easily available "online."[23] Northbrook knew or should have known it had access to such free training materials for its employees, managers, and agents.

90.

Despite what Northbrook knew or should have known about illegal activity at the United Inn, including multiple reports and arrests related to sex trafficking and other sex crimes prior to Plaintiff's minor sex trafficking at the United Inn, Northbrook negligently failed to implement reasonable, appropriate, and adequate measures to protect its invitees, including Plaintiff, from becoming a victim of sex trafficking at the United Inn. To the contrary, Northbrook continued its venture to profit from the operation of the United Inn and the minor sex trafficking and other sex crimes incorporated into the United Inn's operations.

---

[23] https://www.ahla.com/issues/human-trafficking (last visited Nov. 15, 2020) (emphasis added).

91.

Northbrook negligently failed to implement policies and procedures to prevent, identify, and deter sex trafficking at the United Inn and to ensure it was not profiting from sex trafficking, as required by state and federal law.

92.

Prior to and including the time when Plaintiff was trafficked at the United Inn, Northbrook negligently maintained, inspected, secured, patrolled, managed, and operated the United Inn.  Northbrook had knowledge, both actual and constructive, of the need to properly maintain, secure, inspect, patrol, manage, and operate the premises, but negligently failed to exercise ordinary care, thereby creating an unreasonable risk of injury to invitees, including Plaintiff.

93.

Northbrook had actual and constructive knowledge of criminal activity, including sex trafficking and other sex crimes, at and around the United Inn prior to Plaintiff's minor sex trafficking.

94.

Northbrook had actual and constructive knowledge of the dangerous and hazardous conditions existing at the United Inn due to the knowledge of its

employees, managers, and agents and due to the prior criminal activity and dangers associated with the property and surrounding high crime area.

95.

Plaintiff's minor sex trafficking was foreseeable to Northbrook because it knew or should have known about the actual events with Plaintiff at the United Inn, as well as the history of sex trafficking and other sex crimes at the United Inn and other hotels in the area and the history of criminal activity at and around the United Inn and in the surrounding high-crime area.

96.

Northbrook breached the duty it owed to Plaintiff by failing to exercise ordinary care to keep its premises safe and negligently permitting criminal activity, especially minor sex trafficking, to exist and remain at the United Inn.

97.

Northbrook knew of, or in the exercise of ordinary care, should have known of the dangerous and hazardous conditions existing on the premises, and the failure to maintain, inspect, secure, patrol, and manage the premises, and that these conditions were likely to, and did, result in sex trafficking and other sex crimes at the United Inn and again to Plaintiff.

98.

Despite its actual and constructive knowledge of criminal activity, including minor sex trafficking, Northbrook negligently failed to protect invitees, including Plaintiff, from the risks of minor sex trafficking and other violent crimes.

99.

Despite its actual and constructive knowledge of criminal activity, including minor sex trafficking, Northbrook negligently failed to warn Plaintiff and other invitees of the dangers at and around the United Inn.

100.

Despite its actual and constructive knowledge of criminal activity, including minor sex trafficking, Northbrook negligently failed to maintain adequate security devices and personnel to ensure proper use of the property, thereby causing an unreasonable risk of injury to invitees, including Plaintiff.

101.

Despite its actual and constructive knowledge of criminal activity, including minor sex trafficking, Northbrook negligently failed to maintain policies, procedures, or systems for investigating, reporting, and warning of minor sex trafficking and other crimes, and negligently maintained the United Inn.

102.

Despite its actual and constructive knowledge of criminal activity, including minor sex trafficking, Northbrook failed to take appropriate action to remedy or reduce the danger to its invitees and allowed the dangerous environment at the United Inn to worsen and continue to exist unabated, thereby creating a nuisance.

103.

Because Northbrook had knowledge of, or in the exercise of reasonable care should have had knowledge of the dangerous environment at and around the subject premises, Northbrook is liable for the negligent supervision, hiring, training, and retention of its employees, managers, and agents and the entrustment of said property to its employees, managers, and agents. Said negligence proximately caused the damages and injuries to Plaintiff.

104.

Northbrook negligently represented to invitees that the United Inn was properly maintained and that the property was safe.

105.

Northbrook was negligent and said negligence proximately caused Plaintiff's injuries in the following ways, to-wit:

a)      Negligently violating O.C.G.A. § 51-3-1 by failing to use ordinary care

to keep the premises safe;

b)   Negligently failing to keep the premises in a state of good repair;

c)   Negligently violating O.C.G.A. § 41-1-1 by creating and maintaining a nuisance;

d)   Negligently failing to provide appropriate and effective security personnel during Plaintiffs' minor sex trafficking at the hotel;

e)   Negligently failing to properly inspect and maintain the premises;

f)   Negligently failing to properly train and supervise its employees regarding sex trafficking and other sex crimes at the hotel;

g)   Negligently failing to properly retain, hire, train, and supervise said employees;

h)   Negligently failing to ensure business policies, systems, and security were adequately followed and implemented;

i)   Negligently failing to respond to online reviews and publicly available information;

j)   Negligently failing to prevent loitering and trespassing;

k)   Negligently failing to remove loiterers and trespassers;

l)   Negligently failing to inspect, patrol, or appropriately monitor the property;

m) Negligently failing to provide adequate lighting and employ other available security measures, personnel, and devices, such as controlled access, adequate signage, cameras, patrols, inspections, physical, and other landscaping adjustments, and other measures available;

n) Negligently failing to remediate a long history of crime at the United Inn and the area nearby;

o) Negligently failing to warn invitees of known hazards at the property; and

p) Negligently representing to invitees that the property was safe.

106.

Each of the foregoing acts and omissions constitute an independent act of negligence on the part of Northbrook and one or more or all above stated acts were the proximate causes of the injuries sustained by Plaintiff.

107.

Northbrook is liable for Plaintiff's injuries sustained, pain and suffering, the expenses of treatment, and all other elements of damages allowed under the laws of the State of Georgia, including all special, compensatory, incidental, consequential, economic, and punitive damages.

108.

Northbrook is liable for the minor sex trafficking of Plaintiff.

109.

Northbrook's negligence discussed in this count was a cause in fact and a proximate cause of Plaintiff's substantial physical, emotional, and psychological harm and other damages.

## DAMAGES

110.

Plaintiff incorporates Paragraphs 1 through 109 as if fully set forth herein.

111.

As a proximate and foreseeable result of Northbrook's negligence and violation of the TVPRA, Plaintiff sustained personal injuries, mental and emotional pain and suffering, mental anguish, and other damages as will be proven at trial. Plaintiff brings each and every claim permissible under Georgia law against Northbrook for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under Georgia and federal law. Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under

Georgia and federal law, including, but not limited to:

a)    Personal injuries;

b)    Past, present, and future conscious pain and suffering;

c)    Loss of enjoyment of life;

d)    Medical expenses;

e)    Mental anguish and emotional distress;

f)    Loss of past, present, and future wages;

g)    Incidental expenses;

h)    All special, compensatory, economic, punitive, and other damages

permissible under Georgia law; and

i)    Consequential damages to be proven at trial.

## 112.

Plaintiff is entitled to an award of punitive damages without limitation or cap because the actions of Northbrook and its employees, agents, and representatives were willful and wanton and showed an entire want of care, which raises the presumption of a conscious indifference to consequences.

## 113.

Northbrook's actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiff undue expense. Thus, Plaintiff is entitled to

recover her necessary expenses of litigation, including an award of reasonable attorneys' fees and expenses required by this action. (O.C.G.A. §§ 13-6-11, 9-11-68 and 9-15-14, and 18 U.S.C. § 1595(a)). Furthermore, Plaintiff is entitled to all expenses of litigation and attorneys' fees pursuant to all other Georgia and federal statutory and common laws.

WHEREFORE, Plaintiff prays for a judgment to be awarded to them and against Northbrook for the following:

a)   Process issue as provided by law;

b)   Plaintiff be awarded actual damages in amounts to be shown at trial from Northbrook;

c)   Plaintiff be awarded all general, special, compensatory, economic, consequential, punitive and other allowable damages from Northbrook in accordance with the enlightened conscience of an impartial jury;

d)   Plaintiff be awarded a trial by jury; and

e)   Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

This 28th day of December, 2020.

/s/ David H. Bouchard
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
W. Carl Lietz, III
carl@finchmccranie.com
Georgia Bar No. 452080
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
225 Peachtree Street NE
1700 South Tower
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

/s/ Patrick J. McDonough
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

Attorneys for Plaintiff

51

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing **Complaint** has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
W. Carl Lietz, III
carl@finchmccranie.com
Georgia Bar No. 452080
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
225 Peachtree Street NE
1700 South Tower
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

Attorneys for Plaintiff

JS44 (Rev. 10/2020 NDGA)                      **CIVIL COVER SHEET**

The JS44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket record.  (SEE INSTRUCTIONS ATTACHED)

## I. (a) PLAINTIFF(S)

G.W.

## DEFENDANT(S)

Northbrook Industries, Inc., d/b/a United Inn and Suites

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED
PLAINTIFF_____Clarke_____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED
DEFENDANT_____
(IN  U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF  LAND
INVOLVED

## (c) ATTORNEYS (FIRM NAME, ADDRESS, TELEPHONE NUMBER, AND E-MAIL ADDRESS)

Finch McCranie, LLP c/o David Bouchard, Esq.
225 Peachtree Street NE, 1700 South Tower
Atlanta, GA 30303
(404) 658-9070 / david@finchmccranie.com

## ATTORNEYS  (IF KNOWN)

## II.  BASIS OF JURISDICTION
(PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. GOVERNMENT
PLAINTIFF

☐ 2 U.S. GOVERNMENT
DEFENDANT

☑ 3 FEDERAL QUESTION
(U.S. GOVERNMENT NOT A PARTY)

☐ 4 DIVERSITY
(INDICATE CITIZENSHIP OF PARTIES
IN ITEM III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY)

| PLF | DEF | | PLF | DEF | |
|---|---|---|---|---|---|
| ☐1 | ☐1 | CITIZEN OF THIS STATE | ☐4 | ☐4 | INCORPORATED OR PRINCIPAL PLACE OF BUSINESS IN THIS STATE |
| ☐2 | ☐2 | CITIZEN OF ANOTHER STATE | ☐5 | ☐5 | INCORPORATED AND PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE |
| ☐3 | ☐3 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | ☐6 | ☐6 | FOREIGN NATION |

## IV. ORIGIN (PLACE AN "X "IN ONE BOX ONLY)

☑ 1 ORIGINAL
PROCEEDING

☐ 2 REMOVED FROM
STATE COURT

☐ 3 REMANDED FROM
APPELLATE COURT

☐ 4 REINSTATED OR
REOPENED

☐ 5 TRANSFERRED FROM
ANOTHER DISTRICT
(Specify District)

☐ 6 MULTIDISTRICT
LITIGATION -
TRANSFER

☐ 7 APPEAL TO DISTRICT JUDGE
FROM MAGISTRATE JUDGE
JUDGMENT

☐ 8 MULTIDISTRICT
LITIGATION -
DIRECT FILE

## V. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE - DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

This case concerns sex trafficking of a child.  This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under 18 U.S.C. § 1595(a), and pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims form part of the same case or controversy as her federal law claims.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims

asserted in this action occurred in DeKalb County, Georgia, within the Northern District of Georgia, Atlanta Division.

**(IF COMPLEX, CHECK REASON BELOW)**

☐ 1. Unusually large number of parties.

☐ 2. Unusually large number of claims or defenses.

☐ 3. Factual issues are exceptionally complex

☐ 4. Greater than normal volume of evidence.

☐ 5. Extended discovery period is needed.

☐ 6. Problems locating or preserving evidence

☐ 7. Pending parallel investigations or actions by government.

☐ 8. Multiple use of experts.

☐ 9.  Need for discovery outside United States boundaries.

☐ 0.  Existence of highly technical issues and proof.

---

**CONTINUED ON REVERSE**

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT  $_____   APPLYING IFP _____   MAG. JUDGE (IFP) _____

JUDGE _____   MAG. JUDGE _____   NATURE OF SUIT _____   CAUSE OF ACTION _____
         *(Referral)*

**VI. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT - "0" MONTHS DISCOVERY TRACK**
- ☐ 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- ☐ 152 RECOVERY OF DEFAULTED STUDENT LOANS (Excl. Veterans)
- ☐ 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS

**CONTRACT - "4" MONTHS DISCOVERY TRACK**
- ☐ 110 INSURANCE
- ☐ 120 MARINE
- ☐ 130 MILLER ACT
- ☐ 140 NEGOTIABLE INSTRUMENT
- ☐ 151 MEDICARE ACT
- ☐ 160 STOCKHOLDERS' SUITS
- ☐ 190 OTHER CONTRACT
- ☐ 195 CONTRACT PRODUCT LIABILITY
- ☐ 196 FRANCHISE

**REAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- ☐ 210 LAND CONDEMNATION
- ☐ 220 FORECLOSURE
- ☐ 230 RENT LEASE & EJECTMENT
- ☐ 240 TORTS TO LAND
- ☐ 245 TORT PRODUCT LIABILITY
- ☐ 290 ALL OTHER REAL PROPERTY

**TORTS - PERSONAL INJURY - "4" MONTHS DISCOVERY TRACK**
- ☐ 310 AIRPLANE
- ☐ 315 AIRPLANE PRODUCT LIABILITY
- ☐ 320 ASSAULT, LIBEL & SLANDER
- ☐ 330 FEDERAL EMPLOYERS' LIABILITY
- ☐ 340 MARINE
- ☐ 345 MARINE PRODUCT LIABILITY
- ☐ 350 MOTOR VEHICLE
- ☐ 355 MOTOR VEHICLE PRODUCT LIABILITY
- ☐ 360 OTHER PERSONAL INJURY
- ☐ 362 PERSONAL INJURY - MEDICAL MALPRACTICE
- ☐ 365 PERSONAL INJURY - PRODUCT LIABILITY
- ☐ 367 PERSONAL INJURY - HEALTH CARE/ PHARMACEUTICAL PRODUCT LIABILITY
- ☐ 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**TORTS - PERSONAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- ☐ 370 OTHER FRAUD
- ☐ 371 TRUTH IN LENDING
- ☐ 380 OTHER PERSONAL PROPERTY DAMAGE
- ☐ 385 PROPERTY DAMAGE PRODUCT LIABILITY

**BANKRUPTCY - "0" MONTHS DISCOVERY TRACK**
- ☐ 422 APPEAL 28 USC 158
- ☐ 423 WITHDRAWAL 28 USC 157

**CIVIL RIGHTS - "4" MONTHS DISCOVERY TRACK**
- ☐ 440 OTHER CIVIL RIGHTS
- ☐ 441 VOTING
- ☐ 442 EMPLOYMENT
- ☐ 443 HOUSING/ ACCOMMODATIONS
- ☐ 445 AMERICANS with DISABILITIES - Employment
- ☐ 446 AMERICANS with DISABILITIES - Other
- ☐ 448 EDUCATION

**IMMIGRATION - "0" MONTHS DISCOVERY TRACK**
- ☐ 462 NATURALIZATION APPLICATION
- ☐ 465 OTHER IMMIGRATION ACTIONS

**PRISONER PETITIONS - "0" MONTHS DISCOVERY TRACK**
- ☐ 463 HABEAS CORPUS- Alien Detainee
- ☐ 510 MOTIONS TO VACATE SENTENCE
- ☐ 530 HABEAS CORPUS
- ☐ 535 HABEAS CORPUS DEATH PENALTY
- ☐ 540 MANDAMUS & OTHER
- ☐ 550 CIVIL RIGHTS - Filed Pro se
- ☐ 555 PRISON CONDITION(S) - Filed Pro se
- ☐ 560 CIVIL DETAINEE: CONDITIONS OF CONFINEMENT

**PRISONER PETITIONS - "4" MONTHS DISCOVERY TRACK**
- ☐ 550 CIVIL RIGHTS - Filed by Counsel
- ☐ 555 PRISON CONDITION(S) - Filed by Counsel

**FORFEITURE/PENALTY - "4" MONTHS DISCOVERY TRACK**
- ☐ 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- ☐ 690 OTHER

**LABOR - "4" MONTHS DISCOVERY TRACK**
- ☐ 710 FAIR LABOR STANDARDS ACT
- ☐ 720 LABOR/MGMT. RELATIONS
- ☐ 740 RAILWAY LABOR ACT
- ☐ 751 FAMILY and MEDICAL LEAVE ACT
- ☐ 790 OTHER LABOR LITIGATION
- ☐ 791 EMPL. RET. INC. SECURITY ACT

**PROPERTY RIGHTS - "4" MONTHS DISCOVERY TRACK**
- ☐ 820 COPYRIGHTS
- ☐ 840 TRADEMARK
- ☐ 880 DEFEND TRADE SECRETS ACT OF 2016 (DTSA)

**PROPERTY RIGHTS - "8" MONTHS DISCOVERY TRACK**
- ☐ 830 PATENT
- ☐ 835 PATENT-ABBREVIATED NEW DRUG APPLICATIONS (ANDA) - a/k/a Hatch-Waxman cases

**SOCIAL SECURITY - "0" MONTHS DISCOVERY TRACK**
- ☐ 861 HIA (1395ff)
- ☐ 862 BLACK LUNG (923)
- ☐ 863 DIWC (405(g))
- ☐ 863 DIWW (405(g))
- ☐ 864 SSID TITLE XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS - "4" MONTHS DISCOVERY TRACK**
- ☐ 870 TAXES (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - THIRD PARTY 26 USC 7609

**OTHER STATUTES - "4" MONTHS DISCOVERY TRACK**
- ☐ 375 FALSE CLAIMS ACT
- ☐ 376 Qui Tam 31 USC 3729(a)
- ☐ 400 STATE REAPPORTIONMENT
- ☐ 430 BANKS AND BANKING
- ☐ 450 COMMERCE/ICC RATES/ETC.
- ☐ 460 DEPORTATION
- ☐ 470 RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
- ☐ 480 CONSUMER CREDIT
- ☐ 485 TELEPHONE CONSUMER PROTECTION ACT
- ☐ 490 CABLE/SATELLITE TV
- ☐ 890 OTHER STATUTORY ACTIONS
- ☐ 891 AGRICULTURAL ACTS
- ☐ 893 ENVIRONMENTAL MATTERS
- ☐ 895 FREEDOM OF INFORMATION ACT 899
- ☐ 899 ADMINISTRATIVE PROCEDURES ACT / REVIEW OR APPEAL OF AGENCY DECISION
- ☐ 950 CONSTITUTIONALITY OF STATE STATUTES

**OTHER STATUTES - "8" MONTHS DISCOVERY TRACK**
- ☐ 410 ANTITRUST
- ☐ 850 SECURITIES / COMMODITIES / EXCHANGE

**OTHER STATUTES - "0" MONTHS DISCOVERY TRACK**
- ☐ 896 ARBITRATION (Confirm / Vacate / Order / Modify)

**\* PLEASE NOTE DISCOVERY TRACK FOR EACH CASE TYPE. SEE LOCAL RULE 26.3**

---

**VII. REQUESTED IN COMPLAINT:**
- ☐ CHECK IF CLASS ACTION UNDER F.R.Civ.P. 23     DEMAND $_____

JURY DEMAND ☑ YES ☐ NO  (CHECK YES ONLY IF DEMANDED IN COMPLAINT)

---

**VIII. RELATED/REFILED CASE(S) IF ANY**

JUDGE_____   DOCKET NO._____

CIVIL CASES ARE DEEMED RELATED IF THE PENDING CASE INVOLVES:  (CHECK APPROPRIATE BOX)
- ☐ 1.  PROPERTY INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- ☑ 2.  SAME ISSUE OF FACT OR ARISES OUT OF THE SAME EVENT OR TRANSACTION INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- ☐ 3.  VALIDITY OR INFRINGEMENT OF THE SAME PATENT, COPYRIGHT OR TRADEMARK INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- ☐ 4.  APPEALS ARISING OUT OF THE SAME BANKRUPTCY CASE AND ANY CASE RELATED THERETO WHICH HAVE BEEN DECIDED BY THE SAME BANKRUPTCY JUDGE.
- ☐ 5.  REPETITIVE CASES FILED BY PRO SE LITIGANTS.
- ☑ 6.  COMPANION OR RELATED CASE TO CASE(S) BEING SIMULTANEOUSLY FILED (INCLUDE ABBREVIATED STYLE OF OTHER CASE(S)):

    1) A.G. vs. Northbrook Industries, Inc., d/b/a United Inn and Suites
    2) J.G. vs. Northbrook Industries, Inc., d/b/a United Inn and Suites

- ☐ 7.  EITHER SAME OR ALL OF THE PARTIES AND ISSUES IN THIS CASE WERE PREVIOUSLY INVOLVED IN CASE NO.                    , WHICH WAS DISMISSED. This case ☐ IS  ☐ IS NOT (check one box) SUBSTANTIALLY THE SAME CASE.

---

_(signature)_                                          12/28/2020

SIGNATURE OF ATTORNEY OF RECORD                          DATE

Doc. 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

G.W.,                                    :
                                         :
            Plaintiff,                   :
                                         :        CIVIL ACTION FILE
      vs.                                :
                                         :        NO. 1:20-cv-05232-SDG
NORTHBROOK INDUSTRIES,                   :
INC., D/B/A UNITED INN AND               :
SUITES,                                  :
                                         :
            Defendant.                   :

### PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED ANONYMOUSLY AND BRIEF IN SUPPORT THEREOF

Plaintiff G.W., by and through counsel, respectfully requests that this Court allow Plaintiff to bring this action anonymously and grant a protective order pursuant to Federal Rules of Civil Procedure 26(c) to ensure Defendant keeps Plaintiff's identity confidential throughout the pendency of the lawsuit and thereafter.

### Facts

In June and July 2017, Plaintiff G.W. was sex trafficked as a minor at the United Inn & Suites, located at 4649 Memorial Drive, Decatur, Georgia 30032 (the "United Inn").

Plaintiff's case against United Inn will involve intimate and graphic details about her traumatic experience as a minor victim of sex trafficking. Given the sensitive nature of such information, and that Plaintiff was a child during the events in question, it is appropriate for her to proceed anonymously. Further, while Plaintiff's trafficker has pled guilty to sex trafficking Plaintiff in violation of federal criminal law, Plaintiff has a legitimate fear that associates of her former trafficker may seek to retaliate against her or her family. The current activities of those associates, legal or illegal, are unknown. Plaintiff suspects they are armed and dangerous.

## ARGUMENT AND CITATION OF AUTHORITY

Generally, parties to a lawsuit must identify themselves in their respective pleadings pursuant to Federal Rule of Civil Procedure 10(a). *Roe v. Aware Women Center for Choice, Inc*., 253 F. 3d 678, 685 (11th Cir. 2001). However, "there are some circumstances in which a plaintiff may proceed anonymously." *Doe v. Barrow County, Ga.*, 219 F.R.D. 189, 191 (N.D. Ga. 2003).

In determining whether a plaintiff may proceed anonymously, the Eleventh Circuit has held that the ultimate test is "whether the plaintiff has a substantial privacy right which outweighs the customary and constitutionally embedded presumption of openness in judicial proceedings." *Doe v. Frank*, 951 F. 2d 320, 323

(11th Cir. 1992). In making this determination, courts first consider a three-factor test, taking into consideration whether the case involves: "(1) plaintiffs challenging governmental activity; (2) plaintiffs required to disclose information of the utmost intimacy; and (3) plaintiffs compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution." *Id*. This case implicates the second factor, as the disclosure of G.W.'s identity would disclose information of "the utmost intimacy"—specifically, G.W.'s status as a victim of child sex trafficking.

The three-factor test is only the first step in determining whether to let a plaintiff proceed anonymously. In addition, the Eleventh Circuit has identified other factors, including "whether the plaintiffs are minors, whether they are threatened with violence or physical harm by proceeding in their own names, and whether their anonymity poses a unique threat of fundamental unfairness to the defendant." *Plaintiff B v. Francis,* 631 F. 3d 1310, 1316 (11th Cir. 2011). Because the totality of the circumstances favors G.W.'s anonymity, the Court should grant Plaintiff's Motion.

## I.   Disclosure of G.W.'s identity would reveal information that is of "the utmost intimacy."

G.W. has a substantial privacy right in guarding the sensitive and highly personal information she must disclose during this lawsuit. "Where the issues

involved are matters of a sensitive and highly personal nature, the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a very private matter." *Plaintiff B v. Francis,* 631 F. 3d 1310, 1318 (11th Cir. 2011). In *Plaintiff B*, the Eleventh Circuit held that descriptions of the plaintiffs while nude and engaging in explicit sexual conduct "could not be of a more sensitive and highly personal nature," and thus the district court should have allowed the plaintiffs to proceed anonymously. *Id*. Similarly, the issues in this case involve graphic descriptions of G.W. engaged in sexual activity while she was a minor victim of sex trafficking. Thus, she should be allowed to proceed anonymously.

Additionally, the Eleventh Circuit has considered whether a plaintiff will be required to admit that she engaged in prohibited conduct as a factor in granting a plaintiff's request to proceed anonymously. *Doe v. Frank*, 951 F. 2d at 324. In this case, G.W. will be required to admit that she engaged in commercial sex acts. Accordingly, the Court should weigh this factor in favor of granting Plaintiff's motion.

## II.   **G.W.'s fear of reprisal.**

Another factor considered by in the Eleventh Circuit is whether a plaintiff may expect "extensive harassment and perhaps even violent reprisals if their identities are disclosed." *Doe v. Stegall*, 653 F.2d at 186 (5th Cir. 1981). In *Doe v. Barrow*

*County, Ga.*, the court considered the plaintiff's statements in his affidavit that he feared community retaliation for filing his lawsuit, which dealt with a challenge to a display of the Ten Commandments. 219 F.R.D. at 194. G.W.'s fear that she may face retaliation from her sex trafficker and/or his associates is much less speculative. G.W. has already suffered substantial psychological harm at the hands of her sex trafficker. She is fearful that proceeding with this litigation without the protection of anonymity may expose her to retaliation, now or in the future. That Plaintiff's trafficker and/or his associates know where at least some of Plaintiff's family lives compounds her concerns. The threat of "violent reprisals" should weigh in favor of this Court's grant of Plaintiff's motion.

## III.   The public interest in revealing G.W.'s identity is weak.

As the *Stegall* Court said, "[t]he equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical," and "[p]arty anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them." 653 F. 2d 180 at 185. Here, the public interest in knowing G.W.'s identity furthers no significant purpose. And G.W.'s desire to remain anonymous and not to be forced to publicly divulge graphic details about her experience as a child victim of sex trafficking is compelling. Not only will G.W. herself be deterred from pursuing the present

litigation if she is forced to reveal her identity, but such a decision will also have a chilling effect on other victims' willingness to come forward with a lawsuit.

## IV.   G.W.'s anonymity does not pose a unique threat of fundamental unfairness to Defendant.

In *Plaintiff B*, the Eleventh Circuit found the defendants were not prejudiced by the plaintiffs' anonymity where the defendants were aware of the plaintiffs' identities and were not barred from conducting a full range of discovery in building a defense for trial. 631 F.3d at 1319.  Likewise, G.W. will disclose her identity to Defendant and fully participate in discovery once an appropriate protective order is in place to protect G.W. and limit the dissemination of sensitive and highly intimate evidence in G.W.'s possession.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should GRANT Plaintiff's Motion for Protective Order and Leave to Proceed Anonymously, and should further order that all materials filed in this action, all judgments, and any other documents relating to this action shall refer to Plaintiff as G.W. and members of her immediate family by pseudonymous initials, without additional identifying information.

A proposed Order is submitted herewith for the Court's consideration.

This 29th day of December, 2020

Respectfully Submitted,

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
W. Carl Lietz, III
carl@finchmccranie.com
Georgia Bar No. 452080
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
225 Peachtree Street NE
1700 South Tower
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*/s/ Patrick J. McDonough*
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

Attorneys for Plaintiff

7

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing ***Plaintiff's Motion for Protective Order and Leave to Proceed Anonymously and Brief in Support Thereof*** has been prepared with one of the following font and point selections approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
W. Carl Lietz, III
carl@finchmccranie.com
Georgia Bar No. 452080
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
225 Peachtree Street NE
1700 South Tower
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

Attorneys for Plaintiff

8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| G.W., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE |
| vs. | : | |
| | : | NO. 1:20-cv-05232-SDG |
| NORTHBROOK INDUSTRIES, | : | |
| INC., D/B/A UNITED INN AND | : | |
| SUITES, | : | |
| | : | |
| Defendant. | | |

**(PROPOSED) ORDER GRANTING PLAINTIFF'S MOTION FOR
PROTECTIVE ORDER AND LEAVE TO PROCEED ANONYMOUSLY**

This case comes before the Court on Plaintiff G.W.'s Motion for Protective

Order and Leave to Proceed Anonymously. The Court finds that Plaintiff's privacy

and safety interests outweigh the public's interest in knowing Plaintiff's identity.

Therefore, Plaintiff's motion is GRANTED. The Court hereby ORDERS that

all material, documents, pleadings, exhibits and evidence of any kind filed in this

case shall refer to Plaintiff as G.W. and her immediate family members (siblings and

parents) by pseudonymous initials with no other additional identifying information.

IT IS SO ORDERED this _____ day of _____, 2020.

_____
UNITED STATES DISTRICT COURT JUDGE

Doc. 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

G.W.,                                    :
                                         :
          Plaintiff,                     :
                                         :        CIVIL ACTION FILE
     vs.                                 :
                                         :        NO. 1:20-cv-05232-SDG
NORTHBROOK INDUSTRIES,                   :
INC., D/B/A UNITED INN AND               :
SUITES,                                  :
                                         :
          Defendant.                     :

## ORDER GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED ANONYMOUSLY

This case comes before the Court on Plaintiff G.W.'s Motion for Protective Order and Leave to Proceed Anonymously. The Court finds that Plaintiff's privacy and safety interests outweigh the public's interest in knowing Plaintiff's identity.

Therefore, Plaintiff's motion is GRANTED. The Court hereby ORDERS that all material, documents, pleadings, exhibits and evidence of any kind filed in this case shall refer to Plaintiff as G.W. and her immediate family members (siblings and parents) by pseudonymous initials with no other additional identifying information.

IT IS SO ORDERED this 31st day of December 2020.

STEVEN D. GRIMBERG
UNITED STATES DISTRICT COURT JUDGE

Doc. 16

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **G.W.,** | |
| **Plaintiff,** | **Civil Action File No. 1:20-CV-05232-JPB** |
| **v.** | |
| **NORTHBROOK INDUSTRIES, INC., d/b/a UNITED INN AND SUITES** | |
| **Defendants.** | |

### DEFENDANT NORTHBROOK INDUSTRIES, INC. D/B/A UNITED INN AND SUITES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND ALTERNATIVELY, DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT

COMES NOW, Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites ("United Inn"), by and through undersigned counsel, and respectfully moves this Court for entry of an order dismissing Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.[1]

Alternatively, United Inn respectfully moves this Court to strike certain paragraphs

---

[1] Defendant notes that it has concurrently filed a Motion to Stay under 18 U.S.C. § 1595(b)(1) because the criminal actions for Zaccheus Obie and Kikia Anderson are still pending.

of Plaintiff's Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

United Inn submits its Memorandum of Law in Support of its Motion to Dismiss, and alternatively, its Motion to Strike Portions of Plaintiff's Complaint, filed concurrently herewith. As set forth in the accompanying memorandum of law, United Inn's motion should be granted and Plaintiff's Complaint should be dismissed as against United Inn.

Respectfully submitted this 12th day of February, 2021.

**HALL BOOTH SMITH, P.C.**

*/s/ Don B. Brown*

_____

DON B. BROWN
Georgia Bar No. 496667
WILLIAM R. STORY
Georgia Bar No. 340477
*Attorneys for Defendant Northbrook Industries, Inc., d/b/a United Inn and Suites*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
404-954-5000 : 404-954-5020 (Fax)
dbrown@hallboothsmith.com
wstory@hallboothsmith.com

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing **Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites' Motion to Dismiss Plaintiff's Complaint and Alternatively, Defendant's Motion to Strike Portions of Plaintiff's Complaint** has been prepared with one of the following font and point selections approved by the Court in LR 5.1, NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted this 12th day of February, 2021.

**HALL BOOTH SMITH, P.C.**

*/s/ Don B. Brown*

_____

DON B. BROWN
Georgia Bar No. 496667
WILLIAM R. STORY
Georgia Bar No. 340477
*Attorneys for Defendant Northbrook Industries, Inc., d/b/a United Inn and Suites*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
404-954-5000 : 404-954-5020 (Fax)
dbrown@hallboothsmith.com
wstory@hallboothsmith.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 12th day of February, 2021 file the within foregoing **Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites' Motion to Dismiss Plaintiff's Complaint and Alternatively, Defendant's Motion to Strike Portions of Plaintiff's Complaint** via CM/ECF, which automatically sends an electronic copy of all counsel of records as follows:

Richard W. Hendrix
W. Carl Lietz, III
David H. Bouchard
FINCH McCRANIE, LLP
225 Peachtree Street NE
1700 South Tower
Atlanta, Georgia 30303
*Attorneys for Plaintiff G.W.*


Jonathan S. Tonge
Patrick J. McDonough
ANDERSEN, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard
Suite 4000
Duluth, Georgia 30097
*Attorneys for Plaintiff G.W.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| G.W.,<br><br>　　　**Plaintiff,**<br><br>v.<br><br>**NORTHBROOK INDUSTRIES, INC., d/b/a UNITED INN AND SUITES**<br><br>　　　**Defendants.** | **Civil Action File No. 1:20-CV-05232-JPB** |

---

**BRIEF IN SUPPORT OF DEFENDANT NORTHBROOK INDUSTRIES, INC. D/B/A UNITED INN AND SUITES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND ALTERNATIVELY, DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT**

---

COMES NOW, Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites ("United Inn"), by and through undersigned counsel, and pursuant to Rules 12(b), and (f) hereby brings its Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Strike.[1] In support thereof, United Inn states as follows:

---

[1] Defendant notes that it has concurrently filed a Motion to Stay under 18 U.S.C. § 1595(b)(1) because the criminal actions for Zaccheus Obie and Kikia Anderson are still pending.

**INTRODUCTION**

Plaintiff asserts claims against Defendant United Inn for allegedly violating the Trafficking Victims Protection Reauthorization Act ("TVPRA") and negligence. The TVPRA gives rise to civil liability only against those who *knowingly* benefit from participating in a sex-trafficking venture that the Defendant knew or should have known was trafficking the Plaintiff.

**STATEMENT OF PLAINTIFF'S ALLEGATIONS**

Plaintiff alleges she was trafficked at the United Inn in Decatur, Georgia from June – July of 2017 by Zaccheus Obie. (*See* Dkt. 1, at ¶ 17). Despite Zaccheus entering a guilty plea for trafficking plaintiff on November 6, 2019 in the United States District Court for the Northern District of Georgia, United Inn is the only named Defendant. (*See* Dkt. 1, at ¶ 8, n. 3). In or around June 2017, G.W. reached out to Zaccheus's older brother Quintavious Obie because she wanted to dance at a strip club and asked Quintavious to assist her in getting a job at a strip club.[2] (*See United States v.* Obie, Case No. 1:18-cr-00424-MLB-JKL (N.D. Ga., Mar. 26,

---

[2] Entering a guilty plea "constitutes an admission to all facts alleged in the indictment." *Herley Industries, Inc. v. Federal Ins. Companies, Inc.*, 2009 WL 2596072, *10 (E.D. Penn. Aug. 21, 2009).

2019), ECF No. 56, at p. 2).[3] Quintavious told G.W. that he knew someone who could "get them in the game" and gave G.W. the phone number for Zaccheus. *Id.* In or around June 2017, G.W. contacted Zaccheus and Zaccheus arranged for a person to pick up G.W. and drive her to Atlanta, Georgia to meet Zaccheus. *Id.* Zaccheus solicited customers on advertisements posted on Backpage.com, a classified advertisement website. *Id.* The Backpage.com advertisement for G.W. falsely stated that G.W. was 22 years old when, in fact, she was only 17 years old.[4] *Id.*

Plaintiff's Complaint contends that United Inn should have known about G.W.'s being sex trafficked because the hotel industry as a whole is generally aware that commercial sex activity occurs at hotels. (*See* Dkt. 1, at ¶¶ 51 – 55). Although Plaintiff concedes that she never rented a hotel room from United Inn, she generally

---

[3] Defendant requests the Court take Judicial Notice of the Superseding Criminal Indictment that is attached hereto as "Exhibit A." *See Curry v. TD Ameritrade, Inc.*, 662 Fed. Appx. 769, 774 n. 3 (11th Cir. 2016) (taking judicial notice of indictment and guilty plea of Ponzi scheme perpetrator in civil action); *see United States v. Alleca*, No. 1:15-cr-000458 (N.D. Ga. May 26, 2016) (guilty plea and minute sheet of court's acceptance of same); *United States v. Rey*, 811 F.2d 1453, 1457 n. 5 (11th Cir. 1987) ("a court may take judicial notice of its own records and the records of inferior courts"); Fed. R. Evid. 201 advisory committee's note to subdivision (f) ("in accord with the usual view, judicial notice may be taken at any stage of the proceedings, whether in the trial court or on appeal).

[4] Although Plaintiff alleges, she was a minor during June – July of 2017, she fails to allege that United Inn was aware that she was seventeen years old during June – July of 2017. (*See* Dkt. 1, at ¶¶ 1, 8).

alleges that her sex trafficker "operated openly and brazenly at the United Inn" despite providing no details regarding same. (*See* Dkt. 1, at ¶¶ 30, 20). Plaintiff's Complaint additionally fails to identify any individual employees of Defendant that G.W. purportedly "interacted with . . . in inappropriate clothing and was seen (or should have been seen) by hotel staff in common areas and approaches of the United Inn, among other places, soliciting various adult men." *Id.* at ¶ 31.

Plaintiff's Complaint fails to identify the member of the purported "venture" who booked a hotel room that she was purportedly sex trafficked in. Plaintiff's Complaint fails to identify a single employee of United Inn, despite contending that United Inn's employees knew or should have known that sex trafficking was occurring at the United Inn between June – July of 2017. Plaintiff's Complaint fails to specify a specific date in which Plaintiff was purportedly sex trafficked, but instead provides a vague range of two months in 2017. Despite these inadequacies, Plaintiff contends that United Inn had an obligation to prevent her from being a victim of sex trafficking, despite conceding that she returned to the lobby to get a key for her room after she was locked out. Plaintiff's general allegations as they relate to United Inn are not sufficient to establish that United Inn (i) knowingly benefitted (ii) from participating in a sex-trafficking venture (iii) that United Inn knew or should have known was committing sex-trafficking crimes against Plaintiff.

## STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the plaintiff's statement of a claim for relief. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). Further, "Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (internal citations and quotations omitted); *see also Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals, LP*, 634 F.3d 1352, 1359 (11th Cir. 2011). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, brackets, and internal quotation marks omitted).

## ARGUMENT

**A.    Plaintiff's allegations of omission are insufficient to establish liability under the TVPRA**

The TVPRA is a criminal statute that can give rise to civil claims. *See* 18 U.S.C. §§ 1591(a) and 1595(a). Section 1595(a) triggers civil liability for those who commit sex trafficking crimes. 18 U.S.C. §§ 1591(a), 1595(a). It provides that,

(a) an individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowing benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). In other words, the Plaintiff must prove that United Inn (i) knowingly benefitted (ii) from participating in a sex-trafficking venture (iii) that United Inn knew or should have known was committing sex-trafficking crimes against Plaintiff. The TVPRA "does not address commercial sex generally; rather, it "targets commercial sex servitude." *A.B. v. Hilton Worldwide Holdings Inc.*, No. 19-CV-01992, 2020 WL 5371459, at *11 (D. Or. Sept. 8, 2020).

The text of 18 U.S.C. § 1595(a) reveals that each element of the statute revolves around an alleged TVPRA "venture." Liability must be premised on the Defendant's participation in a TVPRA "venture" that committed a criminal sex-trafficking offense against the plaintiff. This element necessarily involves two discrete inquiries: (1) whether a TVPRA-qualifying "venture" exists within the meaning of the statute, and if so, (2) whether the defendant "participated" in such a venture. The Plaintiff must also show a causal nexus between any benefit received and the Defendant's participation in the venture to establish that Defendant "knowingly benefitted" from the purported venture. Finally, the Plaintiff must

6

plausibly allege that the Defendant "knew or should have known" that the specific venture in which the Defendant participated committed criminal sex-trafficking involved a person who had not yet attained the age of eighteen. *See* 18 U.S.C. § 1595(a)(2). Importantly, United Inn's alleged failure to act does not trigger liability under any of Plaintiff's causes of action, including the TVPRA. Here, Plaintiff has not sufficiently established that United Inn *knowingly* benefited from *participating* in a *sex trafficking venture* that *knew or should have known* was committing sex trafficking crimes against Plaintiff.

**B.   A TVPRA-Qualifying "Venture" Requires the "Participants" to have Associated Together for a Common Purpose and Operated as a Continuing Unit**

Liability under the TVPRA is premised on Defendant's participation in a "venture." A trafficking "venture" is defined as "any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6). The definition of a TVPRA "venture" closely tracks the definition of "enterprise" in the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), inasmuch as each requires individuals who are "associated in fact."[5] Where Congress

---

[5] *Compare* 18 U.S.C. § 1591(e)(6) (defining "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity"), *with* 18 U.S.C. § 1961(4) (defining "enterprise" as "any . . . group of individuals associated in fact although not a legal entity"); *see Boyle v. United States*, 556 U.S. 938, 946 (2009)

uses similar language (as with the definitions of a TVPRA "venture" and a RICO "enterprise"), courts presume that "Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005). In addition to the textual similarities, the Northern District of Georgia has recognized that, "the TVPRA's civil remedy operates in the same manner as the federal Racketeer Influence and Corrupt Organizations Act." *Plaintiff A v. Schair*, No. 11-CV-00145, 2014 WL 12495639, at *2 (N.D. Ga. Sept. 9, 2014).

For persons to be "associated in fact" in the RICO context, they must operate as a "continuing unit that functions with a common purpose." *Boyle*, 556 U.S. at 948. Given the common usage of "associated in fact" in the TVPRA's definition of "venture" and RICO's definition of "enterprise", this requirement applies with equal force to TVPRA claims. Accordingly, whether United Inn has "associated in fact" with others for purposes of participating in a TVPRA-qualifying "venture" depends in part on whether the alleged "venture" participants associated together for a common purpose and whether they operated as a continuing unit.

   i.    **Plaintiff Fails to Allege the Existence of a TVPRA "Venture"**

---

(explaining that the ordinary meaning of the word "enterprise" is "venture, undertaking, or project").

A lawful commercial relationship is insufficient to give rise to a plausible inference of "association in fact" among those in the relationship. In *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 (11th Cir. 2016), the complaint alleged that the RICO enterprise members had a common purpose[6],

> "to increase and maximize the revenue of Spirit Airlines by increasing the [passenger usage fee] and other carrier-imposed fees through a scheme that, in part, omitted and misrepresented that the fees were not related to government taxes and permitted fees for services but were a bottom-line assessment for Spirit."

The Eleventh Circuit found these allegations to be "purely conclusory" in determining whether the members had a common purpose. Likewise, in our case, Plaintiff's general allegation that United Inn, "collected revenue from rental of the room/s in which Plaintiff was trafficked for sex at the United Inn", is a purely conclusory allegation that United Inn and Plaintiff's trafficker were associated in fact such that would give rise to a TVPRA venture. (*See* Dkt. 1, at ¶ 33). Notably, Plaintiff failed to identify a room number that United Inn purportedly "collected revenue" for. At most, Plaintiff alleges that this criminal trafficker used the United Inn as an instrumentality for his crimes. That is simply not enough. *See Rosner v.*

---

[6] The purported members of the enterprise included Spirit Airlines and its vendors and the complaint alleged that Spirit portrayed its Passenger Usage Fee as a government-imposed or authorized fee, when, in fact, it was merely a portion of the base fare price of an airline ticket charged by the airline. *Ray*, 836 F.3d at 1345.

*Bank of China*, 528 F. Supp. 2d 419, 428-29 (S.D. N.Y. 2007) (recognizing that providing "general professional services . . . to the public as large" does not permit an inference that the service provider shared a common purpose with its customers).

### ii. Plaintiff Fails to Adequately Allege United Inn Participated in a TVPRA Venture

"Participation in a venture" means "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1) [sex trafficking]." 18 U.S.C. § 1591(e)(4). General allegations about the sex trafficking industry at large do not suffice to allege that United Inn participated in the venture underlying Plaintiff's claims. "Association alone cannot establish liability; instead, knowledge and 'some participation in the sex trafficking itself must be shown.'" *Jane Doe 4 v. Red Roof Inns, Inc.*, Civil Action No. 1:19-CV-03845-WMR, 2020 WL 1872336, *3 (quoting *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D. N.Y. 2018); *see also U.S. v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016). The noun "participation" refers to "the act of participating," and the verb "participate" means to "have a share in or to join in with others in an enterprise or an endeavor." (Merriam Webster's Dictionary (2020); Black's Law Dictionary 1294 (10th ed. 2014) (defining "participation" as "the act of taking part in something, such as a partnership, a crime"). The ordinary meaning of these terms require that the existence of the Defendant who is engaged in the "venture" is something more than merely passive conduct. For example, the

alleged failure to prevent trafficking—is not sufficient. *See A.B. v. Marriott International, Inc.*, 455 F. Supp. 3d 171, 182 (E.D. Penn. Apr. 22, 2020) (recognizing that the TVPRA does not "impose a duty to prevent trafficking" or otherwise require businesses to "affirmatively stop trafficking"); *accord United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (holding that "participating in a venture" requires an affirmative act, and that "mere negative acquiescence" is not enough).

The participation giving rise to the benefit must be participation in a sex-trafficking venture, not participation in other activities (i.e., rental of hotel room) engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture. *Geiss*, 383 F. Supp. 3d at 169. The mere fact that prostitution may have been going on at the United Inn is insufficient. The term "participation in a venture" in 18 U.S.C. § 1591 imports a state of mind requirement—the participant must be "knowing." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019). Here, Plaintiff's Complaint unsubstantially alleges that United Inn "act[ed] as lookouts for Plaintiff's trafficker and inform[ed] the trafficker of police activity at the hotel as well as warn[ed] Plaintiff's trafficker about guest complaint and high visitor traffic drawing unwanted attention." (Dkt. 1, at ¶ 37). Because the Complaint does not allege any participation, i.e., any overt acts in furtherance of sex

11

trafficking—by United Inn, Plaintiff's claim for violation of the TVPRA should be dismissed.

### C.   Plaintiff Fails to Plausibly Allege that United Inn Knowingly Benefitted from Participation in a Trafficking Venture

A TVPRA claim requires well-pled allegations that the Defendant "knowingly benefits, financially or by receiving anything of value, *from* participation in [that] venture." 18 U.S.C. § 1595(a) (emphasis added). "If there is participation in the venture, liability attaches if the defendant [knowingly] benefitted *from this participation*." *Bridges v. Poe*, No. 19-CV-01399, 2020 WL 5408915, at *7 (N.D. Ala. Sept. 9, 2020) (emphasis added).

Plaintiff's Complaint includes conclusory and speculative allegations that United Inn knowingly benefited from the alleged TVPRA violation, despite conceding that she did not rent a room at the United Inn. (*See* Dkt. 1, at ¶ 30). Plaintiff alleges that United Inn benefitted from Plaintiff's sex trafficking because "Plaintiff's trafficker and/or his associate rented the room/s in which Plaintiff was sex trafficked at the United Inn." (Dkt. 1 at ¶ 33). Yet, despite this contention, Plaintiff fails to identify the individual who booked the rooms at the United Inn and concedes that she never rented a room at the United Inn. In other words, Plaintiff alleges that United Inn benefitted from participation in a sex trafficking venture but cannot identify who was responsible for the purported "benefit" United Inn

purportedly received, except for conceding that the benefit did not come from Plaintiff herself. (*See* Dkt. 1, at ¶ 30).

### i.   The TVPRA Requires a Nexus Between a Known Benefit to the Defendant and that Defendant's Participation in the Venture

18 U.S.C. § 1595(a) permits a victim to seek relief from a Defendant who knowingly benefited "from" participation in a TVPRA "venture." The word "from" requires a causal relationship between United Inn's purported participation and receipt of a known benefit such that only certain types of benefits can create liability. *Bridges*, 2020 WL 5408915, at *7. Thus, to ***knowingly*** benefit is more than to merely benefit—the plain words of the statute necessarily entail an attendant mental state. *Geiss*, 383 F. Supp. 3d at 169. This element of the statutory claim requires not only a causal connection between affirmative conduct advancing the alleged sex-trafficking and the receipt of the alleged benefit, but that the benefit is received with knowledge of that causal relationship. *Id*. Here, Plaintiff fails to assert a specific instance of United Inn receiving some benefit with knowledge of the causal relationship under the Statute. Moreover, Plaintiff's vague allegation that "Plaintiff's trafficker and his associates also interacted with hotel staff, who accommodated their requests and thereby facilitated and assisted Plaintiff's minor sex trafficking" does not establish that United Inn received a benefit with knowledge of the causal connection of advancing alleged sex trafficking. (*See* Dkt. 1, at ¶ 32).

Moreover, the phrase in § 1595(a), "benefits . . . from participation in a venture" is a one verb phrase with the adverb "knowingly" modifying the entire phrase, not merely the verb "benefits." This reading of the statute reflects the requirement of a nexus between the known benefit, the TVPRA venture, and participation in that venture. The Southern District of New York recently dismissed a claim brought under the TVPRA against the defendant because plaintiffs failed to "allege any facts to show that [defendant] knowingly benefitted ... from participation in a venture *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). A Plaintiff instead "must allege specific conduct that furthered the sex trafficking venture." *Id.* In other words, some participation in the sex trafficking act itself must be shown. *Id.* Giving effect to the word "from" and requiring a causal nexus between the venture participation and the benefit creates the limiting principle necessary to ensure that civil liability is consistent with the statutory text and purpose. As such, Plaintiff's failure to set forth evidence to support a claim under 18 U.S.C. § 1591(a) fails as a matter of law.

**D.      Plaintiff fails to Plausibly Allege that United Inn Knew or Should Have Known that any TVPRA "Venture" Committed Trafficking Crimes**

Plaintiff alleges that United Inn "should have known that Plaintiff was a minor victim of sex trafficking who was sex trafficked at United Inn." (Dkt. 1, at ¶ 41).

14

This is insufficient as a matter of law. In order to plausibly allege that a defendant "should have known" about a plaintiff's trafficking for purposes of the TVPRA, it is not enough to allege that the Defendant had generalized knowledge that commercial sex acts sometimes occur at hotels. *Ratha v. Phatthana Seafood Co., Ltd.*, 2017 WL 8293174, at *5 ("Plaintiffs argues that Rubicon and Wales knew or should have known that Phatthana allegedly engaged in [trafficking] based on general reports about human trafficking in Thailand and letters by advocacy groups . . . criticizing the working conditions at Phatthana's Songkhla factory . . . Plaintiffs have failed to demonstrate that Rubicon or Wales knew or should have known that human trafficking existed at Phatthana's Songkhla factory.").

To establish a cause of action under the TVPRA, a plaintiff must allege that a defendant violated 18 U.S.C. § 1591(a) by (1) *knowingly* recruiting, enticing, transporting, providing, obtaining, advertising, patronizing or soliciting a person; or (2) by *knowingly* benefiting from participation in a venture that has engaged in any act described by 18 U.S.C. § 1591(a)(1). Plaintiff must also allege that United Inn knew or acted in reckless disregard of the fact that Plaintiff "had not attained the age of 18 years and would be caused to engage in a commercial sex act." *Id.* Plaintiff's Complaint is void of even an allegation that the United Inn should have known that Plaintiff was seventeen years old instead of eighteen.

Additionally, "negative acquiescence" allegations of failure to train or disseminate information are insufficient to create liability under the TVPRA. *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016); *but see M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-849, 2019 WL 4929297, at *4 (S.D. Ohio Oct. 7, 2019) (applying willful blindness standard); *H.H. v. G6Hospitality, LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *3 (S.D. Ohio Dec. 6, 2019). 18 U.S.C. § 1591(a) requires proof of knowledge *or* reckless disregard—not both. *U.S. v. Robinson*, 702 F.3d 22, 32 (2012). Federal courts have used the "should have known" standard in Section 1595(a) similarly to the reckless disregard standard from Section 1591(a)(2). *See Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017); *Noble*, 335 F. Supp. 3d at 524 ("such conduct must have been undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture").

Further, to hold United Inn liable for criminal acts of a third party in Georgia, the Plaintiff is required to show a legally attributable causal connection between United Inn's conduct and her injury. *Tomsic v. Marriott Int'l, Inc.*, 321 Ga. App. 374, 384 (2013). "[T]here must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual, or in the civil context, constructive knowledge of that causal relationship." *Geiss*, 383

16

F.Supp. 3d at 169. The dismissal of claims against a non-perpetrator were applied in *Geiss* despite the fact that the court found sufficient allegations to state a claim against the individual perpetrator—who was an employee of the dismissed defendants. *Id.* at 168. Here, Plaintiff has failed to establish a causal relationship between United Inn's conduct that purportedly "furthered" the sex-trafficking venture and its alleged receipt of a benefit, and unlike *Geiss*, the individual perpetrator was not an employee of United Inn and Plaintiff has presented zero evidence that the individual perpetrator was ever present on the premises of United Inn, much less that he conferred a benefit on United Inn.

**E.     United Inn Cannot be Vicariously Liable for the Intentional Misconduct of Unidentified Front Desk Workers or Housekeeping Staff Not Within the Scope of and in Furtherance of United Inn's Business**

Legally, under Georgia Law, United Inn cannot be vicariously liable for the intentional misconduct of unidentified front desk workers or housekeeping staff not within the scope of and in furtherance of United Inn's business. *Piedmont Hosp. Inc. v. Palladino*, 276 Ga. 612, 614-15 (2003); *Brownlee v. Winn-Dixie Atlanta, Inc.*, 240 Ga. App. 368, 369 (1999); *Drury v. Harris Ventures, Inc.*, 302 Ga. App. 545, 546-47 (2010); *Ahmed v. Air France-KLM*, 165 F. Supp. 3d 1302, 1310 (N.D. Ga. 2016).

This Court explained in *Ahmed* when an employer can and cannot be held vicariously liable for the acts of an employee: Georgia courts will hold an employer

17

responsible for the conduct of its employee if the employee acted in the course of the employer's business and with a desire to benefit the employer. *Bennett v. U.S.*, 102 F.3d 486, 489 (11th Cir. 1996) (citing *Wallace v. ARA Servs., Inc.*, 185 Ga. App. 639 (1988)). An employer generally is not liable for an employee's intentional torts. *Trimble v. Circuit City Stores, Inc.*, 220 Ga. App. 498 (1996). "When an employee undertakes an act purely personal in nature, no respondeat superior liability may be imposed." *Id.* (citing *Worstell Parking, Inc. v. Aisida*, 212 Ga. App. 605, (1994)); *see also Travis Pruitt & Assocs., P.C. v. Hooper*, 277 Ga. App. 1 (2005) (holding that an employer cannot be held liable for sexual harassment committed by an employee "for purely personal reasons entirely disconnected from the employer's business"). Here, Plaintiff contends that:

> [United Inn's] employees, agents, and/or representatives allowed, condoned, assisted, and facilitated Plaintiff's minor sex trafficking at the United Inn by, among other things, acting as lookouts for Plaintiff's trafficker and informing the trafficker of police activity at the hotel as well as warning Plaintiff's trafficker about guest complaints and high visitor traffic drawing unwanted attention.

(Dkt. 1, at ¶ 37).

At the Motion to Dismiss stage where Plaintiff's allegations are considered true, Plaintiff's contention that United Inn's employees ***condoned, assisted, and facilitated*** Plaintiff's minor sex trafficking are allegations of intentional conduct that do not further the business of United Inn. Thus, United Inn is not liable to Plaintiff

18

for negligence because Plaintiff's Complaint alleges that United Inn's employees' conduct was outside the scope of their employment.

### F.      Plaintiff's Claims for Negligence are Barred by the Statute of Limitations

Pursuant to O.C.G.A. § 9-3-33, "actions for injuries to the person shall be brought withing two years after the right of action accrues." The key to applying the statute of limitations in this case is to determine the accrual date: "Georgia Courts . . . [apply] the now well-established rule that 'on a tort claim for personal injury the statute of limitation generally begins to run at the time damage caused by a tortious act occurs, at which time the tort is complete.'" *Rivell v. Private Health Care Sys., Inc.*, 877 F. Supp. 2d 1277, 1284-85 (S.D. Ga. 2012) (quoting *Everhart v. Rich's Inc.*, 229 Ga. 798, 801 (1972); accord *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 805 (1980).

Here, Plaintiff alleges that "[United Inn] was negligent and said negligence proximately caused Plaintiff's injuries." (*See* Dkt. 1, at ¶ 105). Plaintiff alleges that she was trafficked at the United Inn in June and July of 2017. *Id.* at ¶ 17. Plaintiff alleges that "as a proximate and foreseeable result of [United Inn's] negligence . . . Plaintiff sustained personal injuries, mental and emotional pain and suffering, mental anguish, and other damages as will be proven at trial." (Dkt. 1, at ¶ 111). Therefore, the statute of limitations for plaintiff's negligence claims started in June or July of

2017 and expired in June or July of 2019. Even if Plaintiff were to argue that her negligence claims were tolled until she turned 18, she was 17 in June or July of 2019, even assuming she turned 17 on June 1, 2017, the statute of limitations would toll until June 1, 2018, and would have expired in June or July of 2020. Count II of Plaintiff's Complaint should be dismissed because her negligence claims are barred by the statute of limitations.

**G.      Plaintiff's Request for Joint and Several Liability and Punitive Damages is Improper**

The TVPRA provides no basis for joint and several liability. *See* 18 U.S.C. § 1595. Plaintiff has not alleged that United Inn acted together in concert with anyone or planned to inflict damage on the Plaintiff, because she cannot. *Pease & Elliman Realty Tr. v. Gaines*, 160 Ga. App. 125, 131 (1981).  The conclusory statements of Plaintiff are not sufficient to hold United Inn liable for any enumerated claims in Plaintiff's Complaint, and certainly cannot support a punitive damages or a claim for specific intent to cause harm warranting unlimited damages as sought by Plaintiff. Nor can such statements support joint and several liability in this case.

**H.      Alternatively, the Salacious and Impertinent Details of the Plaintiff's Complaint Should be Struck Pursuant to Fed. R. Civ. P. Rule 12(f).**

The Federal Rules of Civil Procedure provide that "the court may order stricken from any pleading . . . any redundant, immaterial, impertinent or scandalous

matter." Fed. R. Civ. P. 12(f). The purpose of a motion to strike is to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters . . . motions to strike will be granted only if the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party. *Blake v. Batmasian*, 318 F.R.D. 698, 700-01 (S.D. Fla. 2017); *see also Stephens v. Georgia Dep't of Transp.*, 134 F. App'x 320, 322-23 (11th Cir. 2005). Additionally, "the Supreme Court established long ago that federal courts have the duty to keep their records clean and free from scandal." *Chattanooga-Hamilton Cty. v. Walker*, No. 4:14-CV-00016-HLM, 2014 WL 12495271, at *2 (N.D. Ga. Aug. 28, 2014). In *Walker*, the Court struck that portion of the defendant's counterclaim that contained facts irrelevant "to the issues at hand" and that would prejudice the opposing party. *Id.* at *3.

The Supreme Court of Georgia recently clarified the definition of "salacious" under Rule 8, stating "to prevail on [a] motion to strike, the movant must clearly show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants." *Chappuis v. Ortho Sport & Spine Physicians Savannah, LLC*, 305 Ga. 401, 407–08 (2019) (quoting 2 Moore's Federal Practice § 12.37 [3]). This is particularly appropriate where the matter to be struck is not related to the facts in controversy and will confuse the issues, such as

by including extensive general statements about a social problem, unrelated to the causes of action against United Inn. *Blake v. Batmasian*, 318 F.R.D. 698, 700–01 (S.D. Fla. 2017).

In fact, in a recent case involving allegations of violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA") against hotel defendants, the Court struck "Plaintiff's allegations from the Amended Complaint concerning sex trafficking and the relationship between sex trafficking and the hotel industry generally," and ordered that the Plaintiff "recast her complaint removing all general allegations about sex trafficking or the sex trafficking industry that are not related to a specific Defendant and setting forth specific allegations as to each remaining Defendant with supporting facts." *Jane Doe 4 v. Red Roof Inns, Inc.*, Civil Action No. 1:19-CV-03845-WMR, 2020 WL 1872336, *1 (N.D. Ga. Apr. 13, 2020). Similar to the Complaint in this case, the Court in *Jane Doe 4* noted that Plaintiff's "Amended Complaint is full of conclusions and short on specific facts." *Id.* at *5. The paragraphs in Plaintiff's Amended Complaint that were struck by the Court in

*Jane Doe 4* are practically identical to Paragraphs 51 – 64 contained in Plaintiff's Complaint before this Court.[7]

Accordingly, this Court should strike paragraphs 11; 42 – 48 and all subparts; 51 - 64 and all subparts; 66 – 70; and 86 – 89 and all subparts, as impertinent and salacious and meant merely to flame emotions. They contain dramatic allegations of the sex industry as a whole that have no bearing on this case, but that could serve to prejudice United Inn and confuse the facts at issue.

## CONCLUSION

WHEREFORE Defendants respectfully request that this Court dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted or in the alternative strike the aforementioned paragraphs of Plaintiff's Complaint because they are impertinent and salacious matters to the case as hand, and for such other relief as this Court may deem just and proper.

Respectfully submitted this 12th day of February, 2021.

**HALL BOOTH SMITH, P.C.**

*/s/ Don B. Brown*

DON B. BROWN

---

[7] For the Court's Convenience, a copy of the Amended Complaint in *Jane Doe 4 v. Red Roof Inns, Inc.* is attached hereto as "Exhibit B." *See also* Civil Action No. 1:19-CV-03845-WMR, Nov. 21, 2019, Dkt. 75.

Georgia Bar No. 496667
WILLIAM R. STORY
Georgia Bar No. 340477
*Attorneys for Defendant Northbrook Industries, Inc., d/b/a United Inn and Suites*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
404-954-5000 : 404-954-5020 (Fax)
dbrown@hallboothsmith.com
wstory@hallboothsmith.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing ***Brief in Support of Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites' Motion to Dismiss Plaintiff's Complaint and Alternatively, Defendant's Motion to Strike Portions of Plaintiff's Complaint*** has been prepared with one of the following font and point selections approved by the Court in LR 5.1, NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted this 12th day of February, 2021.

**HALL BOOTH SMITH, P.C.**

*/s/ Don B. Brown*

_____

DON B. BROWN
Georgia Bar No. 496667
WILLIAM R. STORY
Georgia Bar No. 340477
*Attorneys for Defendant Northbrook Industries, Inc., d/b/a United Inn and Suites*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
404-954-5000 : 404-954-5020 (Fax)
dbrown@hallboothsmith.com
wstory@hallboothsmith.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 12th day of February, 2021 file the within

foregoing ***Brief in Support of Defendant Northbrook Industries, Inc. d/b/a United***

***Inn and Suites' Motion to Dismiss Plaintiff's Complaint and Alternatively,***

***Defendant's Motion to Strike Portions of Plaintiff's Complaint*** via CM/ECF,

which automatically sends an electronic copy of all counsel of records as follows:

Richard W. Hendrix
W. Carl Lietz, III
David H. Bouchard
FINCH McCRANIE, LLP
225 Peachtree Street NE
1700 South Tower
Atlanta, Georgia 30303
*Attorneys for Plaintiff G.W.*


Jonathan S. Tonge
Patrick J. McDonough
ANDERSEN, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard
Suite 4000
Duluth, Georgia 30097
*Attorneys for Plaintiff G.W.*

Doc. 31

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

G.W.,

        Plaintiff,

     v.

NORTHBROOK INDUSTRIES, INC.,
d/b/a UNITED INN AND SUITES,

        Defendant.

CIVIL ACTION NO.
1:20-CV-05232-JPB

## **ORDER**

This matter is before the Court on Northbrook Industries, Inc.'s

("Defendant") Motion to Dismiss Plaintiff's Complaint and, alternatively, Motion

to Strike Portions of Plaintiff's Complaint [Doc. 16].  This Court finds as follows:

G.W. ("Plaintiff") filed her Complaint for Damages ("Complaint") against

Defendant on December 28, 2020.  [Doc. 1].  In her Complaint, Plaintiff alleges

that when she was a minor, she was trafficked for sex at the United Inn & Suites,

which is owned by Defendant.  Id.  As a result of the trafficking, Plaintiff asserts

two claims against Defendant:  (1) violation of the Trafficking Victims Protection

Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, and (2) common-law

negligence.  Id.  On February 12, 2021, Defendant filed the instant Motion to

Dismiss Plaintiff's Complaint and, alternatively, Motion to Strike Portions of

Plaintiff's Complaint.  [Doc. 16].  In the motion, Defendant primarily argues that Plaintiff's allegations are insufficient to establish that Defendant knowingly benefitted from participating in a sex-trafficking venture.  Defendant also argues that the allegations fail to show that Defendant knew or should have known that it was committing sex-trafficking crimes against Plaintiff.  In sum, Defendant asserts that Plaintiff's TVPRA and negligence claim must be dismissed for failure to state a claim.

In Case Nos. 20-11764, 20-11769, 20-11770 and 20-11771, the Eleventh Circuit Court of Appeals is currently considering nearly identical arguments raised by Defendant in this case.[1]  Order on Motions to Consolidate Appeals, <u>Doe 1 v. Red Roof Inns, Inc.</u>, Nos. 20-11764, 20-11769, 20-11770, 20-11771 (11th Cir. June 24, 2020).  Specifically, in analyzing a similar fact pattern to the fact pattern presented here, the Eleventh Circuit has been asked to address the pleading requirements under TVPRA and common-law negligence.  The issue is fully

---

[1] In those cases, the district court determined that the plaintiff's allegations were insufficient to state a claim.  <u>Doe 1 v. Red Roofs Inns, Inc.</u>, No. 19-cv-03840, 2020 WL 1872335, at *1 (N.D. Ga. Apr. 13, 2020); <u>Doe 2 v. Red Roofs Inns, Inc.</u>, No. 19-cv-03841, 2020 WL 1872337, at *1 (N.D. Ga. Apr. 13, 2020); <u>Doe 3 v. Red Roofs Inns, Inc.</u>, No. 19-cv-03843, 2020 WL 1872333, at *1 (N.D. Ga. Apr. 13, 2020); <u>Doe 4 v. Red Roofs Inns, Inc.</u>, No. 19-cv-03845, 2020 WL 1872336, at *1 (N.D. Ga. Apr. 13, 2020).

briefed, and the Eleventh Circuit has already heard oral argument.  The Eleventh Circuit, however, has not yet issued its decision.

Until a decision is issued, Defendant's Motion to Dismiss and, alternatively, Motion to Strike [Doc. 16] is **DEFERRED**, and the Clerk is **DIRECTED** to terminate the submission.  The parties are **DIRECTED** to notify this Court within seven days of the Eleventh Circuit issuing its decision in the Consolidated Appeals. Upon notification, this Court will enter a briefing schedule so that the parties can supplement their arguments with the Eleventh Circuit's decision.  Once the additional briefing is complete, the Clerk is **DIRECTED** to resubmit Defendant's motion [Doc. 16] to the undersigned.

**SO ORDERED** this 27th day of July, 2021.

J. P. BOULEE
United States District Judge

Doc. 40

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

G.W.,

      Plaintiff,

   v.

NORTHBROOK INDUSTRIES, INC.,
D/B/A UNITED INN AND SUITES,

      Defendant.

CIVIL ACTION NO.
1:20-CV-05232-JPB

## ORDER

This matter is before the Court on Northbrook Industries, Inc. d/b/a United
Inn and Suites' ("Defendant") Motion to Dismiss Complaint and alternatively,
Motion to Strike Portions of Complaint [Doc. 16].  This Court finds as follows:

## BACKGROUND

G.W. ("Plaintiff") alleges that in June and July 2017, when she was a minor,
she and another child were sex trafficked at the United Inn, a hotel owned,
operated, maintained, controlled and managed by Defendant.  [Doc. 1, p. 5, 9].
Plaintiff contends that during her stay at the United Inn, she exhibited numerous
well-known and visible signs common to minor sex trafficking victims, including
her age and inappropriate appearance, physical deterioration, poor hygiene, fatigue,

sleep deprivation, injuries, a failure to make eye contact with others, loitering and soliciting male patrons.  <u>Id.</u> at 10.

According to Plaintiff, at least fifteen men visited her hotel room—which was close to and within view of the hotel lobby and front desk—to purchase sex with her.  <u>Id.</u> at 10-12.  On two occasions, five adult men purchased commercial sex with Plaintiff and the other minor.  <u>Id.</u> at 11.  These five men had sex with both minor victims simultaneously.  <u>Id.</u>  Afterwards, disturbances involving the men occurred in a common area of the United Inn.  <u>Id.</u>

In addition to allegations that Defendant's employees would have observed Plaintiff and the other minor victim in and around the United Inn, Plaintiff contends that she had direct contact with employees of the United Inn on at least two occasions.  On one occasion, an employee sold a box of condoms to Plaintiff and the other minor.  <u>Id.</u> at 12-13.  On another occasion, Plaintiff and the other minor were locked out of their room and went to the front desk for assistance.  <u>Id.</u> at 13.  The employee at the front desk called Plaintiff's trafficker, and upon obtaining permission from the trafficker to let the girls back in the hotel room, the front desk employee walked the girls back and let them in the room.  <u>Id.</u>

Plaintiff alleges that she was not the first victim trafficked by her trafficker at the United Inn.  <u>Id.</u> at 14.  Indeed, Plaintiff contends that her trafficker had

previously rented rooms at the United Inn for trafficking purposes.  <u>Id.</u>  Moreover, Plaintiff asserts that Defendant's employees acted as lookouts for Plaintiff's trafficker and informed the trafficker of police activity at the hotel.  <u>Id.</u> at 15. Ultimately, Plaintiff alleges that Defendant, who received revenue from room rentals, knew or should have known that she was a victim of sex trafficking based on her appearance, her behavior and the number of men coming and going from her hotel room.  <u>Id.</u> at 14.

On December 28, 2020, Plaintiff filed this suit against Defendant alleging the following causes of action:  (1) violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"); and (2) common law negligence.  Defendant filed the instant motion seeking dismissal of the claims on February 12, 2021. [Doc. 16].  Consideration of the motion was deferred, however, while the Eleventh Circuit Court of Appeals considered a case with similar allegations, <u>Doe #1 v. Red Roof Inns, Inc.</u>, 21 F.4th 714 (11th Cir. 2021).  [Doc. 31].  On December 22, 2021, the Eleventh Circuit issued its decision.  The parties then presented supplemental briefs to the Court.  [Docs. 35 and 37].  The motion is now ripe for review.

### LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and

constru[es] them in the light most favorable to the plaintiff." Traylor v. P'ship

Title Co., 491 F. App'x 988, 989 (11th Cir. 2012).  Federal Rule of Civil Procedure

8(a)(2) provides that a pleading must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Although detailed factual

allegations are not necessarily required, the pleading must contain more than

"labels and conclusions" or a "formulaic recitation of the elements of a cause of

action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint is insufficient

if it only tenders naked assertions devoid of further factual enhancement.

Id.  Importantly, "a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  Id. (citation omitted).

At bottom, the complaint must contain more than "an unadorned, the-defendant-

unlawfully-harmed-me accusation," id., and must "plead[] factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Traylor, 491 F. App'x at 990 (quoting Iqbal, 556 U.S. at

678).  While all well-pleaded facts must be accepted as true and construed in the

light most favorable to the plaintiff, Powell v. Thomas, 643 F.3d 1300, 1302 (11th

Cir. 2011), a court need not accept as true the plaintiff's legal conclusions,

including those couched as factual allegations, Iqbal, 556 U.S. at 678.

Accordingly, evaluation of a motion to dismiss requires two steps:  (1) a court must eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are remaining well-pleaded factual allegations, a court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.

## DISCUSSION

In its motion, Defendant contends that Plaintiff's TVPRA and negligence claims should be dismissed.  Defendant alternatively argues that the Court should strike certain "salacious and impertinent" allegations contained in the Complaint.

### 1.  **TVPRA**

The TVPRA offers a civil remedy to victims of certain types of human trafficking.  The civil remedy portion of the TVPRA provides that a trafficking victim may bring a civil suit against a sex-trafficking perpetrator or "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]."  18 U.S.C. § 1595(a).  In this case, Plaintiff is not suing the perpetrator, but rather Defendant, who she claims knowingly benefited from the sex trafficking.  To state a claim for beneficiary liability under the TVPRA, a plaintiff must plausibly allege that the defendant:

5

> (1) knowingly benefited, (2) from taking part in a common
> undertaking or enterprise involving risk and potential profit, (3)
> that undertaking or enterprise violated the TVPRA as to the
> plaintiff, and (4) the defendant had constructive or actual
> knowledge that the undertaking or enterprise violated the
> TVPRA as to the plaintiff.

Red Roof Inns, 21 F.4th at 726.

As to the first element, a plaintiff must allege that the defendant "knew it was receiving some value from participating in the alleged venture." Id. at 724. In this case, Plaintiff alleges that Defendant rented the room to Plaintiff's trafficker and received revenue from the room rental. This Court finds that the revenue from the room rental constitutes a financial benefit sufficient to meet the "knowingly benefited" standard. See S.Y. v. Best W. Int'l, Inc., No. 2:20-cv-616, 2021 WL 2315073, at *4 (M.D. Fla. June 7, 2021); see also A.B. v. H.K. Grp. of Co., No. 1:21-cv-1344, 2022 WL 467786, at *4 (N.D. Ga. Feb. 9, 2022) (holding that the money received from room rentals constitutes a benefit, knowingly received).

The second element requires a plaintiff to allege that a defendant participated in a venture. As to this element, the Eleventh Circuit has made clear that the definition of "participation in a venture" is not the same as that found in the criminal provisions of § 1591(e)(4).[1] Red Roof Inns, 21 F.4th at 724. Instead,

---

[1] Under the criminal provisions, "participation in a venture" is defined as "knowingly assisting, supporting, or facilitating a violation of subsection(a)(1)," which criminalizes commercial sex acts of minors. Red Roof Inns, 21 F.4th at 724.

in the civil context, "participation in a venture" merely requires that a plaintiff allege that the defendant took part in a common undertaking or enterprise involving risk and potential profit.  Id. at 725.

In this case, Plaintiff has made the "kinds of allegations [that] would establish a hotel operator's participation in a venture with a sex trafficker."  Id. at 726.[2]  Here, Plaintiff's allegations are sufficient because she alleges that Defendant had rented a room to her trafficker in the past for the purpose of sex trafficking and that Defendant knew or should have known that the trafficker was presently engaged in sex trafficking with Plaintiff.  Plaintiff's Complaint adequately sets forth the reasons why Defendant should have been on notice of the sex trafficking and how it failed to prevent it.  Moreover, Plaintiff contends that Defendant's employees acted as lookouts for Plaintiff's traffickers.  At bottom, the allegations are sufficient to allege participation in a venture.  See Best W. Int'l, 2021 WL

---

[2] In Red Roof Inns, 21 F.4th at 725, the Eleventh Circuit approved of the disposition in Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017).  In Ricchio, a plaintiff's claims were allowed to proceed against the operators of a hotel where she was held hostage and sexually abused because the hotel operators and the trafficker had prior commercial dealings, which the parties wished to resume for profit.  853 F.3d at 555.  After considering these prior dealings, the First Circuit Court of Appeals determined that the plaintiff plausibly alleged that—by renting a room to the trafficker—the hotel operators were "associating with him in an effort to force [the plaintiff] to serve their business objective."  Id.  Notably, the Eleventh Circuit stated that "[w]e agree that these kinds of allegations would establish a hotel operator's participation in a venture with a sex trafficker."  Red Roof Inns, 21 F.4th at 726.

2315073, at *4 (holding that it was sufficient for a plaintiff to plead that the defendants participated in a venture by renting rooms to people it knew or should have known were engaged in sex trafficking).

As to the third element, a plaintiff must allege "that the venture . . . violated the TVPRA as to the plaintiff." Red Roof Inns, 21 F.4th at 725. The TVPRA criminalizes various acts of human trafficking. In this case, Plaintiff specifically alleges that she was trafficked in violation of § 1591(a), which makes it a crime to cause a person who has not yet attained the age of eighteen years to engage in a commercial sex act. Consequently, as to this element, Plaintiff must therefore plead sufficient facts to plausibly allege that the venture in which Defendant participated committed a crime against her.

Defendant argues that this element is not satisfied because Plaintiff did not allege that Defendant knew or acted in reckless disregard of the fact that she had not yet attained the age of eighteen years. Defendant misstates the standard. The Eleventh Circuit has determined that showing knowledge or reckless disregard for a victim's age is not necessary to establish a violation of § 1591(a). In fact, the Eleventh Circuit has held that in a prosecution under § 1591(a), the Government need not prove that the defendant knew or recklessly disregarded the fact that the person had not attained the age of eighteen years if the defendant "had a reasonable

opportunity to observe the victim." United States v. Whyte, 928 F.3d 1317, 1328 (11th Cir. 2019).

This Court finds that Plaintiff's allegations are more than sufficient to show that the venture violated the TVPRA as to Plaintiff. Here, Plaintiff alleges that she was a minor when she was caused to engage in commercial sex acts with as many as fifteen men. She further alleges that Defendant had ample opportunity to observe her in common areas of the hotel and through her interactions with hotel staff, including the time that Plaintiff spoke to front desk employees when she was locked out of the room and when she purchased condoms. Contrary to Defendant's contention, Plaintiff need not allege that Defendant knew or recklessly disregarded the fact that she was under eighteen years old. It is enough that Plaintiff allege that Defendant had a reasonable opportunity to observe her.

Finally, as to the last element, the allegations must show that a defendant had actual or constructive knowledge that the venture violated the TVPRA as to the plaintiff. Red Roof Inns, 21 F.4th at 725. Knowledge is defined as "an awareness or understanding of a fact or circumstance." Id. Conversely, constructive knowledge "is that knowledge which 'one using reasonable care or diligence should have.'" Id.

The Court finds that Plaintiff has adequately alleged that Defendant had actual or constructive knowledge of Plaintiff's sex trafficking at the hotel.  In Plaintiff's Complaint, she alleges that Defendant knew or should have known about the sex trafficking venture based on the following:  Plaintiff's age and inappropriate appearance, her physical deterioration and poor hygiene, her fatigue and sleep deprivation, her injuries, her failure to make eye contact with others, her loitering, her solicitation of male patrons, the amount of men visiting her room, the disturbances caused by the men visiting Plaintiff's room and Plaintiff's purchase of condoms.  Importantly, Plaintiff alleges that her trafficker had previously trafficked victims at Defendant's hotel and some of Defendant's employees acted as lookouts.  Courts considering similar allegations have found the allegations sufficient to infer that a defendant knew or should have known of the sex trafficking venture, and the Court finds these allegations sufficient as well.  S.Y. v. Naples Hotel Co., 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020) (collecting cases).

As explained in the preceding paragraphs, Plaintiff has sufficiently alleged facts to support each element of her TVPRA claim.  As such, to the extent Defendant seeks dismissal of the TVPRA claim, Defendant's motion is **DENIED**.

## 2. <u>Negligence</u>

### a. <u>Intentional Conduct of Employees</u>

Defendant argues that Plaintiff's negligence claim is subject to dismissal because "United Inn cannot be vicariously liable for the intentional misconduct of unidentified front desk workers or housekeeping staff not within the scope of and in furtherance of United Inn's business." [Doc. 16-1, p. 17]. Plaintiff's negligence claim, however, is not based on the intentional misconduct of unidentified front desk workers or housekeeping staff. Indeed, Plaintiff never asserts that Defendant is liable for the crimes or intentional torts of its employees. Accordingly, to the extent Defendant seeks dismissal of Plaintiff's negligence claim on this basis, Defendant's motion is **DENIED**.

### b. <u>Statute of Limitations</u>

Defendant additionally argues that Plaintiff's negligence claim is barred by the statute of limitations. Because a statute of limitations bar is an affirmative defense, a plaintiff is not required to negate it in the complaint. <u>Roberts v. Carnival Corp.</u>, 824 F. App'x 825, 827 (11th Cir. 2020). As a result, "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the complaint is time-barred." <u>La

Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (quoting Omar

v. Lindsey, 334 F.3d 1246, 1251 (11th Cir. 2003)).

 In Georgia, there is a two-year statute of limitations for personal injury

actions.  O.C.G.A. § 9-3-33.  Here, Plaintiff alleged that she was trafficked in June

2017.  Pursuant to the statute of limitations, Plaintiff's negligence claim should

have been filed no later than June 2019.  This action was not filed, however, until

December 28, 2020—more than one year after the expiration of the statute of

limitations.  Therefore, Plaintiff's negligence claim is barred unless there is some

basis for the statute of limitations to be tolled.  Plaintiff argues O.C.G.A. § 9-3-99

operates to toll the statute of limitations in this case.  The Court agrees.

 Under Georgia law, the statute of limitations in a civil action may be tolled

for actions brought by victims of a crime.  O.C.G.A. § 9-3-99 provides in relevant

part that:

> [t]he running of the period of limitations with respect to any
> cause of action in tort that may be brought by the victim of an
> alleged crime which arises out of the facts and circumstances
> relating to the commission of such alleged crime committed in
> this state shall be tolled from the date of the commission of the
> alleged crime or the act giving rise to such action in tort until the
> prosecution of such crime or act has become final or otherwise
> terminated, provided that such time does not exceed six years.

The Court of Appeals of Georgia has held that this statute "contemplates extending

the time in which a victim may file a tort action where there are pending criminal

charges arising out of the same facts or circumstances." <u>Williams v. Durden</u>, 819

S.E.2d 524, 525 (Ga. Ct. App. 2018).  In fact, "the statute applies to any cause of

action in tort, without limitation, so long as that cause of action is brought by the

crime victim and 'arises out of the facts and circumstances relating to the

commission of such alleged crime.'" <u>Harrison v. McAfee</u>, 788 S.E.2d 872, 876

(Ga. Ct. App. 2016).  Under this statute, the limitations period is tolled until the

prosecution of the crime is no longer pending.  <u>Williams</u>, 819 S.E.2d at 524.

 As stated previously, dismissal on statute of limitations grounds is

appropriate only if it is apparent from the face of the complaint that the complaint

is time-barred.  That standard is not met here.  In this case, Plaintiff alleges that in

2017, she was the victim of a crime (sex trafficking).  This lawsuit, which sounds

in tort, arises out of the same facts and circumstances relating to the commission of

the alleged crime.  Thus, the limitations period is tolled until the prosecution of

Plaintiff's trafficker is no longer pending.  Plaintiff's Complaint shows that her

trafficker entered a guilty plea on November 6, 2020.[3]  Because Plaintiff alleged

that she was the victim of a crime and Georgia law requires tolling of the statute of

limitations until the prosecution of the crime is no longer pending, the Court finds

that the statute of limitations was tolled until April 6, 2021—after Plaintiff filed

---

[3] Court records show that the trafficker was sentenced on April 1, 2021.  <u>United States v. Obie</u>, No. 1:18-cr-00424 (N.D. Ga. Apr. 6, 2021).

this action.  Accordingly, since it is not apparent from the face of the Complaint

that the claim is time-barred, dismissal based upon the statute of limitations is not

appropriate.  Therefore, to the extent Defendant seeks dismissal on this ground,

Defendant's motion is **DENIED**.

### 3.  Motion to Strike

Defendant alternatively asks this Court to strike the "salacious and

impertinent" details of Plaintiff's Complaint pursuant to Federal Rule of Civil

Procedure 12(f).  Under Rule 12(f), a party may move to strike "any redundant,

immaterial, impertinent, or scandalous matter" within the pleadings.  "The

purposes of a motion to strike is to 'clean up the pleadings, streamline litigation,

and avoid unnecessary forays into immaterial matters.'"  Hutchings v. Fed. Ins.

Co., No. 6:08-cv-305, 2008 WL 4186994, at *2 (M.D. Fla. Sept. 8, 2008) (quoting

McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D.

Pa. 2002)).  Significantly, "a motion to strike is a drastic remedy and is disfavored

by the courts."  Naples Hotel Co., 476 F. Supp. 3d. at 1259.  Thus, a motion to

strike should be granted "only if 'the matter sought to be omitted has no possible

relationship to the controversy, may confuse the issues, or otherwise prejudice a

party.'"  Id. (quoting Schmidt v. Life Ins. Co. of N. Am., 289 F.R.D. 357, 358

(M.D. Fla. 2012)).

14

In this case, Defendant contends that the Court should strike from Plaintiff's Complaint paragraphs 11, 42 through 48, 51 through 64, 66 through 70 and 86 through 89.  According to Defendant, these paragraphs contain dramatic allegations of the sex industry as a whole that have no bearing on this case.  The Court disagrees.  As to paragraphs 11 and 42 through 48, these allegations pertain to crime occurring at the United Inn—not to crime occurring at hotels generally. As a result, the Court finds that these allegations are relevant and should not be stricken.  As to the remainder of the allegations, they pertain to Defendant's knowledge of the prevalence of sex trafficking and the failure to prevent it.  These allegations are therefore relevant to Plaintiff's claims.  See Naples Hotel, 476 F. Supp. 3d at 1259 n.5 (finding that "the allegations regarding the defendants' knowledge of the prevalence of sex trafficking and the failure to prevent it are relevant to the plaintiffs' claims").  Ultimately, the Court finds that "[a]llegations regarding [Defendant's] knowledge of the prevalence of sex trafficking at hotels in general and at [its] hotel in particular, and the failure to prevent it, are relevant to the types of claims [Plaintiff] asserts." C.S. v. Wyndham Hotels & Resorts, Inc., 538 F. Supp. 3d 1284, 1294 (M.D. Fla. 2021).  Because the drastic remedy of striking the allegations is not justified here, Defendant's motion is **DENIED**.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss Complaint and alternatively, Motion to Strike Portions of Complaint [Doc. 16] is **DENIED**. The parties are reminded that they have six months to complete discovery, which shall commence thirty days after Defendant files it answer.

**SO ORDERED** this 24th day of May, 2022.

_____

**J. P. BOULEE**
United States District Judge

Doc. 41

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **G.W.,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION FILE**<br>**NO. 1:20-CV-05232-JPB** |
| **NORTHBROOK INDUSTRIES, INC., d/b/a UNITED INN AND SUITES** | |
| **Defendants.** | |

## ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT NORTHBROOK INDUSTRIES, INC. D/B/A UNITED INN AND SUITES

COMES NOW, Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites ("United Inn" or "Defendant"), by and through the undersigned counsel, and hereby files this its Answer and Affirmative Defenses to Plaintiff's Complaint for Damages ("Complaint"), showing this Honorable Court as follows:

## FIRST AFFIRMATIVE DEFENSE

Pursuant to F.R.C.P. 12(b)(6), Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The injuries alleged were caused by the unforeseeable and intervening conduct of a third-party tortfeasor.

## THIRD AFFIRMATIVE DEFENSE

Any claims against Defendant are barred on the grounds that no act or omission on the part of Defendant caused or contributed to any injury or damage sustained by Plaintiff.

## FOURTH AFFIRMATIVE DEFENSE

The actions and/or conduct and/or omissions of other individuals, entities, parties or non-parties other than Defendant were the proximate cause of any damages claimed by Plaintiff.

## FIFTH AFFIRMATIVE DEFENSE

Defendant affirmatively pleads and gives notice that non-parties are at fault for the incident which serves as the basis of Plaintiff's Complaint and are therefore liable for any and all damages that Plaintiff seeks as a result of the alleged incident. While the identity of all the at-fault non-parties is presently unknown, Plaintiff alleges that she was trafficked on Defendant's premises in June and July 2017. Any award of damages should be apportioned to the responsible non-parties pursuant to O.C.G.A. § 51-12-33.

## SIXTH AFFIRMATIVE DEFENSE

To the extent as may be shown by evidence through discovery, Defendant raises all affirmative defenses as set forth in FRCP 8 and none of those defenses are waived.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages were directly and proximately caused by Plaintiff's own contributory/comparative negligence and failure to exercise ordinary care and as such, Plaintiff is not entitled to recover from Defendant.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the Assumption of the Risk Doctrine.

## NINTH AFFIRMATIVE DEFENSE

Defendant is not liable to Plaintiff because Defendant breached no duty owed to Plaintiff in regard to the occurrence giving rise to Plaintiff's Complaint.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to recover from Defendant because Plaintiff's knowledge of the alleged hazard was at least equal to the knowledge of Defendant.

## ELEVENTH AFFIRMATIVE DEFENSE

The imposition of punitive or exemplary damages against Defendant would violate its constitutional rights under the Due Process clause of the Fifth and

Fourteenth Amendments to the United States Constitution, the Excessive Fines clause of the Eighth Amendment to the United States Constitution, the Double Jeopardy clause of the Fifth Amendment to the United States Constitution, and similar provisions in the Georgia Constitution, applicable statutes and court rules.

## TWELFTH AFFIRMATIVE DEFENSE

The statutes of the State of Georgia which would authorize the imposition of aggravated, exemplary or punitive damages, are contrary by their express terms and as they may be applied to this Defendant in this case, to the Constitution of the United States and the Georgia Constitution, and are therefore barred inasmuch as the statutes allow for deprivation of property without due process of law, violate equal protection of the law by providing fewer protections for civil litigants, are criminal statutes which provide for the imposition of monetary funds, and are void, inasmuch as they allow for the imposition of an excessive fine (U.S. Const., Amend. V, VIII and XIV; Georgia Const. Art. 1, §1, ¶¶ 1, 2 and 17.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to name and join indispensable and necessary parties pursuant to F.R.C.P. 19.

## FOURTEENTH AFFIRMATIVE DEFENSE

By way of response and answer to allegations contained in Plaintiff's Complaint, and subject to all defenses set forth, Defendant shows this Honorable Court as follows:

1.

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of Plaintiff's Complaint and can neither admit nor deny same.  By way of further response, Defendant denies any assertion that Defendant's conduct contributed in any way to the alleged trafficking.

2.

Defendant denies the allegations contained in Paragraph 2 of Plaintiff's Complaint and all subparts thereof.

## PARTIES, JURISDICTION AND VENUE

3.

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of Plaintiff's Complaint and can neither admit nor deny same.  Accordingly, by operation of law, said allegations are denied.

4.

Defendant admits the allegations contained in Paragraph 4 of Plaintiff's Complaint.  By way of further response, Defendant denies, as alleged in footnote 2 of Plaintiff's Complaint, that any of its officers, directors, agents, employees or representatives engaged in any wrongful action, inaction or conduct, which give rise in any way to a cause of action.

5.

Defendant admits the allegations contained in Paragraph 5 of Plaintiff's Complaint.

6.

Defendant admits the allegations contained in Paragraph 6 of Plaintiff's Complaint.

7.

Defendant admits the allegations contained in Paragraph 7 of Plaintiff's Complaint.

## **INTRODUCTION**

8.

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in sentence 1 of Paragraph 8 of Plaintiff's

Complaint and can neither admit nor deny same.  Accordingly, by operation of law, said allegations are denied.  Upon information and belief, Defendant admits sentence 2 of Paragraph 8 of Plaintiff's Complaint.

9.

Defendant admits the allegations contained in Paragraph 9 of Plaintiff's Complaint.

10.

Defendant denies the allegations contained in Paragraph 10 of Plaintiff's Complaint.

11.

Defendant denies the allegations contained in Paragraph 11 of Plaintiff's Complaint.

12.

Defendant denies as pled the allegations contained in Paragraph 12 of Plaintiff's Complaint.

13.

Defendant denies as pled the allegations contained in Paragraph 13 of Plaintiff's Complaint.

14.

Defendant denies the allegations contained in Paragraph 14 of Plaintiff's Complaint.

15.

Defendant denies the allegations contained in Paragraph 15 of Plaintiff's Complaint.

### A.     Plaintiff's Minor Sex Trafficking at the United Inn

16.

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of Plaintiff's Complaint and can neither admit nor deny same.  Accordingly, by operation of law, said allegations are denied.

17.

Defendant denies the allegations contained in Paragraph 17 of Plaintiff's Complaint.

18.

Paragraph 18 of Plaintiff's Complaint contains a purported statement of law and does not require a response.  To the extent Paragraph 18 suggests that Defendant breached any duty owed to Plaintiff, those allegations are denied.

19.

Paragraph 19 of Plaintiff's Complaint contains a statement of law to which no response is required.  To the extent Paragraph 19 suggests that Defendant breached any statutes or other duty owed to Plaintiff, those allegations are denied.

20.

Defendant denies the allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.

Defendant denies the allegations contained in Paragraph 21 of Plaintiff's Complaint.

22.

Defendant denies the allegations contained in Paragraph 22 of Plaintiff's Complaint.

23.

Defendant denies the allegations contained in Paragraph 23 of Plaintiff's Complaint.

24.

Defendant denies the allegations contained in Paragraph 24 of Plaintiff's Complaint.

25.

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of Plaintiff's Complaint and can neither admit nor deny same. Accordingly, by operation of law, said allegations are denied.

26.

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of Plaintiff's Complaint and can neither admit nor deny same. Accordingly, by operation of law, said allegations are denied.

27.

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of Plaintiff's Complaint and can neither admit nor deny same. Accordingly, by operation of law, said allegations are denied.

28.

Defendant denies the allegations contained in Paragraph 28 of Plaintiff's Complaint.

29.

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of Plaintiff's Complaint and can neither admit nor deny same.  Accordingly, by operation of law, said allegations are denied.

30.

Defendant denies the allegations contained in Paragraph 30 of Plaintiff's Complaint.

31.

Defendant denies the allegations contained in Paragraph 31 of Plaintiff's Complaint.

32.

Defendant denies the allegations contained in Paragraph 32 of Plaintiff's Complaint.

33.

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in sentence 1 of Paragraph 33 of Plaintiff's Complaint and can neither admit nor deny same.  Accordingly, by operation of law, said allegations are denied.  Defendant admits that it collects revenue from room

rentals, but denies knowledge that any room rentals for used for purported trafficking as alleged in sentence 2 of Paragraph 33 of Plaintiff's Complaint.

34.

Defendant denies the allegations contained in Paragraph 34 of Plaintiff's Complaint.

35.

Defendant denies the allegations contained in Paragraph 35 of Plaintiff's Complaint.

36.

Defendant denies the allegations contained in Paragraph 36 of Plaintiff's Complaint.

37.

Defendant denies the allegations contained in Paragraph 37 of Plaintiff's Complaint.

38.

Defendant admits the allegations contained in Paragraph 38 of Plaintiff's Complaint.

39.

Defendant denies the allegations contained in Paragraph 39 of Plaintiff's Complaint.

40.

Defendant admits that it receives revenue from room rentals at United Inn. Defendant denies knowledge, actually or constructively, that it received revenue from room rentals at any time for any alleged trafficking at its facility.

41.

Defendant denies the allegations contained in Paragraph 41 of Plaintiff's Complaint.

**B.    Sex Trafficking and Other Crimes Were Frequent and Foreseeable at the United Inn**

42.

Defendant denies the allegations contained in Paragraph 42 of Plaintiff's Complaint.

43.

Defendant denies the allegations contained in Paragraph 43 of Plaintiff's Complaint.

44.

Defendant denies the allegations contained in Paragraph 44 of Plaintiff's Complaint and all subparts and footnotes thereof.

45.

Defendant denies the allegations contained in Paragraph 45 of Plaintiff's Complaint and all subparts and footnotes thereof.

46.

Defendant denies the allegations contained in Paragraph 46 of Plaintiff's Complaint and all subparts thereof.

47.

Defendant denies as pled the allegations contained in Paragraph 47 of Plaintiff's Complaint.

48.

Defendant admits the allegations contained in Paragraph 48 of Plaintiff's Complaint. By way of further response, the referenced citations have no relation to the incident referenced in Plaintiff's Complaint.

49.

Defendant denies the allegations contained in Paragraph 49 of Plaintiff's Complaint.

50.

Defendant denies the allegations contained in Paragraph 50 of Plaintiff's Complaint.

**C.    Northbrook's Knowledge of Sex Trafficking**

51.

Defendant denies the allegations contained in Paragraph 51 of Plaintiff's Complaint.

52.

Defendant denies the allegations contained in Paragraph 52 of Plaintiff's Complaint.

53.

Defendant denies the allegations contained in Paragraph 53 of Plaintiff's Complaint.

54.

Defendant denies the allegations contained in Paragraph 54 of Plaintiff's Complaint.

55.

Defendant denies the allegations contained in Paragraph 55 of Plaintiff's Complaint.

56.

Defendant denies the allegations contained in Paragraph 56 of Plaintiff's Complaint and all subparts thereof.

57.

Defendant denies the allegations contained in Paragraph 57 of Plaintiff's Complaint.

58.

Defendant denies the allegations contained in Paragraph 58 of Plaintiff's Complaint.

59.

Defendant denies the allegations contained in Paragraph 59 of Plaintiff's Complaint.

60.

Defendant denies the allegations contained in Paragraph 60 of Plaintiff's Complaint.

61.

Defendant denies the allegations contained in Paragraph 61 of Plaintiff's Complaint and all subparts thereof.

62.

Defendant denies the allegations contained in Paragraph 62 of Plaintiff's Complaint.

63.

Defendant denies the allegations contained in Paragraph 63 of Plaintiff's Complaint.

64.

Defendant denies the allegations contained in Paragraph 64 of Plaintiff's Complaint.

65.

Defendant admits the allegations contained in Paragraph 65 of Plaintiff's Complaint.  By way of further response, Defendant complied at all pertinent times with O.C.G.A. § 16-5-47 and other pertinent statutes.

66.

Defendant denies the allegations contained in Paragraph 66 of Plaintiff's Complaint.

67.

Defendant denies the allegations contained in Paragraph 67 of Plaintiff's Complaint.

68.

Defendant denies the allegations contained in Paragraph 68 of Plaintiff's Complaint.

69.

Defendant denies the allegations contained in Paragraph 69 of Plaintiff's Complaint.

70.

Defendant denies the allegations contained in Paragraph 70 of Plaintiff's Complaint.

## COUNT I
## STATUTORY LIABILITY

### 18 U.S.C. § 1595

71.

Defendant realleges and incorporates by reference its answers and defenses to Paragraphs 1 through 70 of Plaintiff's Complaint, as though fully set forth herein.

72.

Defendant denies the allegations contained in Paragraph 72 of Plaintiff's Complaint.

73.

Defendant denies the allegations contained in Paragraph 73 of Plaintiff's Complaint.

74.

Defendant denies the allegations contained in Paragraph 74 of Plaintiff's Complaint.

75.

Defendant denies the allegations contained in Paragraph 75 of Plaintiff's Complaint.

76.

Defendant denies the allegations contained in Paragraph 76 of Plaintiff's Complaint.

77.

Defendant denies the allegations contained in Paragraph 77 of Plaintiff's Complaint.

78.

Defendant denies the allegations contained in Paragraph 78 of Plaintiff's Complaint.

79.

Defendant denies the allegations contained in Paragraph 79 of Plaintiff's Complaint.

80.

Defendant denies the allegations contained in Paragraph 80 of Plaintiff's Complaint.

81.

Defendant denies the allegations contained in Paragraph 81 of Plaintiff's Complaint.

## **COUNT II**
## **NEGLIGENCE ALLEGATIONS**

82.

Defendant realleges and incorporates by reference its answers and defenses to Paragraphs 1 through 81 of Plaintiff's Complaint, as though fully set forth herein.

83.

Defendant admits the allegations contained in Paragraph 83 of Plaintiff's Complaint.

84.

Defendant admits that it owes a duty to invitees under law.  It specifically denies it voluntarily undertook additional actions that created additional duties and,

except as stated, denies the allegations contained in Paragraph 84 of Plaintiff's Complaint.

85.

Defendant denies the allegations contained in Paragraph 85 of Plaintiff's Complaint.

86.

Defendant denies as pled the allegations contained in Paragraph 86 of Plaintiff's Complaint.

87.

Defendant denies the allegations contained in Paragraph 87 of Plaintiff's Complaint and all subparts thereof.

88.

Defendant denies the allegations contained in Paragraph 88 of Plaintiff's Complaint and all subparts thereof.

89.

Defendant denies as pled the allegations contained in Paragraph 89 of Plaintiff's Complaint.

90.

Defendant denies the allegations contained in Paragraph 90 of Plaintiff's Complaint.

91.

Defendant denies the allegations contained in Paragraph 91 of Plaintiff's Complaint.

92.

Defendant denies the allegations contained in Paragraph 92 of Plaintiff's Complaint.

93.

Defendant denies the allegations contained in Paragraph 93 of Plaintiff's Complaint.

94.

Defendant denies the allegations contained in Paragraph 94 of Plaintiff's Complaint.

95.

Defendant denies the allegations contained in Paragraph 95 of Plaintiff's Complaint.

96.

Defendant denies the allegations contained in Paragraph 96 of Plaintiff's Complaint.

97.

Defendant denies the allegations contained in Paragraph 97 of Plaintiff's Complaint.

98.

Defendant denies the allegations contained in Paragraph 98 of Plaintiff's Complaint.

99.

Defendant denies the allegations contained in Paragraph 99 of Plaintiff's Complaint.

100.

Defendant denies the allegations contained in Paragraph 100 of Plaintiff's Complaint.

101.

Defendant denies the allegations contained in Paragraph 101 of Plaintiff's Complaint.

102.

Defendant denies the allegations contained in Paragraph 102 of Plaintiff's Complaint.

103.

Defendant denies the allegations contained in Paragraph 103 of Plaintiff's Complaint.

104.

Defendant denies the allegations contained in Paragraph 104 of Plaintiff's Complaint.

105.

Defendant denies the allegations contained in Paragraph 105 of Plaintiff's Complaint and all subparts thereof.

106.

Defendant denies the allegations contained in Paragraph 106 of Plaintiff's Complaint.

107.

Defendant denies the allegations contained in Paragraph 107 of Plaintiff's Complaint.

108.

Defendant denies the allegations contained in Paragraph 108 of Plaintiff's Complaint.

109.

Defendant denies the allegations contained in Paragraph 109 of Plaintiff's Complaint.

## **DAMAGES**

110.

Defendant realleges and incorporates by reference its answers and defenses to Paragraphs 1 through 109 of Plaintiff's Complaint, as though fully set forth herein.

111.

Defendant denies the allegations contained in Paragraph 111 of Plaintiff's Complaint and all subparts thereof.

112.

Defendant denies the allegations contained in Paragraph 112 of Plaintiff's Complaint.

113.

Defendant denies the allegations contained in Paragraph 113 of Plaintiff's Complaint.

114.

Defendant denies the allegations contained in the Paragraph beginning with WHEREFORE, including subsections (a) through (e).

115.

All other allegations and prayers contained in Plaintiff's Complaint not heretofore or otherwise answered are hereby denied.

WHEREFORE, having raised its affirmative defenses and fully answering every allegation of Plaintiff's Complaint, showing no liability thereunder, Defendant NORTHBROOK INDUSTRIES, INC. D/B/A UNITED INN AND SUITES requests that Plaintiff's Complaint be dismissed with prejudice with all costs cast upon Plaintiff and, absent same, requests a trial by jury of twelve.

Respectfully submitted this 7th day of June, 2022.

**HALL BOOTH SMITH, P.C.**

*/s/ Don B. Brown*

_____

DON B. BROWN
Georgia Bar No. 496667
WILLIAM R. STORY
Georgia Bar No. 340477
*Attorneys for Defendant Northbrook Industries, Inc., d/b/a United Inn and Suites*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
404-954-5000 : 404-954-5020 (Fax)
dbrown@hallboothsmith.com
wstory@hallboothsmith.com

26

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **G.W.,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION FILE** |
| | **NO. 1:20-CV-05232-JPB** |
| **NORTHBROOK INDUSTRIES, INC., d/b/a UNITED INN AND SUITES** | |
| **Defendants.** | |

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing **ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT NORTHBROOK INDUSTRIES, INC. D/B/A UNITED INN AND SUITES** has been prepared with one of the following font and point selections approved by the Court in LR 5.1, NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

[Signatures on Next Page]

Respectfully submitted this 7th day of June, 2022.

**HALL BOOTH SMITH, P.C.**

*/s/ Don B. Brown*

_____

DON B. BROWN
Georgia Bar No. 496667
WILLIAM R. STORY
Georgia Bar No. 340477
*Attorneys for Defendant Northbrook*
*Industries, Inc., d/b/a United Inn and*
*Suites*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
404-954-5000 : 404-954-5020 (Fax)
dbrown@hallboothsmith.com
wstory@hallboothsmith.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **G.W.,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION FILE** |
| | **NO. 1:20-CV-05232-JPB** |
| **NORTHBROOK INDUSTRIES, INC., d/b/a UNITED INN AND SUITES** | |
| **Defendants.** | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 7th day of June, 2022 filed the within foregoing

**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT**

**NORTHBROOK INDUSTRIES, INC. D/B/A UNITED INN AND SUITES** via

CM/ECF, which automatically sends an electronic copy of all counsel of records as

follows:

Richard W. Hendrix
W. Carl Lietz, III
David H. Bouchard
FINCH McCRANIE, LLP
225 Peachtree Street NE
1700 South Tower
Atlanta, Georgia 30303
rhendrix@finchmccranie.com
carl@finchmccranie.com
david@finchmccranie.com
*Attorneys for Plaintiff G.W.*

Jonathan S. Tonge
Patrick J. McDonough
ANDERSEN, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard
Suite 4000
Duluth, Georgia 30097
jtonge@atclawfirm.com
pmcdonough@atclawfirm.com
*Attorneys for Plaintiff G.W.*

**HALL BOOTH SMITH, P.C.**

*/s/ Don B. Brown*

_____

DON B. BROWN
Georgia Bar No. 496667
WILLIAM R. STORY
Georgia Bar No. 340477
*Attorneys for Defendant Northbrook Industries, Inc., d/b/a United Inn and Suites*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
404-954-5000 : 404-954-5020 (Fax)
dbrown@hallboothsmith.com
wstory@hallboothsmith.com

4

Doc. 74

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

### 1:20-cv-05231-JPB | A.G. v. Northbrook Industries, Inc.
### 1:20-cv-05232-JPB | G.W. v. Northbrook Industries, Inc.
### Honorable J. P. Boulee

Minute Sheet for proceedings held via ZOOM on 06/14/2023.

TIME COURT COMMENCED: 9:30 A.M.
TIME COURT CONCLUDED: 10:00 A.M.          COURT REPORTER: Penny Coudriet
TIME IN COURT: 00:30                                   DEPUTY CLERK: Jennifer Lee
OFFICE LOCATION: Atlanta

| | |
|---|---|
| ATTORNEY(S) PRESENT: | David Bouchard representing G. W.<br>Donald Brown representing Northbrook Industries, Inc.<br>William Story representing Northbrook Industries, Inc. |
| PROCEEDING CATEGORY: | Status Conference(Other Proceeding Non-evidentiary); |
| MINUTE TEXT: | The Court conducted a status conference to resolve a discovery dispute. The Court directed parties to either mediate the matter in the next couple of weeks or if a resolution is not reached, Plaintiff may file a motion for sanctions. |
| HEARING STATUS: | Hearing Concluded |

Doc. 114

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **G.W.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE** |
| **vs.** | : | |
| | : | **NO. 1:20-cv-05232-JPB** |
| **NORTHBROOK INDUSTRIES,** | : | |
| **INC., D/B/A UNITED INN AND** | : | |
| **SUITES,** | : | |
| | : | |
| **Defendant.** | : | |

## PLAINTIFF'S MOTION FOR SANCTIONS AND MEMORANDUM IN SUPPORT

Plaintiff hereby moves for sanctions against Defendant Northbrook Industries,

Inc. d/b/a United Inn and Suites, and in support thereof respectfully submits the

enclosed memorandum of law.

## **TABLE OF CONTENTS**

**BACKGROUND**………………………………………………………....2

I.   In June 2022—Before Fact Discovery Started—Defendant
     Agreed to Search and Produce Its Responsive Electronically
     Stored Information (ESI)……………………………………….…...2

II.  In July 2022, Plaintiff Served Discovery Requests on
     Defendant, and Defendant Responded in August 2022………......................3

III. In January 2023, Plaintiff Served a 30(b)(6) Notice on
     Defendant and a Request to Produce Documents Responsive
     to the 30(b)(6) Topics…………………………………………….....4

IV.  Plaintiff's February 2023 Depositions of Defendant's
     30(b)(6) Representative, Owner, and Manager Revealed
     Defendant Did Not Search Its ESI or Relevant Files
     Before Responding to Plaintiff's Discovery Requests
     and Notice to Produce……..………………………………………....5

V.   Plaintiff Spent the Next Two Months Trying to Get Defendant
     to Search for and Produce the Documents Plaintiff Requested in
     July 2022 and January 2023…………………………………….…...6

VI.  On April 20, 2023, Approximately 40 Days After Fact
     Discovery Closed, Defendant Produced 3,500 Pages—Six
     Times More than Defendant Produced in Fact Discovery—
     Including Many Critical Documents……………………………….....9

VII. In the Weeks After Defendant's Untimely April
     Production of Key Documents, Plaintiff Scrambled to
     Revise Her Discovery Strategies, Retake Depositions,
     and Re-Visit Previous Discovery and Investigative Work…………..…..12

**ARGUMENT**……………………………………………………………**14**

   I.   Defendant Must Be Sanctioned Under Rule 26(g)(3) Because
        Defendant Did Not Conduct a "Reasonable Inquiry" of the
        Records in its Possession, Custody, or Control Before
        Responding to Plaintiff's Discovery Requests……………………………..17

  II.   In Addition to Mandated Sanctions Under Rule 26(g)(3),
        Sanctions are Also Warranted Under Rules 37(b)(2) and (c)(1)
        Because of the Magnitude of Defendant's Negligence, Defendant's
        Delay in Correcting It, and the Prejudice to Plaintiff………………….....19

 III.   Plaintiff Requests Targeted Sanctions Under Rules 26(g)(3),
        37(b)(2), and 37(c)(1), and the Court's Inherent Powers Because of
        Defendant's Discovery Negligence………………………………………...24

In this case concerning sex trafficking of a minor, Defendant responded to Plaintiff's July 2022 discovery requests without searching its computer, emails, text messages, sex trafficking file, and staffing files.  In February 2023 depositions, Plaintiff uncovered the problem.  In early April, after discovery closed on March 10th, Defendant began searching its ESI and relevant files.  On April 28th, Defendant produced 3,500 new pages—six times more than it produced in discovery.  The late documents, which are the most critical in the case, include discussions with law enforcement about crime and commercial sex, sex trafficking training materials, lists of staff who worked at the hotel, and a notice of a "missing" 16-year-old trafficked at the hotel.  Defendant's late production conflicts with its prior responses on key issues, like who worked at the hotel, staff training on crime, and communications with law enforcement.  Defendant "must" be sanctioned under Rule 26(g)(3) because it did not make a "reasonable inquiry" before responding to discovery requests.

Sanctions are also appropriate under Rules 37(b)(2) and (c)(1) because of the scale of Defendant's discovery negligence, Defendant's delay in correcting it, and the prejudice to Plaintiff.  Defendant's pivotal late production meant Plaintiff wasted and misdirected resources in discovery and then had to re-do discovery work and revise strategies *after* discovery closed on March 10th.  For these reasons, the sanctions outlined on pages 24-25 must *and* should be imposed here.

1

## BACKGROUND

On December 28, 2020, Plaintiff sued Defendant Northbrook Industries, Inc.
d/b/a United Inn & Suites ("Defendant" or "United Inn") and alleged that United Inn
is liable to her for violation of 18 U.S.C. 1595(a) and for negligence because she was
sex trafficked as a minor at United Inn in 2017.  (Doc. 1).[1]

On March 15, 2021, Defendant served its initial disclosures.  (Doc. 26).
Defendant never supplemented its initial disclosures.  On June 7, 2022, Defendant
answered the Complaint (Doc. 41), after the Court resolved Rule 12(b)(6) briefing,
(*see, e.g.*, Doc. 34).  The case was assigned to a six-month discovery period, with
discovery opening on July 7, 2022.  (Doc. 40 at 16).  On December 2, 2022, the
parties filed a joint motion to extend the fact discovery deadline to March 10, 2023
(Doc. 50), which the Court granted on December 5, 2023.  The Court instructed:
"Given this lengthy extension, future extensions are unlikely."

## I.   In June 2022—Before Fact Discovery Started—Defendant Agreed to Search for and Produce Its Responsive Electronically Stored Information (ESI).

On June 15, 2022, before discovery began on July 7, 2022, Plaintiff wrote
Defendant to address ESI: "[T]o avoid delay later, I think it makes sense for us to

---

[1] Plaintiff's traffickers pled guilty to sex trafficking Plaintiff as a minor at
United Inn in violation of 18 U.S.C. § 1591. *See, e.g., United States v. Obie*, Case
No. 1:18-cr-00424-MLB-JKL (N.D.GA., Nov. 6, 2020), ECF No. 60.

agree on search terms to use on ESI. To get the ball rolling, please see the attached list[.]"   (Exhibit 1).   Plaintiff proposed that certain custodians' ESI should be searched: "At a minimum, any corporate/entity email addresses used to discuss hotel business should be searched. If there are other email addresses used for hotel business, those should be searched too."   (*Id.*)   Defendant had "no objection" to Plaintiff's proposal.  (Exhibit 2).

## II.   In July 2022, Plaintiff Served Discovery Requests on Defendant, and Defendant Responded in August 2022.

On July 7, 2022—the day discovery opened—Plaintiff served Defendant with written discovery requests for Defendant's documents on a variety of subjects, including commercial sex, Plaintiff and other minor victims, security at the hotel, crime at the hotel, staff training, names of staff, and more.  (Exhibit 3).  Plaintiff's requests sought Defendant's responsive "Documents" and "Communications," defined broadly to include ESI—*e.g.*, e-mails, text messages, and computer records. (*Id.*)  On August 17, 2022, Defendant responded and produced 511 pages.  (Exhibit 4).  The production did not include emails, text messages, training records, sex trafficking materials, payroll records, or staffing records.   Plaintiff presumed

Defendant had conducted a reasonable inquiry and was acting in good faith.  At that point, Plaintiff had no reason to believe otherwise.[2]

### III.   In January 2023, Plaintiff Served Defendant With a 30(b)(6) Notice and a Request to Produce Documents Responsive to the 30(b)(6) Topics.

On January 9, 2023, Plaintiff served Defendant with a Notice of 30(b)(6) Deposition of Defendant *and* a Notice to Produce.  (Exhibit 5).  The Notice to Produce required Defendant to produce "documents responsive to the topics set forth in Exhibit A that have not been produced previously in this litigation[.]"  (*Id.*)  The topics included the hotel's "security" (Topic 3), "training of managers and employees" (Topic 6), "communications with law enforcement regarding the United Inn & Suites" (Topic 7), "responses to Plaintiff's discovery requests" (Topic 17), and "anti-trafficking training materials" (Topic 18).  (*Id.*)  Defendant did not confer with Plaintiff about the notice and did not produce any additional documents in response to it.

---

[2] On October 21, 2022, Defendant produced an additional 74 pages in response to supplemental requests.  Again, Defendant did not produce ESI, training records, sex trafficking materials, or staffing records.  In total, Defendant produced 585 pages prior to the February 2023 depositions.

**IV.   Plaintiff's February 2023 Depositions of Defendant's 30(b)(6) Representative, Owner, and Manager Revealed Defendant Did Not Search Its ESI and Relevant Paper Files Before Responding to Plaintiff's Discovery Requests.**

During depositions on February 22, 2023—more than 6 months into fact discovery and 16 days before the fact discovery deadline—Defendant's 30(b)(6) representative, owner, and manager admitted that Defendant had not searched significant ESI sources.   As of February 22nd, Defendant had not searched its computer, emails, text messages, sex trafficking file, staff files, or communications with law enforcement about commercial sex at the hotel.   Plaintiff learned about Defendant's negligence because of deposition questions about Defendant's production.   While the February depositions established that Defendant did not make a "reasonable inquiry" before responding to Plaintiff's discovery requests, the gravity of Defendant's discovery negligence and whether Defendant would act in a timely fashion to correct it remained unclear.[3]

---

[3] Plaintiff did not understand the scale and significance of Defendant's negligence until April 20th, more than 40 days after the fact discovery deadline, when Defendant produced approximately 3,500 pages, many of which were hot documents.

V.    **Plaintiff Spent the Next Two Months Trying to Get Defendant to Search for and Produce the Documents Plaintiff First Requested in July 2022.**

On February 23, 2023, the day after the revelatory depositions, Plaintiff asked Defendant to promptly search for and produce responsive documents from the newly disclosed sources because such records had been requested in July 2022.  (Exhibits 6 - 7).  On February 24, 2023, Plaintiff served supplemental discovery requests that essentially duplicated Plaintiff's July requests.  (Exhibit 8).  On March 8, 2023, Plaintiff's counsel followed up about Defendant's "business emails, business text messages, payroll records, and other relevant documents" that Plaintiff "ha[d] not yet received" "even though the depositions … two weeks ago" revealed that such documents were in Defendant's possession "and [Plaintiff's] original requests for production of documents served in July 2022 asked for such documents."   (Exhibit 9).  On March 20, 2023, Plaintiff followed up again.  (Exhibit 10).

On March 27, 2023—Defendant's deadline to respond to Plaintiff's February supplemental discovery requests (which duplicated the July 2022 requests)— Defendant did not serve any responses whatsoever.  Defendant did not request an extension of time from Plaintiff and Plaintiff did not grant one.  On March 28, 2023, Plaintiff emailed about Defendant's failure to respond.  (Exhibit 11).  On March 29, 2023, Defendant responded, in part: "I am fully confident that I can get the complete responses by next week… [I] represent to you that I will get you full document

production, to the extent there are documents, next week." (Exhibit 12).[4]  Thus,

Defendant first announced its plan to provide "complete responses" and a "full

document production" approximately four weeks *after* the March 10th fact discovery

deadline.  It did not explain why its plan to provide "complete responses" and a "full

document production" was not set in motion in July 2022, when Plaintiff's discovery

requests were served.  Or in January 2023, when Plaintiff's 30(b)(6) notice and

notice to produce were served.  Or on February 22nd, when Defendant's 30(b)(6)

representative, owner, and manager testified that major document sources had not

been searched.  Or in the following weeks when Plaintiff served supplemental

requests and repeatedly contacted Defendant about the overdue documents.

On March 31, 2023, Plaintiff responded to Defendant's March 29th "complete

responses by next week" email and gave Defendant until April 14th to respond to

Plaintiff's discovery requests.  (Exhibit 13).  If Defendant did not, Plaintiff intended

to "seek[] court intervention."  (*Id.*)  Plaintiff also emailed about potentially re-

---

[4] On April 18th, Plaintiff learned that Defendant intended to make one ESI
production in *AG*, *GW*, and the related *JG* matter pending before Judge Geraghty,
Case No. 1:20-cv-05233-SEG.  (Exhibit 19).  In the *JG* matter, Defendant's counsel
wrote on March 29th that she had "made arrangements to extract from my clients'
devices the emails and text messages that are responsive to the outstanding requests.
The current plan is for that to happen next week."  (Exhibit 12a).  On April 6th, she
responded to Plaintiff's request to run search terms across Defendant's data,
(Exhibits 12b and Exhibit 12c).

opening Defendant's depositions depending on the contents of the late documents. (Exhibit 14).   Plaintiff still did not know the volume or significance of the forthcoming documents.  (*See, e.g.,* Exhibit 15, Exhibit 16).

On Friday, April 14th—the agreed deadline—Defendant did not produce anything.  Instead, Defendant emailed and said it was "midstream on the document review."  (Exhibit 16).  On Monday, April 17th, Plaintiff expressed her intention to "move forward with seeking court intervention" and asked to schedule a telephonic conference in accordance with the Court's standing order.  (Exhibit 17).  On April 18th, Defendant responded: "[we are] [g]etting everything batestamped and will have you discovery responses by noon today."  (Exhibit 18).  Later that day, Defendant produced 87 hard-copy documents (i.e., not ESI), (Exhibit 19), including staff lists with many staff member names never previously identified or disclosed.  (*See* FN 4).   Defendant also produced an undated purported sex trafficking training document.  (Exhibit 20).  Defendant did not explain why such documents were not produced during the discovery period (or with its initial disclosures).  As for the ESI: "We have not yet received the results but believe we are getting them this week and will immediately supplement with those communications."  (Exhibit 19).

**VI.    On April 20, 2023, Approximately 40 Days After Fact Discovery Closed, Defendant Produced 3,500 Pages—Six Times More than Defendant Produced in Fact Discovery—Including Many Critical Documents.**

On April 20th and 26th, more than forty days after discovery closed on March 10th, Defendant produced approximately 3,500 pages—more than six times the 585 pages it produced in discovery.  (Exhibit 19a).  Defendant's late April productions included numerous critical documents:

- Sex trafficking training materials, including a document stating, "hotels and motels are one of the locations where sex trafficking is known to occur at higher rates," and another advertising a free training course with "basic information about how to identify human trafficking and/or related activity."  (Exhibit 20).

- A letter from the Dekalb County Police Department three months prior to Plaintiff's trafficking at United Inn that says, in relevant part: "[t]he Dekalb County Police Department is able and willing to work with you on efforts to implement prevention measures at your hotel and answer any questions … contact Lieutenant DC Thomas at 404-822-5308 or dcthomas1@dekalbcountyga.gov."  (Exhibit 21).

- Correspondence with the FBI about its investigation of Plaintiff's traffickers.

- Text messages among the hotel's owner, manager, and security guards about crime at the hotel, including commercial sex activity.  For example, texts about a

shooting two months before Plaintiff was trafficked with another minor at United Inn that that says, "[s]o far all I know is that it was prostitution related," and others about women selling "sexual relations" at United Inn.

- Staff lists, including names of people allegedly working at the hotel during the relevant period but never disclosed in fact discovery.[5]

- Emails from a law enforcement investigator to United Inn about J.G. (plaintiff in the related case pending before Judge Geraghty, No. 1:20-cv-05233-SEG), a 16-year-old "missing person" suspected of being at United Inn for weeks.  The email attached a Be On the Lookout Notice with J.G.'s name, photo, and physical description. (Exhibit 26).

Defendant's failure to produce these sorts of documents until late April—after the fact discovery deadline—resulted from discovery negligence.  More troubling,

---

[5] Plaintiff is unsure who worked at the hotel during the relevant period because Defendant has produced conflicting information about who worked at the hotel. (*See* Exhibit 22 (highlighting conflicts in Defendant's responses and production in Exhibits 22a - 22d)).

Defendant's inconsistent and incomplete disclosures about its staff has undermined Plaintiff's ability to investigate the case adequately.  Plaintiff is hamstrung in her ability to examine issues at the heart of the case—for example, Defendant's claim that it trained its staff on signs of crime, including commercial sex (Exhibit 24 at 183:4 – 186:21, 188:2 – 188:14); that it was unaware of commercial sex activity at the hotel and that its staff did not report such activity (*see, e.g.*, Exhibit 24 at 64:3 – 65:10, 120:24 – 121:21); and that it vetted its staff before hiring them through background checks and did not have reason to suspect staff complicity in crime at the hotel, (Exhibit 24 at 40:18 – 41:6).

many of the untimely April 2023 documents and responses conflict with Defendant's prior discovery responses:

- During fact discovery, Defendant purported to provide a full list of who worked at the hotel during the relevant period. (Exhibit 22a at Attachment A; Exhibit 22b at pp. 3-4). After fact discovery, Defendant disclosed new alleged staff members, and provided first names only for some staff, no contact information for many, and, in May 2023, admitted it paid some staff in cash and did not keep records of the payments. (Exhibit 23 at 361:5 – 363:20; 380:18 – 381:2; 395:23 – 396:7).

- During fact discovery, Defendant repeatedly claimed it had no training documents about sex trafficking indicators or red flags. (*See, e.g.,* Exhibit 24 at 187:13-20; *see also* Exhibit 22b at p. 12).[6] After fact discovery, Defendant shifted course and produced an undated sex trafficking training document. (Exhibit 20). Defendant suddenly claimed the document was in its "sex trafficking file" for years. (Exhibit 25 at 147:24 – 148:25; Exhibit 23 at 381:10 – 23, 385:5 – 385:13, 388:10 – 389:5, 392:24 – 393:9).

---

[6] Defendant objected to producing Documents and Communications concerning "red flags and/or indicators of Prostitution and/or Sex Trafficking" on the basis that the request was "undefined, vague and ambiguous, such that Northbrook cannot respond to the Request." (Exhibit 4, Dft's Resp. to Document Requests at p. 29).

- During fact discovery, Defendant claimed all its communications with law enforcement were oral. (Exhibit 22b at p. 12). After fact discovery, Defendant produced text messages with law enforcement about crime and commercial sex at the hotel, a letter from law enforcement three months before Plaintiff's trafficking offering to "work with [Defendant] on efforts to implement prevention measures at your hotel," (Exhibit 21), emails with FBI relating to investigation of Plaintiff's trafficking at United Inn, and emails with law enforcement about Plaintiff J.G. being a "missing" 16-year-old at the hotel for weeks, (Exhibit 26).

- During fact discovery, Defendant's 30(b)(6) representative claimed Defendant did not know J.G. and did not recognize her. (Exhibit 24 at 210:24 – 211:8). After fact discovery, Defendant produced multiple emails it received from law enforcement with Plaintiff's name, photo, age, and description. (Exhibit 26).

**VII.   In the Weeks After Defendant's Untimely April Production of Key Documents, Plaintiff Scrambled to Revise Her Discovery Strategies, Retake Depositions, and Re-Visit Previous Discovery and Investigative Work.**

On May 2, 2023, Plaintiff reopened depositions of Defendant's owner, manager, and 30(b)(6) representative based on the late documents. (Doc. 59). In preparation, Plaintiff's counsel re-reviewed the February 22nd deposition testimonies of Defendant's owner, manager, and 30(b)(6) witnesses; re-reviewed Defendant's

12

August 2022 document production and discovery responses and compared them to Defendant's April production and supplemental responses; and developed new investigative and discovery strategies based on the late production and its conflicts with Defendant's earlier responses.

On May 3, 2023, based on the volume and significance of Defendant's late April production and the re-opened depositions, Plaintiff drafted a motion to extend discovery.   (Exhibit 27).   On May 9, 2023, Plaintiff filed the motion with Defendant's consent, (Doc. 60), and explained that the extension was necessitated by Defendant's failure to timely produce key documents, (*id.* at ¶¶3-10).  After filing the motion, Plaintiff conferred with Defendant's counsel about her efforts to conduct additional discovery on a compressed timeline. (*See, e.g.,* Exhibit 28).  She served supplemental discovery requests and subpoenas in May.  (Docs. 61-3, 70-1).

While scrambling to conduct further investigation and discovery based on Defendant's late, critical production, Plaintiff told Defendant she planned to raise Defendant's discovery negligence with the Court.  (*See, e.g.,* Exhibit 28a).  From May 11, 2023 – May 22, 2023, Plaintiff and Defendant corresponded about a draft discovery dispute statement (Exhibit 29) before Plaintiff filed it, (Doc. 68).

On June 14, 2023, the Court held a status conference regarding the discovery dispute and "directed [the] parties to either mediate the matter in the next couple of

weeks or if a resolution is not reached, Plaintiff may file a motion for sanctions."
(Doc. 74).  On June 15, 2023, Plaintiff's counsel attempted to contact the Court to schedule mediation of the discovery dispute.  (Exhibit 31).[7]  In July, the Parties agreed to participate in a global mediation of the *A.G.* and *G.W.* matters, and Plaintiff agreed not to pursue sanctions pending the mediation, which occurred on August 28th.  The Parties partially resolved the case on August 28th, but the resolution took several weeks to finalize.  On October 3rd, Plaintiff filed a motion asking the Court to refer the discovery dispute to mediation with a Magistrate Judge, (Doc. 88), and on October 18th the Court granted the motion.  (Doc. 92).  On December 1st, the Parties participated in mediation with Magistrate Walker.  (Doc. 112).  The Parties did not reach a resolution of the discovery dispute because Defendant did not agree to the sanctions Plaintiff is proposing on pages 24 - 25.  (*Id.*)

## ARGUMENT

The Court "must" impose sanctions under Rule 26(g)(3) because Defendant did not make a "reasonable inquiry" of its computer, emails, text messages, and business files before responding to Plaintiff's discovery requests.  *Malautea v.*

---

[7] Plaintiff's counsel emailed CRDJPB@gand.uscourts.gov several times to schedule the discovery dispute mediation.  (Exhibit 31).  Plaintiff's counsel learned in early October that the emails were not received because the email address omitted an underscore.

*Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993) (Rule 26(g)(3) was "designed to curb discovery abuse by explicitly encouraging the imposition of sanctions."); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1305 (11th Cir. 2003) (same). Eight months after Plaintiff sent her initial discovery requests, and weeks after discovery closed on March 10th, Defendant finally searched its ESI, sex trafficking file, and staff files, and produced 3,500 pages—six times more than it produced during discovery—including many critical documents. Defendant's failure to conduct a "reasonable inquiry" in response to Plaintiff's discovery requests triggers mandatory sanctions under Rule 26(g)(3).[8]

The magnitude of Defendant's discovery negligence, Defendant's delay in correcting it, and the resulting prejudice to Plaintiff also justifies sanctions under Rules 37(b)(2) and (c)(1) and the Court's inherent powers. *See Malautea*, 987 F.2d at 1542; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("[The] inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct[.]") Defendant failed to conduct basic searches of its hard-copy files and ESI until after discovery closed. It

---

[8] During a show cause hearing on December 12, 2023, before Judge Geraghty on a similar motion for sanctions addressing similar issues with Defendant in the related *J.G.* matter, Defendant conceded that it did not conduct a "reasonable inquiry" before responding to Plaintiff J.G.'s discovery requests. *See* No. 1:20-cv-05233-SEG.

defies belief that a party acting in good faith would fail to search such records. Plaintiff relied on Defendant's incomplete production to investigate her case, search for documents, find witnesses, depose witnesses, confer with consultants, prepare and serve discovery requests and subpoenas, and generally conduct pre-trial discovery and investigation. After Defendant's surprise deposition testimony about documents in its possession that had not been produced, Defendant dragged its feet and did not produce them for two more months—long after the fact discovery deadline. The late documents and responses materially conflict with information Defendant previously provided in discovery on critical issues like who worked at the hotel during the relevant period, whether the hotel staff was trained on sex trafficking, and the hotel's communications with law enforcement about crime. Further, the late documents materially impacted Plaintiff's investigative, discovery, and case strategies, and meant Plaintiff wasted and misdirected resources in the discovery period, and needed to revisit and re-do discovery work in the weeks after discovery was supposed to have closed.

For these reasons, and others set forth below, sanctions are warranted under Rules 26(g)(3), 37(b)(2), and 37(c)(1). Plaintiff sets forth the specific sanctions she requests on pages 24 - 25.

I. **Defendant Must Be Sanctioned Under Rule 26(g)(3) Because Defendant Did Not Conduct a "Reasonable Inquiry" of the Records in its Possession, Custody, or Control Before Responding to Plaintiff's Discovery Requests.**

Defendant must be sanctioned under Rule 26(g)(3) for failure to make a "reasonable inquiry" of its records in response to Plaintiff's discovery requests. Discovery responses "must be signed" by an attorney or a party, and "by signing an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" the responses are complete and correct. Fed. R. Civ. P. 26(g)(1); *see also In re Delta/AirTran Baggage Fee Antitrust Litigation*, 846 F.Supp.2d 1335, 1350 (2012) ("Rule 26(g) broadly 'imposes an affirmative duty to engage in pretrial discovery in a responsible manner[.]'"). The "reasonable inquiry" standard is "an objective standard similar to the one imposed by Rule 11." Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment.

Failure to conduct a "reasonable inquiry" before responding to discovery triggers *mandatory* sanctions: "If a certification violates this rule without substantial justification, the court on motion or on its own *must* impose an appropriate sanction on the signer, the party, or both." Fed. R. Civ. P. 26(g)(3) (emphasis added). Rule 26(g)(3) leaves it to the Court to decide the appropriate sanction for a violation; although "Rule 26(g) '[is] cast in mandatory terms,'…the mandate of the provision[]

extends only to whether a court must impose sanctions, not to which sanction it must impose." *Chambers*, 501 U.S. at 51; Fed. R. Civ. P. 26(g)(3).

Here, Defendant did not conduct a "reasonable inquiry" of its records because it did not search its computer, emails, text messages, sex trafficking file, or staff/payroll file for responsive documents before responding to Plaintiff's discovery requests.  In 2023, ESI collection and production is a necessary part of litigation. *See, e.g., Venator v. Interstate Resources, Inc.*, 2016 WL 1574090 at *10 (S.D. Ga. April 15, 2016) (Rule 26(g) sanctions imposed because Defendant only searched his "inbox, outbox, sent items, and deleted items" for responsive documents, but "searched no other areas on his computer or [Defendant's] computer system"); *see also In re Delta*, 846 F. Supp. 2d at 1351 (Rule 26(g) sanctions appropriate for Defendant's "failure to ensure that all collected hard drives were actually searched and to locate the back-up tapes in the evidence locker"); 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2052 (3d ed. 2010) (collecting cases imposing sanctions under Rule 26(g) for failure to produce relevant ESI). Likewise, Defendant's failure to search its hard-copy business files for sex trafficking materials, payroll records, and staff lists is also indefensible.

Naturally, Plaintiff's discovery requests asked for Defendant's responsive business records, whether electronic or hard copy.  For example, Plaintiff's July

2022 requests defined the terms "Documents" and "Communications" to include emails, text messages, business files, and the like. (Exhibit 3). The Federal Rules, of course, encompass ESI, too. For example, Rule 34, is entitled: "Producing Documents, Electronically Stored Information, and Tangible Things[.]"

Because Defendant did not make a "reasonable inquiry" of its records, sanctions are mandatory under Rule 26(g)(3).[9]

## II.   In Addition to Mandated Sanctions Under Rule 26(g)(3), Sanctions are Also Warranted Under Rules 37(b)(2) and (c)(1) Because of the Magnitude of Defendant's Negligence, Defendant's Delay in Correcting It, and the Prejudice to Plaintiff.

Beyond the required sanctions under Rule 26(g)(3), the Court should also impose sanctions under Rules 37(b)(2) and (c)(1) and its inherent powers because of the magnitude of Defendant's discovery negligence, Defendant's delay in correcting it, and the prejudice to Plaintiff. Defendant failed to conduct basic searches of its hard-copy files and ESI until *after* discovery closed because of negligence. This is not a case where there were a few late-disclosed documents of questionable relevance that were inadvertently overlooked. To the contrary, the more than 3,500 pages produced on April 20th, long after discovery closed, were the hottest in the

---

[9] Defendant had no "substantial justification" under 26(g)(3) for its failure to run basic searches across its ESI and paper records.

case, and were housed in the hotel's emails, text messages, computer, and files on sex trafficking, payroll, and staffing.

Worse, after Plaintiff exposed the issue through deposition questioning, Defendant dragged its feet in correcting it. It took Defendant eight months to produce documents requested in July 2022 and again in January 2023 (many of which were due under Rule 26(a) when Defendant served its initial disclosures in March 2021). Defendant's delay in providing accurate and complete discovery responses until long after the March 10th discovery deadline violated Rule 26(e)'s "timely" supplementation requirement. *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F.Supp.3d 839 at 960 (N.D.Ill. 2021) ("[S]upplements made after the close of fact discovery are by definition 'untimely.'").

Defendant will likely contend, like it did at the June conference, that sanctions are unwarranted because Plaintiff suffered no prejudice. That argument is flawed. To start, sanctions are mandatory under Rule 26(g)(3) for failure to make a "reasonable inquiry" without "substantial justification." Period. Prejudice is not part of a Rule 26(g)(3) analysis. Rule 37 does not require a showing of prejudice to trigger sanctions either:

> Although one purpose of Rule 37 sanctions may in some cases be to protect other parties to the litigation from prejudice resulting from a party's noncompliance with discovery obligations … ***Rule 37 sanctions serve other functions unrelated to the prejudice suffered by individual litigants***.

20

> ***Disciplinary sanctions under Rule 37 are intended to serve three purposes***. ***First***, they ensure that a party will not benefit from its own failure to comply. ***Second***, they are specific deterrents and seek to obtain compliance with the particular order issued. ***Third***, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 149 (2nd Cir. 2010) (emphasis added); *see also Nat'l Hockey League v. Metro. Hockey Club*, Inc., 427 U.S. 639, 643, 96 S. Ct. 2778, 2781, 49 L. Ed. 2d 747 (1976) (Rule 37 sanctions are to penalize and to deter).

Nevertheless, Plaintiff has been prejudiced by Defendant's discovery negligence.  First, Plaintiff cannot rely on Defendant's discovery responses and document production. "Rules exist emphasizing the importance of truth in the discovery process and the need for a litigant to be able to rely upon the opposing party's discovery responses." *Green Leaf Nursery*, 341 F.3d at 1305.  Here, Plaintiff received hot documents long after discovery closed, some of which conflicted with Defendant's discovery responses, and some of which Defendant had said did not exist.  These circumstances undermine "truth in the discovery process" and Plaintiff's "need … to be able to rely" on Defendant's responses.  Did Defendant put in effect a litigation hold?  Preserve potentially relevant information during discovery?  Properly search its ESI and paper files for responsive information?

Second, Defendant's discovery negligence caused Plaintiff to expend significant time and effort trying to get Defendant to comply with its basic discovery obligations. Even after the revelatory February 2023 depositions, Defendant took 60 more days to produce the hottest documents in the case, after discovery closed.

Third, Defendant's discovery negligence caused Plaintiff investigative harm. Defendant produced 3,500 pages weeks after discovery closed, and after producing only 585 pages in discovery. Plaintiff conducted discovery and fact investigation, conferred with consultants, and developed case strategies with materially incomplete, misleading, and inaccurate information from Defendant. Consequently, Plaintiff wasted time, investigated unnecessary issues, and then redid work upon receiving new documents weeks after discovery closed. Plaintiff devoted significant time to comparing the late documents to prior inconsistent discovery responses to determine a course of action. Defendant's shifting staff lists and incomplete staff records, *see* FN 4, further compromises Plaintiff's ability to investigate the case.

Fourth, Defendant's discovery negligence is likely to cause Plaintiff evidentiary harm. Because Defendant has produced inconsistent hotel staff lists and first names only for several staff, Plaintiff does not know who worked at the hotel during the relevant period, let alone who Defendant may try to call as a witness to testify about purportedly working at the hotel. *See* FN 4. "The days of trial by

22

ambush have passed." *Wammock v. Celotex Corp.*, 793 F.2d 1518, 1527 (11th Cir.

1986); *see also King v. City of Waycross, Georgia*, 2015 WL 5468646 at *3 (S.D.

Ga. Sept. 17, 2015) ("A major purpose of discovery is eliminating surprise."). At

trial, Defendant will presumably repeat what it said in discovery—that it was

unaware of commercial sex activity at the hotel, that its staff never reported it, and

that its staff was not complicit in crime. (*See, e.g.*, Exhibit 24 at 40:25 18 – 41:6;

64:3–65:10, 120:24–121:21). How can Plaintiff interrogate such claims without

knowing Defendant's staff? Additionally, at trial Defendant is likely to use its

undated sex trafficking training document purportedly available to staff as

affirmative evidence that it trained its staff to be on the lookout for crime. Again,

how can Plaintiff examine the claim without knowing Defendant's staff?

Sixth, and finally, Defendant's discovery negligence harmed the efficient and

economical movement of cases, violated the purposes of civil discovery set forth in

the Rules, and directed judicial resources to policing bedrock discovery duties.

While prejudice is not a requirement of sanctions under the mandatory

sanctions regime of Rule 26(g)(3), or under the penal and deterrent sanctions regime

of Rule 37, Defendant's discovery negligence prejudiced Plaintiff. Because of that

prejudice, the magnitude of Defendant's error, and Defendant's delay in correcting

it, the Court should also impose sanctions under Rules 37(b)(2) and (c)(1).

**III.** **Plaintiff Requests Targeted Sanctions Under Rules 26(g)(3), 37(b)(2), and 37(c)(1), and the Court's Inherent Powers because of Defendant's Discovery Negligence.**

Plaintiff requests the following sanctions for Defendant's discovery negligence under Rules 26(g)(3) and 37(c)(1).  First, Plaintiff requests reasonable attorneys' fees as set forth in Exhibit 32, which reflect the time and effort Plaintiff's counsel has expended to enforce Plaintiff's discovery rights, to obtain basic discoverable information (e.g., Defendant's responsive ESI and hard-copy business files), and to raise Defendant's discovery negligence with the Court to seek relief.

Second, Defendant should not be allowed to introduce evidence or argument at trial that its staff never reported concerns about commercial sex at the hotel, that it trained its staff to be on the lookout for criminal activity and commercial sex, and that none of its staff had criminal records or were complicit in crime at the hotel, because it has produced inconsistent, incomplete information about who worked at the hotel.  Plaintiff cannot confront Defendant's claims about staff reports of crime, staff trainings, and vetting of staff because Plaintiff does not know who Defendant's employees were and cannot find them.  *See, e.g., Nance v. Ricoh Electronics, Inc.*, 2008 WL 926662 at *3 (N.D. Ga. April 4, 2008) aff'd, 38 Fed. Appx. 99 (11th Cir. 2010) (imposing Rule 37(c)(1) sanction for Rule 26(a) violations).  Alternatively, Plaintiff requests a jury instruction on how Defendant's conflicting and partial staff

24

records compromised Plaintiff's ability to examine Defendant's claims about staff crime reports, staff trainings, and vetting of staff, among other topics.

Third, Defendant should not be allowed to introduce evidence or argument that it had a sex trafficking training document available to staff during the relevant period when it first said that such a document did not exist and then produced an undated document in late April and claimed it had existed for years in a sex trafficking file. *See, e.g., Clarke v. Schofield*, 2009 WL 10674468 (M.D. Ga. March 30, 2009) (striking affidavit under Rule 37(c)(1) for Rule 26(a) violation).

Fourth, Defendant should not be allowed to use affirmatively evidence and witnesses it produced or identified late in violation of Rules 26 and 37. Fed.R.Civ.P. 37(c)(1) (prohibiting use of any witness or information "at a trial, at a hearing, or on a motion" not disclosed as required by Rule 26(a) absent inapplicable circumstances); Doc. 6 at 17 ("The Court does not allow evidence at trial which was requested and not revealed during the discovery period."). Plaintiff should, however, be allowed to use such evidence or witnesses if she chooses and it is admissible.

## **CONCLUSION**

Plaintiff respectfully requests that the Court impose the requested sanctions for the reasons set forth herein.

This 12th day of December, 2023.

/s/ David H. Bouchard
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

/s/ Patrick J. McDonough
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing **Plaintiff's Motion for Sanctions and Memorandum in Support** has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certify that Plaintiff, through her attorneys, has served a true and correct copy of the foregoing *Plaintiff's Motion for Sanctions and Memorandum in Support* into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 12th day of December, 2023.

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*/s/ Patrick J. McDonough*
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000

Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2025, I electronically filed the foregoing Appellant's Appendix, Volume I using the Court's Appellate ECF system, which will automatically send notification to counsel of record.

Dated: July 3, 2025

*/s/ David H. Bouchard*
David H. Bouchard
FINCH MCCRANIE LLP

*Counsel for Appellant*